# **EXHIBIT B**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

------------------------------------------------------X
                                                      )
*In re*                                               )
                                                      )  Chapter 11
WASHINGTON MUTUAL, INC., et al.[1]                    )
                                                      )  Case No. 08-12229 (MFW)
                    Debtors.                          )
                                                      )  Jointly Administered
                                                      )
------------------------------------------------------)
                                                      )
OFFICIAL COMMITTEE OF EQUITY                          )
SECURITY HOLDERS,                                     )  Adversary Proceeding No. 10-50731 (MFW)
                                                      )
                    Plaintiff                         )
                                                      )
          - against -                                 )
                                                      )
WASHINGTON MUTUAL, INC.,                              )
                                                      )
                    Defendant                         )
------------------------------------------------------X

## DECLARATION OF
## WILLIAM KOSTUROS, CHIEF RESTRUCTURING ADVISOR
## OF WASHINGTON MUTUAL, INC. IN CONNECTION WITH DEBTORS'
## OPPOSITION TO EQUITY COMMITTEE'S MOTION FOR SUMMARY JUDGMENT

Pursuant to 28 U.S.C. § 1746, William Kosturos, hereby declares, under penalty of perjury:

1. I am the Chief Restructuring Advisor of Washington Mutual, Inc. ("WMI"). As WMI's Chief Restructuring Advisor, I am responsible for general oversight of

---

[1] The Debtors in these Chapter 11 cases and the last four digits of each Debtor's federal tax identification numbers are: (i) Washington Mutual, Inc. (3725) and (ii) WMI Investment Corp. (5395). The Debtors are located at 925 Fourth Avenue, Suite 2500, Seattle, Washington 98104

WMI's chapter 11 bankruptcy cases and all proceedings, litigation, and negotiations pending therein. I am also familiar with WMI's businesses, financial affairs, and day-to-day operations.

2. I submit this declaration in support of WMI's and WMI Investment Corp.'s (with WMI, "Debtors") Opposition to the Official Committee of Equity Holders' Motion for Summary Judgment (the "Motion").[2]

3. If called to testify, I would testify to each of the facts set forth herein.

4. On September 26, 2008, the Debtors each commenced a voluntary case pursuant to chapter 11 of title 11 of the United States Code. Thereafter, the Debtors have been embroiled in litigation with the Federal Deposit Insurance Corp ("FDIC"), as receiver for WMB, and with JPMorgan Chase, N.A. ("JPMC"). This litigation currently includes multiple proceedings and spans across several courts including this Court, the District Court for the District of Delaware, and the District Court for the District of Columbia.

5. On March 11, 2010, the Debtors announced that they had reached a three-way agreement with both the FDIC and JPMC (the "Agreement") which contemplates settling all of the pending litigation among the parties. The Agreement resolves complex litigation that could otherwise take years to adjudicate at a great expense to the estates and with uncertain outcome. On March 26, 2010, the Debtors filed their Joint Plan of Affiliated Debtors (the "Plan"), referencing and incorporating the Agreement. The Plan, which incorporates the Agreement, if consummated and approved, provides substantial recoveries to creditors of the Chapter 11 Cases as well as the emergence of a reorganized debtor. The Debtors seek to imminently finalize and seek Court-approval of the Agreement through approval of the

---

[2] Capitalized terms not immediately defined shall have the meanings ascribed to them in the Motion

Disclosure Statement and confirmation of the Plan. Thus, this is a critical point in the Chapter 11 Cases.

6. The Agreement is the product of protracted negotiations between the Debtors, the Creditors Committee, the FDIC, and JPMC. However, the Agreement is fragile and still needs to be finalized. I believe the full attention of the Debtors, their stakeholders, JPMC, and the FDIC are necessary in this regard. As the FDIC has recently stated, although the Plan does "not reflect the continuing discussions among the parties," the "FDIC is working with all parties involved to reach agreement with respect to all terms of the proposed settlement...."

7. I believe it is the clear intent of the Equity Committee to call a shareholders meeting in order to elect a new board of directors who will withdraw the present Plan with full awareness of the devastating consequences to the Agreement and to the Debtors' reorganization in these Chapter 11 Cases. In fact, the Equity Committee has already stated their intention to object to the Agreement.

8. Permitting the Equity Committee to call such a meeting poses a serious threat and real jeopardy to the Agreement, the Plan, and the Debtors' reorganization. The Plan and the Debtors' reorganization are based upon the Agreement, which remains subject to documentation. I believe there is a meaningful risk that the Agreement will not survive the dislocation engendered by a shareholders meeting. The Agreement was reached after many compromises by the Debtors, their creditors, the FDIC, and JPMC. If the Agreement is upset, the Plan will likely not be confirmed, and the Chapter 11 Cases will be disrupted significantly. The current negotiating postures of the parties will change significantly. This will most certainly mean a return to aggressive positions held previously in the Chapter 11 Cases. The Chapter 11

Cases will be put back more than a year's worth of negotiations and be faced with significant and expensive litigation.

9. Moreover, the Debtors' exclusivity period to confirm the Plan expires on May 25, 2010. If the Equity Committee is successful in calling a shareholders meeting, it is almost certain that motions by one or more of the parties in interest for an end to the exclusivity period will be made. Ultimately, competing plans would be expected to be filed by creditors and other parties in interest. These and other plans would not likely improve the likelihood that the Equity Committee's constituents will realize a recovery in the Chapter 11 Cases. The confirmation process under such circumstances would cause considerable delay in addition to the delay the Chapter 11 Cases have already endured.

10. I also believe creditor constituencies would move to appoint a chapter 11 trustee. The immediate effect of the appointment of such a trustee would be to disrupt the debtor in possession status which, ironically, would curtail the power of the shareholders in the context of corporate governance. At the very least, the decision to appoint a trustee would grind the Chapter 11 Cases to a halt. The process of appointing an individual to act as trustee and allowing him or her sufficient time to acquire the knowledge necessary to fulfill the statutory duties the Bankruptcy Code requires would result in further, substantial delay.

11. Even if the Agreement withstood a shareholders meeting, there is no guarantee that it can be maintained while the parties wait to learn whether the Trustee is ready to become a proponent of the Plan or to see what sort of plan a trustee may file. During this delay, competing plans would be filed. At bottom, the problems and complexities in the slow and painful process of reaching the Agreement, would exponentially multiply in the context of competing plans and the appointment of a chapter 11 trustee. These events would have a

deleterious effect on the Chapter 11 Cases, causing significant diminution in value and forcing creditors to go without recovery for a significantly longer period of time than already endured.

12. Creditors overwhelmingly support the Agreement and the Plan. There is real reason to doubt the ability of a new and uninformed board of directors to achieve a consensual plan of reorganization within any reasonable or acceptable period of time. This too would cause harm to the Chapter 11 Cases.

13. Moreover, if the Equity Committee is successful in calling a shareholders meeting, and causing the harm and delay discussed above, the likelihood that a reorganized debtor would emerge, as the Plan currently provides, would be diminished significantly if not foreclosed completely. The Debtors' business to be reorganized is currently being preserved but value will be lost the longer it is forced to stay in bankruptcy.

14. I believe finalization of the Agreement and prosecution and confirmation of the Plan is in the estates' best interests.

15. Separately, during the pendency of the Chapter 11 Cases, WMI has not prepared or filed audited financial statements since those prepared as of December 31, 2007, and has not retained an auditor. The Debtors made this decision so as not to waste assets of their estates and notified the U.S. Securities Exchange and Commission (the "SEC") of their intent to do so. Based upon my best estimate, WMI would require at least 180 days to prepare and have certified financial statements for 2008 and 2009. For example, an accounting firm would first need to be selected and retained, then compile the pertinent financial information pursuant to Generally Accepted Accounting Principles and conduct the appropriate procedures pursuant to Generally Accepted Auditing Standards. Separately, WMI estimates it would require at least 60 days to prepare a proxy statement and I understand that WMI would require an additional 40

days to notice the proxy statement as required by applicable federal regulations, specifically 17 C.F.R. § 240.14a-16.

*[Signature Page Follows]*

I certify that the foregoing statements are true and correct to the best of my knowledge information and belief.

Wilmington, Delaware
April 7, 2010

_____
William Kosturos
Chief Restructuring Officer
Washington Mutual, Inc.