April 9, 2010
Honorable Judge Mary Walrath
824 North Market Street, 5th Floor
Wilmington, DE 19801
302-252-2929

Re: Chapter 11
Case No, 08-12229 (MFW)
Jointly Administered
Adversary Proceeding No .. 10-50731 (MFW)
**DEBTOR'S ANSWER AND
COUNTERCLAIM
TO PLAINTIFF'S COMPLAINT**

Honorable Judge Mary Walrath

I am submitting this letter for your review and ask you to please include it in the docket of Case No. 08-12229 Washington Mutual, Inc.

I have spent a considerable amount of time following this case because my wife and I have a very large investment in WMI equities (preferred as well as commons shares) and feel compelled to voice my concerns regarding the outrageous actions of the lawyers of WEIL, GOTSHAL & MANGES LLP. As legal representatives of WMI, WEIL, GOTSHAL & MANGES LLP (Weil et al) have a fiduciary responsibility to represent the interests of all equity holders as well as all creditors'. Weil et al seem to be making a concerted effort to exclude equity holders from getting any recovery of capital and are making an attempt at an end run around established Washington State laws and SEC regulations to prevent an Annual Meeting.

As established by admission in court documents submitted by WEIL, GOTSHAL & MANGES LLP. in the **DEBTOR'S ANSWER AND COUNTERCLAIM TO PLAINTIFF'S COMPLAINT**

There has been an apparent violation of Washington State and SEC regulations regarding the Annual Meeting requirement for publicly traded companies.

See the except from taken from **DEBTOR'S ANSWER AND COUNTERCLAIM TO PLAINTIFF'S COMPLAINT** below:

**Complaint 12:** WMI's last annual shareholder meeting was held on or about April 20, 2008.
**Answer:**
Debtor denies the allegations in Paragraph 12 of the Complaint, and avers that WMI last held an annual meeting of its shareholders on April 15, 2008, and that it held a special meeting of its shareholders on June 24, 2008.

In my opinion WEIL, GOTSHAL & MANGES LLP. have made several errors of fact in the **DEBTOR'S ANSWER AND COUNTERCLAIM TO PLAINTIFF'S COMPLAINT.**

1

They (Weil, et al) have made these claims:

**FACTUAL ALLEGATIONS**

9. Since the Petition Date, the Debtor has worked diligently to maximize the value of its estate, pursuing billions of dollars in claims through complex litigation, and filing thirty omnibus claims objections to date.

10. The Debtor, the Creditors' Committee, JPMC, the FDIC and other significant parties in interest have engaged in protracted and hard-fought negotiations seeking to reach a global resolution of the many issues of dispute among the parties, On March 12, 2010, these efforts bore fruit, as the Debtor, JPMC, the FDIC, and several of the Debtor's significant creditor constituencies reached a global agreement (the "Agreement").

11. On March 26, 2010, the final day to file during the exclusivity period, the Debtor filed its Plan, referencing and incorporating the Agreement, and a disclosure statement in connection therewith (the "Disclosure Statement"). The Debtor anticipates seeking Court-approval of the Disclosure Statement as soon as the final terms of the Agreement are documented.

12. Under the Plan, the preferred shareholders of WMI are out of the money by over $400 Million, and the common shareholders of WMI are more than $8 billion further out of the money than the preferred shareholders.

While the above are claimed as "Factual Allegations", in my opinion they are not factual at all.

Allow me to elaborate as I comment on the above enumerated items:

9. The claim: "... pursuing billions of dollars in claims through complex litigation..."

I would argue that Weil et al has not been working diligently trying to maximize the value of its estate at all, quite the contrary. Weil et al appears for all practical purposes to have capitulated (for some bizarre and unknown reason) to the FDIC and JPMC on virtually every aspect of this BK. Thus ensuring that A<L on the MOR and forcing equity to appear "Out of the Money". Weil et al has not in my opinion litigated any aspect of this BK as required by law to fulfill their fiduciary responsibility. Weil et al could have and should have litigated the seizure by the FDIC and subsequent sale of WMI assets to JPMC as it appears from every published bit of information, the FDIC seized a solvent bank and also transferred assets of WMI to JPMC that were the property of WMI (not WMB or WMBfsb). The FDIC seized the "Whole Bank" and subsequently sold a $300+ Billion institution to JPMC for $1.88 Billion. On the P&A there is nothing describing what the "Whole Bank" is, line 3.1a is missing and unaccounted for by the FDIC. The missing 3.1a is attributed to a "Scriveners error". How then could WMI ever determine what was seized and how

does WMI and JPMC ever begin to file a tax return when neither institution have a full accounting of what was seized and transferred?

I contend that WMB and WMBfsb were more than adequately capitalized up to and including the date of seizure by the FDIC as evidenced by the OTS fact sheet (Exhibit 1) released Thursday, September 25, 2008 OTS 08-046A and under the heading of "Recent Events":

*Maintaining Capital* – "In late 2006 and 2007, WMB began to build its capital level through asset shrinkage and the sale of lower-yielding assets. In April 2008, WMI received $7.0 billion of new capital from the issuance of common stock. Since December 2007, WMI infused $6.5 billion into WMB. <u>*WMB met the well capitalized standards through the date of receivership.*</u>"
(Emphasis added)

If fact, WMB/WMBfsb were over capitalized to the extent that they were poised to return $20 billion in capital in two installments $10 billion on Sept 30, 2008 and $10 Billion in December 2008 to the parent holding company, WMI. The claim that there was a "run on the bank" of $16.7 billion "primarily by retail depositors" during September 15th thru September 24, 2008 is suspect at best and in light of the excess of more than $20 billion over capitalization, makes the threat of failure of WMB irrelevant. The bottom line is that there was no threat of insolvency and even if there was a $16.7 billion run on the bank as claimed, there still would have been at least $3.3 billion of over capitalization remaining on hand. Additionally, WMB had a Line of Credit available at the treasury to cover any short term liquidity issues should that situation arise and had substantial reserves available to avoid falling into a condition where they would have been under capitalized. My contention is that the OTS either issued a false report or that the FDIC illegally seized a well capitalized bank. In light of the evidence, it is incumbent upon Weil et al to litigate this matter and determine the real facts. To do otherwise is a breach of their fiduciary responsibility to equity and indeed all creditors.

Admittedly at first it appeared that Weil et al were in fact engaged at one point in complex litigation, right up to and until they had sufficient evidence through the 2004 Discovery that was granted by Your Honor. However, at some point after they obtained damaging evidence through discovery, Weil et al abandoned their "complex litigation" strategy and took a decidedly benign approach bordering on malfeasance in my opinion. They decided to further enrich JMPC and the FDIC by offering to give away substantial portions of the NOL and NOL carry back, $250 million worth of Visa class "B" shares (for $50 million), a "Wind Farm" valued at TBD and countless other assets. What a deal for JPMC and the FDIC! All at the expense of creditors and equity holders like me and thousands of others. Your Honor, I must ask, what are they thinking?

3

10. The Debtor, the Creditors' Committee, JPMC, the FDIC and other significant parties in interest have engaged in protracted and hard-fought negotiations seeking to reach a global resolution of the many issues of dispute among the parties, On March 12, 20 10, these efforts bore fruit, as the Debtor, JPMC, the FDIC, and several of the Debtor's significant creditor constituencies reached a global agreement (the "Agreement").
And
11. On March 26, 2010, the final day to file during the exclusivity period, the Debtor filed its Plan, referencing and incorporating the Agreement, and a disclosure statement in connection therewith (the "Disclosure Statement"). The Debtor anticipates seeking Court-approval of the Disclosure Statement as soon as the final terms of the Agreement are documented.

Weil et al submitted a POR that is neither agreed upon by all of the above mentioned parties nor is it even a POR. The document submitted to the court cannot in any way be construed as a Plan of Reorganization as it does not include any of the necessary elements required to be considered as a plan by any definition. And, by the Debtors own admission they do not even have the final terms of the "Agreement" finalized. The reality is that there is **NO global agreement** by WMI, JPMC, FDIC and other significant parties at all!

12. Under the Plan, the preferred shareholders of WMI are out of the money by over $400 Million, and the common shareholders of WMI are more than $8 billion further out of the money than the preferred shareholders.

The above "Factual Allegation" item 12 comes as no surprise to me at all. Given that Weil et al has worked diligently to come to an "Agreement" that rewards the FDIC and JPMC with additional assets for apparently unlawfully seizing and selling an over capitalized bank at the expense of equity and other creditors. The "Agreement" is so ridiculous as to beg the following question; what is everyone trying to keep from becoming public knowledge?

I would also like to address the Debtors counterclaim as follows:

**COUNTERCLAIM**

30. In a desperate, self-interested, and reckless attempt to scuttle the Plan, which leaves its constituents out of the money, the Equity Committee seeks to seize control of the Debtor Plaintiff's scheme is to convince this court to compel a hasty annual meeting, force the Debtor (contrary to law) to bear the cost of a proxy contest by including the Plaintiffs slate of hand-picked directors on the Debtor's proxy materials, and gain a waiver of quorum. In combination, these series of requests could, within a matter of weeks, allow a handful of common shareholders - who are over $8 billion out of the money - to seize control of the Debtor, withdraw the Plan, and terminate the Agreement, erasing 18 months of progress in these proceedings and doing irreparable harm to the Debtor and its creditors - the true parties in interest of these Chapter II proceedings.

4

The above counterclaim (30.) defies description, except to say that the word Debtors should be substituted for Plaintiff with regard to the words desperate, self-interested and reckless. The Debtors (as I have illustrated above) <u>DO NOT</u> have a plan by any definition for the Plaintiffs to attempt to terminate by having an Annual Meeting ordered by the court. By the Debtors own words "within a matter of weeks, allow a handful of common shareholders - who are over $8 billion out of the money - to seize control of the Debtor, withdraw the Plan, and terminate the Agreement" Your Honor, might I point out that it would take a <u>majority</u> of equity holders, in a quorum to vote in a new Board of Directors not a mere "handful" as claimed by the Debtors. Additionally, if it were not for the Debtors reckless attempts to give up assets that were rightfully the property of WMI to JPMC and the FDIC there would be ample assets to distribute to equity all the way down to the common shareholder. Furthermore the Debtors have not presented any evidence that the plaintiffs will seize control, withdraw the Plan (that isn't a plan), and terminate their (Non-) Agreement that the Debtors claim they have been putting together for over a year and cause irreparable harm to the Debtor. What the Debtors have is pure speculation, driven by fear that the current Board of Directors might be replaced by new Directors.

Your Honor, please allow me to now disclose and examine the Debtors statement taken from

**OPPOSITION OF DEFENDANT WASHINGTON MUTUAL, INC.
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, OR IN
THE ALTERNATIVE, FOR RELIEF FROM THE AUTOMATIC STAY**
Adversary Proceeding No.1 0-50731 (MFW)

"Third, Washington law is clear that courts have wide discretion in determining whether to compel WMI to hold an annual meeting In view of the critical juncture at which the Chapter II Cases rest, the Court should exercise this discretion to ensure that the Debtors are not forced to incur wasteful expenses and endure distractions from seeking to consummate the Agreement and confirm the Plan. Indeed, the Debtors and their advisors would need to devote significant time and expense to preparing the required documents and filings (including audited financial statements), and do so at the worst possible time in the Chapter II Cases, The Equity Committee's desire for control cannot justify such a wasteful and potentially disastrous excursion for an out-of-the-money constituency."

I agree that Washington law gives wide discretion to the courts to compel WMI to hold an annual meeting and I now urge the court to do so without delay, as soon as practicable after the April 21, 2010 hearing. The Debtors council goes on to advise the court against compelling WMI to convene an Annual Meeting because of some novel, yet ridiculous reasons cited. i.e. the Debtors and their advisors would need to devote significant time and expense to preparing the required documents and filings (including audited financial statements).

5

I would argue that it is precisely because there have been no regulatory and court filings made and no AUDITED FINANCIAL STATEMENT released that complies with GAAP, no real evidence has been submitted supporting insolvency has been proven. It is my opinion that an AUDITED FINANCIAL STATEMENT that complies with GAAP should be ordered by the court to be released so as to compel the Board of Directors of WMI, Officers of WMI and their legal representation to prove to the court, the SEC, the EC, all creditors and all equity holders, the true and factual financial condition of WMI.

To date, there hasn't been one reliable bit of factual evidence submitted to the court that complies with GAAP that proves that WMI is indeed insolvent. On the contrary, there is ample evidence to suggest that WMI is not only solvent at this juncture but also have enough assets available to make all equity "In the Money".

To date, the only evidence submitted to the court that WMI is insolvent have been MOR's submitted that include the following disclosure:

**DISCLAIMER**
Washington Mutual, ("WMI") and WM Investment Corp. (together, the "Debtors") caution investors and potential investors in WMI not to place undue reliance upon the information contained in this Monthly Operating Report, which was not prepared for the purpose of providing the basis for an investment decision relating to any of the securities of WMI. The Monthly Operating Report is limited in scope, covers a limited time period, and has been prepared solely for the purpose of complying with the monthly operating guidelines as described in the Chapter 11 Trustee Handbook, United States Department of Justice, May 2004 in accordance with 28 U.S.C §586(a)(3). The Monthly Operating Report was not audited or reviewed by independent accountants; does not purport to present the financial statements of WMI in accordance with generally accepted accounting principles; does not purport to present the market value of WMI's assets and liabilities or the recoverability of WMI's assets; is in a format prescribed by applicable bankruptcy laws; and is subject to future adjustment and reconciliation.
There can be no assurance that, from the perspective of an investor or potential investor in WMI's securities, the Monthly Operating Report is complete. Results set forth in the Monthly Operating Report should not be viewed as indicative of future results. This disclaimer applies to all information contained herein.

In other words, by their own declaration, the MOR is totally unreliable as an indication of the true and factual financial conditions of the Debtor and has been prepared for the sole purpose of complying with applicable bankruptcy laws. The MOR is in no way indicative of the actual financial condition of the Debtor and appears to be designed expressly for the purpose of avoiding any intentional or unintentional violation of the Sarbanes-Oxley act. There is absolutely nothing in the MOR that is necessarily factual or anything that cannot be changed at a future date.

Weil et al also makes the argument that "The Equity Committee's desire for control cannot justify such a wasteful and potentially disastrous excursion for an out-of-the-money constituency." As noted above, WMI has not proven their financial condition at the time of BK filing much less their current financial condition. The MOR's submitted do not meet the test for Generally Accepted Accounting Principles (GAAP) as their inclusiveness and reliability appear to be suspect at best in my opinion. As such there is currently no system in place to ensure beyond a reasonable doubt that an "Out of the money constituency" actually exists.

Wherefore, I respectfully request that the court dismiss the **DEBTOR'S ANSWER AND COUNTERCLAIM TO PLAINTIFF'S COMPLAINT** in its entirety.

And,

Issue an order granting the **Motion for Summary Judgment, or In the Alternative, for Relief from the Automatic Stay filed by the Official Committee of Equity security Holders** [Docket No. 2501] (the "Equity Committee" and "Equity Committee Motion") such that a shareholders meeting may be noticed and held as soon as possible, in accordance with the request made by the Equity Committee.

Additionally, I request that the court order the appointment of an independent, third party Trustee to take control of WMI for the purpose of resolving the myriad of issues that have plagued this entire BK case from the beginning.

Sincerely,

*Fay Carl Locke*

7