# EXHIBIT B

RECEIVED

MAY 13 2010

SCHWABE, WILLIAMSON & WYATT

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| In re | Case No. 08-12229-MFW |
| | District of Delaware |
| WASHINGTON MUTUAL, INC., | |
| | Chapter 11 |
| Debtor. | |
| | |
| ESOPUS CREEK VALUE LP and | Adversary No. _____ |
| MICHAEL WILLINGHAM | |
| | **DECLARATION OF WILLIAM C. RAVA** |
| Plaintiffs, | **IN SUPPORT OF WASHINGTON** |
| | **MUTUAL, INC.'S NOTICE OF** |
| vs. | **REMOVAL** |
| | |
| WASHINGTON MUTUAL, INC., | |
| | |
| Defendant. | |

I, William C. Rava, declare under 28 U.S.C. § 1746:

1.     I am an attorney duly admitted to practice law in the State of Washington and

before this Court, and a partner at Perkins Coie LLP, attorneys for Defendant Washington

Mutual, Inc. ("WMI"). I submit this declaration in support of WMI's Notice of Removal

based upon my personal knowledge, unless otherwise stated herein.

DECLARATION OF WILLIAM C. RAVA IN
SUPPORT OF WASHINGTON MUTUAL,
INC.'S NOTICE OF REMOVAL – 1
53000-0005/LEGAL18307335.1

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

2. Attached hereto are true and correct copies of the following documents:

| Exhibit | Document |
|---|---|
| A | Equity Committee's Adversary Complaint, filed March 3, 2010, in the Delaware Bankruptcy Court |
| B | Equity Committee's Motion for Summary Judgment, or in the Alternative, for Relief from the Automatic Stay, and Memorandum of Law in Support Thereof, filed March 11, 2010, in the Delaware Bankruptcy Court |
| C | WMI's Opposition to Equity Committee's Summary Judgment Motion, filed April 7, 2010, in the Delaware Bankruptcy Court |
| D | WMI's Answer and Counterclaim, filed April 7, 2010, in the Delaware Bankruptcy Court |
| E | Order of the U.S. Bankruptcy Court for the District of Delaware, dated April 26, 2010 |
| F | Plaintiffs' Washington State Complaint to Compel Shareholders' Meeting, filed April 26, 2010, in the Thurston County Superior Court |
| G | Plaintiffs' Amended Washington State Complaint to Compel Shareholders Meeting, filed May 4, 2010, in the Thurston County Superior Court |
| H | Plaintiffs' Motion to Compel Shareholders' Meeting, and related papers filed May 5, 2010, in the Thurston County Superior Court |

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

DATED: May 13, 2010

_s/ William C. Rava_
William C. Rava, WSBA No. 29948

DECLARATION OF WILLIAM C. RAVA IN
SUPPORT OF WASHINGTON MUTUAL,
INC.'S NOTICE OF REMOVAL – 2
53000-0005/LEGAL18307335.1

**Perkins Coie** LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

# Exhibit A

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

--------------------------------------------------x
|   |   |
| *In re:* | : | Chapter 11 |
| | : | |
| WASHINGTON MUTUAL, INC., <u>et al</u>., | : | Case No. 08-12229 (MFW) |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | |

--------------------------------------------------x

OFFICIAL COMMITTEE OF EQUITY
SECURITY HOLDERS,          Adversary Proceeding No. _____

Plaintiff,

v.

WASHINGTON MUTUAL, INC.,

Defendant,

## COMPLAINT

Plaintiff, the Official Committee of Equity Security Holders (the "Equity Committee" or

"Plaintiff"), representing shareholders of Debtor, Washington Mutual, Inc. ("Debtor" or "WMI"),

bring this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure (collectively,

the "Bankruptcy Rules") 7001 and Revised Code of Washington ("RCW") 23B.07.030 and

23B.07.010 to compel a WMI shareholders' meeting.

## NATURE OF ACTION

1.      This action is brought as a result of Debtor's failure to convene its annual

shareholders' meeting for nearly two years.  Debtor, a publicly traded company, has also failed to

**Exhibit A**
**A-2**

0812229100407000000000018

submit any required annual and quarterly reports, including financial statements, with the U.S. Securities and Exchange Commission ("SEC") for two years. Consequently, Debtor has deprived the Equity Committee and other shareholders of useful and relevant information regarding WMI's operations and has prevented them from nominating and voting for WMI directors.

2.     Accordingly, Plaintiff seeks an order pursuant to RCW 23B.07.030(1)(a) summarily compelling Debtor to hold the required shareholders' meeting on a date certain, to be fixed by the Court, in accordance with Washington law, and to issue additional orders pursuant to RCW 23B.07.030(2) and 23B.07.010.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157, 959, 1334, and Bankruptcy Rule 7001. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

4.     Venue of this adversary proceeding in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## PARTIES

5.     WMI is a corporation organized and existing under the laws of the State of Washington. It maintains its registered office in Thurston County, Washington. WMI's registered agent for service of process in Washington is Corporation Service Company, 300 Deschutes Way SW, Suite 304, Tumwater, Washington 98501.

6.     The Office of the United States Trustee appointed the Official Committee of Equity Security Holders on January 11, 2010 (the "Equity Committee") [Docket No. 2130]. On

**Exhibit A**
**A-3**

January 27, 2010, the Equity Committee filed an Application to Employ Venable LLP

("Venable") as counsel nunc pro tunc to January 11, 2010 [Docket No. 2256], and the Court

entered an Order approving Venable's employment on February 22, 2010 [Docket No. 2404].

## FACTUAL ALLEGATIONS

7. WMI is a savings bank holding company and the owner of Washington

Mutual Bank, which was the largest savings and loan association in the United States of

America. On September 25, 2008, the United States Office of Thrift Supervision ("OTS")

seized Washington Mutual Bank from WMI and placed it into the receivership of the

Federal Deposit Insurance Corporation ("FDIC"). The FDIC sold the banking subsidiaries

(minus unsecured debt or equity claim) to JP Morgan Chase for $1.9 billion. The next day,

September 26, 2008, Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of

the United States.

8. WMI has issued approximately 3 million shares of Class R Preferred Stock,

approximately 20 million shares of Class K preferred stock, and approximately 1.7 billion shares

of common stock.

9. Members of the Equity Committee are shareholders of WMI and the beneficial

owners of shares of preferred and common stock of WMI. They are entitled to vote in the

election of directors of WMI at an annual meeting.

10. RCW 23B.07.030(1) provides that the superior court of the county in which a

corporation's registered office is located may, after notice to the corporation, summarily order a

meeting to be held: (a) On application of any shareholder of the corporation entitled to vote in

the election of directors at an annual meeting, if an annual meeting was not held within the

**Exhibit A**
**A-4**

3

earlier of six months after the end of the corporation's fiscal year or fifteen months after its last annual meeting or approval of corporate action by shareholder consent in lieu of such a meeting; or (b) On application of a shareholder who executed a demand for a special meeting valid under RCW 23B.07.020, if (i) Notice of the special meeting was not given within thirty days after the date the demand was delivered to the corporation's secretary; or (ii) The special meeting was not held in accordance with the notice.

11. WMI's 2007 fiscal year follows the calendar year, and therefore ended on December 31, 2007.

12. WMI's last annual shareholder meeting was held on or about April 20, 2008.

13. WMI's 2008 fiscal year ended on December 31, 2008, and an annual WMI shareholders' meeting was not held within six months after the end of WMI's 2008 fiscal year.

14. An annual WMI shareholders' meeting was not held within fifteen months after its last annual meeting or approval of corporate action by shareholder consent in lieu of such a meeting.

15. WMI's 2009 fiscal year ended December 31, 2009. WMI has not set a date for an annual meeting of shareholders in 2010, which, under WMI's Bylaws, would normally by held on April 20, 2010.

16. WMI has not taken any action by written consent to elect WMI directors in lieu of an annual meeting.

17. RCW 23B.07.010 provides that a corporation shall hold an annual meeting of shareholders for the purpose of electing directors.

18. RCW 23B.07.030(2) provides that the court may, after notice to the corporation,

fix the time and place of the meeting, determine the shares and shareholders entitled to participate in the meeting, specify a record date for determining shareholders entitled to notice of and to vote at the meeting, prescribe the manner, form, and content of the meeting notice, fix the quorum required for specific matters to be considered at the meeting, or direct that the votes represented at the meeting constitute a quorum for approval of those matters, and enter other orders necessary to accomplish the purpose or purposes of the meeting.

19. WMI should be compelled to schedule and hold an annual shareholders' meeting on a date certain, pursuant to RCW 23B.07.030 and 23B.07.010.

**[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK.]**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter an Order:

(i)  Directing Debtor to promptly convene and hold an annual shareholders' meeting for the nomination and election of directors;

(ii)  Designating the time, place, and procedures to be followed to hold the annual meeting, as well as the form of notice of the meeting to be delivered to all shareholders by Debtor; and

(iii)  Entering further orders as necessary to accomplish the purposes of the meeting.

Dated: March 3, 2010.
Wilmington, Delaware

Respectfully submitted,

/s/ Bradford J. Sandler
Bradford J. Sandler (#4142)
BENESCH, FRIEDLANDER,
COPLAN & ARONOFF LLP
222 Delaware Avenue, Suite 801
Wilmington, DE 19801
Tel: 302-468-7750
Fax: 302-442-7012


-and-

Gregory A. Cross
Jorian L. Rose
VENABLE LLP
Rockefeller Center
1270 Avenue of the Americas
25th Floor
New York, New York 10020
Tel: 212-370-5500
Fax: 212-307-5598

Counsel to the Official Equity
Committee of Washington Mutual, Inc.

**Exhibit A
A-7**

# Exhibit B

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-----------------------------------------x
                                         :
  In re:                                 :
                                         :
WASHINGTON MUTUAL, INC., et al,          :
                                         :
                   Debtors.              :
                                         :
-----------------------------------------x
                                         :
OFFICIAL COMMITTEE OF                    :
EQUITY SECURITY HOLDERS                  :
                                         :
  Plaintiff,                             :
                                         :
  v.                                     :
                                         :
WASHINGTON MUTUAL, INC.,                 :
                                         :
  Defendant.                             :
-----------------------------------------x
```

Chapter 11
Case No. 08-12229 (MFW)
(Jointly Administered)

Hearing Date: April 6, 2010 at 2:00 p.m.
Objections Due: March 30, 2010 at 4:00 p.m.

Adversary Proc. No. 10-50731(MFW)

### THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS'
### MOTION FOR SUMMARY JUDGMENT,
### OR IN THE ALTERNATIVE, FOR RELIEF FROM THE AUTOMATIC STAY

Plaintiff Official Committee of Equity Security Holders (the "Equity Committee" or "Plaintiff") of Washington Mutual, Inc. ("WMI" and, together with its chapter 11 debtor-affiliate, WMI Investment Corp., the "Debtors"), by and through undersigned counsel, pursuant to Federal Rule of Civil Procedure 56 and Federal Rules of Bankruptcy Procedure 7056, and section 362 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure, respectfully moves the Court for entry of an Order granting it summary judgment, or in the alternative, entry of an Order determining that the automatic stay does not apply, or granting relief from the automatic stay if and to the extent applicable. In support of this Motion, the Equity Committee respectfully refers the Court to the Memorandum of Law and the

**Exhibit B**
**B-9**

{00388593;v1}

0812229100407000000000020

Declaration of Joyce M. Presnall filed contemporaneously in support of this Motion, and respectfully states as follows:

1. There is no genuine dispute of material fact, and Plaintiff is entitled to judgment as a matter of law, on its Complaint as set forth in the attached Memorandum of Law.

Wherefore, Plaintiff moves for an Order in the form attached hereto entering summary judgment in its favor and requiring WMI to:

(A) schedule an annual shareholder's meeting in April 2010;

(B) send out the required notices to shareholders;

(C) designate the time, place, and procedures to be followed to hold the annual meeting, as well as the form of notice of the meeting to be delivered to all shareholders by WMI; and

(D) take such further actions as might be necessary to accomplish the purposes of the meeting.

2. In the alternative, Plaintiff requests entry of an Order by the Court determining that the automatic stay does not apply or, alternatively, grant relief from the automatic stay such that the Plaintiffs may seek the relief in its Complaint in Washington State.

*-Signature Page to Follow-*

Exhibit B
B-10

{00388593;v1}

Dated: March 11, 2010

ASHBY & GEDDES, P.A.

William P. Bowden (#2553)
Gregory A. Taylor (#4008)
Stacy L. Newman (#5044)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
Telephone: (302) 654-1888
Facsimile: (302) 654-2067
wbowden@ashby-geddes.com
gtaylor@ashby-geddes.com
snewman@ashby-geddes.com

*Proposed Delaware Counsel to the Official
Committee of Equity Security Holders of
Washington Mutual, Inc., et al.*

-and-

VENABLE LLP
Gregory A. Cross
750 East Pratt Street, Suite 900
Baltimore, MD 21202
Telephone: (410) 244-7400
Facsimile: (410) 244-7742
gacross@venable.com

Jorian L. Rose
1270 Avenue of the Americas
New York, NY 10020
Telephone: (212) 307-5500
Facsimile: (212) 307-5598
jlrose@venable.com

*Counsel to the Official Committee of Equity
Security Holders of Washington Mutual, Inc., et al.*

**Exhibit B
B-11**

{00388593;v1}

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------x

*In re:*

WASHINGTON MUTUAL, INC., et al.,

               **Debtors.**

---------------------------------------------x
---------------------------------------------x

OFFICIAL COMMITTEE OF
EQUITY SECURITY HOLDERS

    **Plaintiff,**

    v.

WASHINGTON MUTUAL, INC.,

    **Defendant.**

---------------------------------------------x

**Chapter 11**

**Case No. 08-12229 (MFW)**
**(Jointly Administered)**

Hearing Date: April 6, 2010 at 2:00 p.m.
Objections Due: March 30, 2010 at 4:00 p.m.

**Adv. Proc. No. 10-50731(MFW)**

## MEMORANDUM OF LAW OF THE OFFICIAL COMMITTEE
## OF EQUITY SECURITY HOLDERS
## IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT,
## OR IN THE ALTERNATIVE, FOR RELIEF FROM THE AUTOMATIC STAY

The Official Committee of Equity Security Holders (the "Equity Committee" or

"Plaintiff") of Washington Mutual, Inc. ("WMI" and, together with its chapter 11 debtor-

affiliate, WMI Investment Corp., the "Debtors"), by and through undersigned counsel,

respectfully submits this memorandum of law in support of its motion for summary judgment, or

in the alternative, to determine the automatic stay is not applicable or grant relief from the

automatic stay to commence an action in Washington State court.

**Exhibit B**
**B-12**

081222910040700000000000021

## PRELIMINARY STATEMENT

The Equity Committee filed a straightforward Complaint seeking an order compelling WMI to convene a shareholder meeting as required by Washington State law and WMI's Bylaws. In contravention of Washington State law and its Bylaws, WMI has *not* held an annual meeting of its shareholders since April 15, 2008. Pursuant to Federal Rule of Civil Procedure 56(c),[1] the Equity Committee seeks summary judgment and an order directing WMI to: (1) convene a meeting of its shareholders in April 2010; (2) send notice to the shareholders of record as of March 3, 2010 (the date on which the Equity Committee filed its Complaint); (3) designate the time, place, and procedures to be followed to hold the annual meeting, as well as the form of notice of the meeting to be delivered to all shareholders by WMI; and (4) enter further orders as are necessary to accomplish the purposes of the meeting. In the alternative, the Equity Committee seeks an order determining the automatic stay is not applicable or granting relief from the automatic stay to allow the Equity Committee to commence an action in Washington State court.

## FACTUAL BACKGROUND

WMI is a savings and loan holding company and formerly the owner of Washington Mutual Bank. See Exh. A: Declaration of Stewart M. Landefeld ¶1 (Oct. 10, 2008) ("Landefeld Decl.").[2] At one point, WMI was the largest savings association supervised by the United States Office of Thrift Supervision. See Press Release, United States Office of Thrift Services, Washington Mutual Acquired by JPMorgan Chase (Sept. 25, 2008) (on file with author). WMI is incorporated in the state of Washington and is headquartered in Seattle. See Landefeld Decl. ¶1. On September 25, 2008, the OTS seized Washington Mutual Bank from

---

[1] Federal Rule of Bankruptcy Procedure 7056 incorporates by reference Federal Rule of Civil Procedure 56(c). See Fed. R. Bankr. P. 7056.

**Exhibit B**
**B-13**

{00388596;v1}

WMI and placed it into a Federal Deposit Insurance Corporation ("FDIC") receivership. The FDIC then sold substantially all of WMI's assets to JP Morgan Chase. See Landefeld Decl. ¶2. On September 26, 2008, Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") [Docket No. 1].

The Equity Committee represents the shareholders of WMI, including the beneficial owners of shares of preferred and common stock of WMI. WMI's shareholders are, among other things, entitled to vote in the election of WMI's board of directors at an annual meeting. Washington corporate law requires corporations like WMI to hold annual meetings of its shareholders. WASH. REV. CODE §23B.07.010 (2009). WMI's fiscal year follows the calendar year; therefore, WMI's fiscal year ended on December 31, 2007, December 31, 2008, and December 31, 2009, respectively. See Exh. B: Article X, WMI's Bylaws. In addition, Section 3.1 of WMI's Bylaws provides that WMI shall hold an annual meeting of the shareholders on the third Tuesday in April of each year. See Exh. C: Declaration of Joyce M. Presnall (Mar. 10, 2010) ("Presnall Decl."); Exh. B: Corporate Bylaws of WMI.[3]

As WMI's filings with the Securities & Exchange Commission ("SEC") indicate, WMI last held an annual shareholders' meeting on April 15, 2008. See. Exh. D: SEC Filing: WMI Schedule 14A (Mar. 14, 2008).[4]

In short, WMI has not held an annual meeting of its shareholders since April 2008; it has not sent notice to its shareholders of an annual meeting in more than two years; there is no

---

[2] The Equity Committee adopts only the statements of Mr. Landefeld cited in this memorandum of law.

[3] As with SEC documents, the court may take judicial notice of the bylaws of public corporations. See, e.g., Omaha Tribe of Nebraska v. Miller, 311 F.Supp. 2d 816, 819 n.3 (S.D. Iowa 2004) (taking judicial notice of the bylaws and corporate charter of affiliated corporations).

[4] The Court may also take judicial notice of WMI's public filings with the Securities & Exchange Commission ("SEC"). See In re NAHC, Inc. Secs. Litig., 306 F.3d 1314, 1331 (3d Cir. 2002) (affirming district court's taking judicial notice of documents filed with the SEC (citing Fed. R. Evid. 201)). Accord Southmark Prime Plus, L.P. v. Falzone, 776 F. Supp. 888, 892-93 (D. Del. 1991) (holding "[j]udicial notice of public [SEC] filings is appropriate under Rule 201(b)(2)).

**Exhibit B**
**B-14**

3

meeting of WMI's shareholders currently scheduled.  See Presnall Decl.[5]

## ARGUMENT

**A.      Standard for Granting Summary Judgment**

Pursuant to Federal Rule of Civil Procedure 56(c), the moving party is entitled to summary judgment where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial and summary judgment may be granted." In re IT Group, Inc., 377 B.R. 471, 475 (Bankr. D. Del. 2007) (Walrath, J.) (quoting Matsushita Elec. Indus. Co., Ltd v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).  As this Court has recognized, "[s]ummary judgment . . . is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole which are designed to secure the just, speedy and inexpensive determination of every action." Bank of New York v. Epic Resorts-Palm Springs Marquis Villas, LLC (In re Epic Capital Corp.), 290 B.R. 514, 520 (Bankr. D. Del. 2003) (Walrath, J.) (quoting Celotex v. Catrett, 477 U.S. 317, 327 (1986)) (quotations omitted).

**B.      Washington State Law Requires WMI To Hold An Annual Shareholders' Meeting.**

Washington law provides that "a corporation shall hold a meeting of the shareholders annually for the election of directors at a time stated in or fixed in accordance with the bylaws." WASH. REV. CODE §23B.07.010(1) (2009).   According to WMI's Bylaws, the annual shareholders' meeting is supposed to occur on the third Tuesday in April of each year.  When a corporation fails to hold a meeting of its shareholders "within the earlier of six months after the

---

[5] WMI has not made any filings with the SEC indicating that an annual meeting has been held or scheduled since April 15, 2008.  If a meeting had been held or scheduled, WMI should have filed proxy statements under Rule 14a-6 of the Securities Exchange Act of 1934 and also should have distributed an annual report to shareholders.

end of the corporation's fiscal year or fifteen months after its last annual meeting," Washington law empowers the court, upon petition of a shareholder, to summarily order the corporation to hold an annual shareholders' meeting to elect directors. WAS. REV. CODE §23B.07.030(1) (2009).

WMI has entirely failed to abide by this statutory timeframe. It is undisputed that WMI last held an annual meeting of its shareholders to elect directors on or about April 15, 2008 – a period of nearly two years.

The fact that WMI operates as a debtor in possession does not obviate WMI's need to comply with the requirements of the laws of Washington State. Indeed, the Congress specifically requires that "a debtor in possession, shall manage and operate the property in his possession as such trustee, receiver or manager *according to the requirements of the valid laws of the State* in which the property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof." 28 U.S.C. §959 (emphasis added).

The Third Circuit and this Court have confirmed that a debtor in possession must abide by all state laws and may not transgress them. See City of New York v. Quanta Resources Corp. (In re Quanta Resources Group Corp.), 739 F.2d 912, 919 (3d Cir. 1984) ("Implicit in §959(b) is the notion that the goals of the federal bankruptcy laws, including rehabilitation of the debtor, do not authorize transgression of state laws setting requirements for the operation of the business even if the continued operation of the business would be thwarted by applying state laws."); ETS v. AT & T (In re PSA, Inc.), 335 B.R. 580, 587 (Bkrptcy. D. Del. 2005) (holding that "'a debtor in possession or an operating trustee in a case under the Code must comply with all applicable state laws that regulate any aspect of 'carrying on' a business. In this fundamental respect, federal bankruptcy law offers the estate representative no relief or exemption from state

5

regulatory law . . . .'" (quoting 1 COLLIER ON BANKRUPTCY ¶10.03 (15th ed. rev. 2005)). See also Hillis Motors, Inc. v. Hawaii Automobile Dealers' Ass'n, 997 F.2d 581, 593 (9th Cir. 1993) (finding that §959 "stands for the the uncontroversial proposition that a trustee must continue its operations in conformity with state law"). As clearly demonstrated, WMI has violated Washington corporate law by failing to hold an annual meeting to elect directors since April 2008.

Courts have recognized that a plaintiff who establishes that he is a shareholder in the company and that the company has not held a timely meeting has a *"virtually absolute"* right to hold a shareholder meeting to elect directors. See Saxon Indus., Inc. v. NKFW Partners, 488 A.2d 1298, 1301 (Del. 1984) (quoting Coaxial Communications, Inc. v. CAN Financial Corp, 367 A.2d 994 (Del. 1976)) (emphasis added); see also Newcastle Partners, L.P. v. Vesta Ins. Group, Inc., 887 A.2d 975, 979 (Del. Ch. 2005) (finding that "Delaware courts have repeatedly recognized that the policy justifications behind [the statute on annual shareholder meetings] are so strong that if the statutory elements are shown, *the right to relief is 'virtually absolute'*" (quoting Speiser v. Baker, 525 A.2d 1001 (Del. Ch. 1987)) (emphasis added).[6]

Courts also routinely have affirmed that a shareholder's state law right to have annual shareholder's meetings should not be disturbed regardless of a bankruptcy filing. In the analogous case of The Lionel Corp. v. Committee of Equity Security Holders of the Lionel Corp. (In re the Lionel Corp.), 30 B.R. 327 (Bankr. S.D.N.Y. 1983), an equity committee sought to have the directors call overdue annual shareholders' meetings, which the debtor opposed. See Lionel Corp., 30 B.R. at 328. Even though the debtor was in bankruptcy, the bankruptcy court agreed with the equity committee and affirmed its right to compel the directors "to honor their

---

[6] Like most states, Washington generally follows Delaware corporate law. See, e.g., Noble v. Lubrin, 114 Wash.App. 812, 818 (Wash. Ct. App. 2003) (noting with approval Delaware corporate law).

6

fiduciary duty to the shareholder through the calling of the long overdue annual meetings . . . ." Id. at 330.

Likewise, in In re Saxon Indus., 39 B.R. 49 (Bankr. S.D.N.Y. 1984), the debtor-in-possession sought injunctive relief to enjoin the equity committee's attempt to require that an annual shareholders' meeting be held under state law. See In re Saxon Indus., 39 B.R. at 50. The bankruptcy court held: "This court will not preclude the equity committee from resorting to all available legal remedies including the state court proceeding as a vehicle for asserting their fundamental rights against Saxon...to elect directors of their choice." Id. Accord In re Marvel Entertainment Group, Inc., 209 B.R. 832, 838 (D. Del. 1997) ("The right of shareholders to be represented by directors of their choice and thus to control corporate policy is paramount")(citations omitted); see also In re Bush Terminal Co., 78 F.2d 662, 664 (2d Cir. 1935) (discussing a lack of evidence showing why shareholders should not be able to vote for a new board to be elected that will act in accordance with their wishes if they feel the current board is not acting in their best interest).

WMI violated Washington law by failing to hold an annual shareholder meeting in April 2009, and WMI has not scheduled an annual shareholder meeting for April 2010 as required by Washington law and WMI's Bylaws. And, because it is undisputed that it has been more than fifteen months since WMI last held a meeting of its shareholders, the Court may order WMI to hold an annual shareholder meeting.

Washington law also allows the Court to prescribe the general tenets of the meeting, and the Court may issue a variety of orders to, among other things:

> [F]ix the time and place of the meeting, determine the shares and shareholders entitled to participate in the meeting, specify a record date for determining shareholders entitled to notice of and to vote at the meeting, prescribe the manner form, and content of the meeting notice, fix the quorum required for specific

**Exhibit B**
**B-18**

matters to be considered at the meeting, or direct that the votes represented at the meeting constitute a quorum for approval of those matters, and enter other orders necessary to accomplish the purpose or purposes of the meeting.

WASH. REV. CODE §23B.07.030(2). The Court, therefore, may issue any and all necessary orders to ensure that the meeting occurs and proceeds smoothly. The Equity Committee attaches hereto its proposed orders in accordance with the foregoing statute. See Exh. E: Proposed Orders.

Accordingly, because WMI has failed to hold a meeting as required Washington corporate law and its Bylaws, the Court should enter summary judgment in favor of the Equity Committee and enter an order compelling WMI to convene a meeting in accordance with and pursuant to the proposed orders attached hereto as Exhibit E.

### III.    CONCLUSION

For the reasons stated above, the Court should grant summary judgment to the Equity Committee, and issue an order compelling WMI to: (1) convene an annual shareholders' meeting in April 2010; (2) send notice of the meeting to the shareholders of record as of March 3, 2010 (the date the Equity Committee filed its Complaint); (3) designate the time, place, and procedures to be followed to hold the annual meeting, as well as the form of notice of the meeting to be delivered to all shareholders by WMI; and (4) enter further orders as necessary to accomplish the purposes of the meeting. In the alternative, the Court should determine that the automatic stay does not apply or grant relief from the automatic stay such that the Plaintiffs may seek such relief in Washington.

{00388596;v1}

Dated: March 11, 2010

ASHBY & GEDDES, P.A.

*(signature)*
_____
William P. Bowden (#2553)
Gregory A. Taylor (#4008)
Stacy L. Newman (#5044)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
Telephone: (302) 654-1888
Facsimile: (302) 654-2067
wbowden@ashby-geddes.com
gtaylor@ashby-geddes.com
snewman@ashby-geddes.com

*Proposed Delaware Counsel to the Official*
*Committee of Equity Security Holders of*
*Washington Mutual, Inc., et al.*

-and-

VENABLE LLP
Gregory A. Cross
750 East Pratt Street, Suite 900
Baltimore, MD 21202
Telephone: (410) 244-7400
Facsimile: (410) 244-7742
gacross@venable.com

Jorian L. Rose
1270 Avenue of the Americas
New York, NY 10020
Telephone: (212) 307-5500
Facsimile: (212) 307-5598
jlrose@venable.com

*Counsel to the Official Committee of Equity*
*Security Holders of Washington Mutual, Inc., et al.*

**Exhibit B**
**B-20**

9

{00388596;v1}

# Exhibit C

Exhibit C
C-21

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

————————————————————— X
)
*In re*                                              )
)                     Chapter 11
WASHINGTON MUTUAL, INC., et al.[1]     )
)                     Case No. 08-12229 (MFW)
Debtors.                       )
)                     Jointly Administered
)
————————————————————— )
)
OFFICIAL COMMITTEE OF EQUITY      )
SECURITY HOLDERS,                      )     Adversary Proceeding No. 10-50731 (MFW)
)
Plaintiff              )
)
- against -                    )
)
WASHINGTON MUTUAL, INC.,           )
)
Defendant              )
————————————————————— X

## OPPOSITION OF DEFENDANT WASHINGTON MUTUAL, INC.
## TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, OR IN
## THE ALTERNATIVE, FOR RELIEF FROM THE AUTOMATIC STAY

---

[1]  The Debtors in these Chapter 11 cases and the last four digits of each Debtor's federal tax identification numbers are: (i) Washington Mutual, Inc. (3725) and (ii) WMI Investment Corp. (5395).  The Debtors are located at 925 Fourth Avenue, Suite 2500, Seattle, Washington 98104.

**Exhibit C**
C-22



0812229100407000000000026

### TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND ................................................................................................................5

    A.    The DC Action ..............................................................................................5

    B.    The Bankruptcy Proceedings ........................................................................5

    C.    The Debtors' Progress in the Chapter 11 Cases and the Agreement ..............6

ARGUMENT ....................................................................................................................7

    A.    Standard of Review ......................................................................................7

    B.    The Equity Committee Ignores Four Limitations on the Ability to Compel
        a Shareholder Meeting, Which Justify Denial of the Motion ..........................8

        1.    Commencing the Action on the Eve of the Agreement and the Plan
            is a Clear Abuse of Process..................................................................8

        2.    Denial of the Motion Is Proper Because Equity Holders Are Not
            Real Parties in Interest Due to Debtors' Insolvency ...................................14

            i    The Courts Have Held That Insolvency Is A Fact Issue For
                Trial..........................................................................................14

            ii    This Court Has Already Recognized That, At A Minimum,
                Fact Issues Exist As To Insolvency ..............................................14

            iii    Even Assuming the Debtors Were to Prevail On Certain
                Litigated Claims, The Equity Committee Overstates The
                Value That Would Flow To Equity Holders....................................15

            iv    The Preferred Shareholders Cannot Change Control In Any
                Event ......................................................................................16

        3.    Denial Of Plaintiff's Motion Is Consistent with Washington Law ...........17

        4.    The Court Should Exercise its Equitable Powers to Protect the
            Interests of the Estates .....................................................................19

    C.    Even if the Court is Inclined to Grant the Motion, the Relief Requested Is
        Unlawful and Must be Modified....................................................................20

i

**Exhibit C**
**C-23**

1. The Extraordinary Request for an April 24th Meeting Should Be
   Denied, and WMI Should Be Given Sufficient Time to Prepare and
   Comply with SEC Rules ........................................................... 20

2. Request To Have The Equity Committee's Director Slate Included
   On Debtors' Proxy Statements Should Be Denied ............................. 22

D. Plaintiff's Request for Alternative Relief is Improper, the Automatic Stay
   Applies, and, In Any Event, the Court Should Stay this Action ..................... 24

1. The Equity Committee's Request for a Ruling on the Applicability
   of the Automatic Stay Should Be Denied As An Improper Request
   for an Advisory Opinion ........................................................ 24

2. The Automatic Stay Applies and the Equity Committee Has Failed
   to Show Cause For Relief Therefrom ........................................ 25

3. If Inapplicable, the Automatic Stay Should be Extended Pursuant
   to the Exercise of this Court's Equitable Powers ........................... 27

# TABLE OF AUTHORITIES

**Page**

## Cases

*In re A. H. Robins Co.,*
828 F.2d 1023 (4th Cir. 1987) ...................................................................27

*In re Acequia, Inc.,*
787 F.2d 1352 (9th Cir. 1986) ..................................................................20

*In re Allegheny Intern. Inc.,*
118 B.R. 282 (Bankr. W.D. Pa. 1990) ......................................................19

*In re Allegheny Intern. Inc.,*
1988 WL 212509 (W.D. Pa. 1988) ..............................................................9

*In re Allied Holdings, Inc.,*
2007 Bankr. LEXIS 1598 (Bankr. N.D. Ga. Apr. 19, 2007) .....................22

*American Electronic Components, Inc v. Agere Systems, Inc.,*
2009 WL 1653867 (3d Cir. 2009)................................................................8

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242, 255 (1986)............................................................................7

*Armstrong World Indus., Inc. v. Adams,*
961 F.2d 405 (3d Cir. 1992)......................................................................25

*Balaber-Strauss v. Town of Harrison (In re Murphy),*
331 B.R. 107 (Bankr. S.D.N.Y. 2005) ......................................................16

*Belcufine v. Aloe,*
112 F.3d 633 (3d Cir. 1997)......................................................................28

*In re Bicoastal Corp.,*
1989 Bankr. LEXIS 2046 (Bankr. M.D. Fla. 1989) ..................................25

*Brandt v. Trivest II, Inc (In re Plassein Intl. Corp.),*
Case No. 03-11489 (KG), Adv. Pro. No. 05-51472 (KG), [D.I. 72, 74 & 82] (Bankr. D. Del.
May 5, 2008)..............................................................................................14

*Buncher Co. v. Official Comm. of Unsecured Creditors of Genfarm Ltd.,*
229 F.3d 245 (3d Cir. 2000)......................................................................16

*Clabault v. Caribbean Select, Inc.,*
805 A.2d 913 (Del. Ch. 2002)...................................................................18

*In re Clamp-All Corp.,*
233 B.R. 198 (Bankr. D. Mass. 1999) .......................................................10

*Clark v. Modern Group Ltd.,*
    9 F.3d 321 (3d Cir. 1993)..............................................................................8

*Coaxial Communications, Inc. v. CAN Financial Corp.,*
    367 A.2d 994 (Del. 1976) ..............................................................................13

*Colo. River Water Conservation Dist. v. United States,*
    424 U.S. 800 (U.S. 1976)................................................................................24

*Connecticut Nat'l Bank v. Germain,*
    503 U.S. 249 (1992)..................................................................................25,26

*In re FSC Corp.,*
    38 B.R. 346 (Bankr. W. D. Pa. 1983) ...........................................................19

*In re Fairmont Communications Corp.,*
    No. 92-B-44861 (slip op.) (Bankr. S.D.N.Y. Mar. 3, 1993) .........................25

*Galli v. New Jersey Meadowlands Comm'n,*
    490 F.3d 265 (3d Cir. 2007)............................................................................7

*In re Gaslight Club, Inc.,*
    782 F.2d 767 (7th Cir. 1986) .........................................................................19

*Gerard v. W.R. Grace & Co. (In re W.R. Grace & Co.),*
    115 Fed. Appx. 565, 570 (3d Cir. 2004)........................................................27

*In re Guardianship of Johnson,*
    112 Wash. App. 384 (Wash.App. Div. 2,2002) .............................................18

*Hoxworth v. Blinder, Robinson & Co., Inc.,*
    903 F.2d 186, 204-05 n. 29 (3d Cir. 1990) ...................................................27

*Hugh v. Butler County Family YMCA,*
    418 F.3d 265 (3d Cir. 2005)............................................................................7

*In re I. Burack, Inc.,*
    132 B.R. 814 (Bankr. S.D.N.Y. 1991)..........................................................28

*International Raw Materials, Ltd. v. Stauffer Chem. Co.,*
    978 F.2d 1318, 1327 n. 11 (3d Cir. 1992).....................................................27

*JPMorgan Chase Bank, N.A. v. Washington Mutual, Inc. et al.,*
    Adv. Proc. No. 09-50551 (MFW).....................................................................5

*In re Johns-Manville Corp.,*
    801 F.2d 60, 65 (2d Cir. 1986) ..............................................................2, 8, 9, 14

*In re Johns-Manville Corp.,*
    66 B.R. 517 (Bankr. S.D.N.Y. 1986)........................................................9, 11

*Johns-Manville Corp. v. Asbestos Litig. Group (In re Johns-Manville Corp.),*
    26 B.R. 420 (Bankr. S.D.N.Y. 1983) *vacated in part,* 41 B.R. 926 (S.D.N.Y. 1984)............27

**Exhibit C**
**C-26**

*Johnson Forestry Contract, Inc. v Washington State Dept.,*
  130 Wash. App. 1033, 2005 WL 3113510 (Wash. App. 2005)................17

*Lane v. Phila. Newspapers, LLC (In re Phila. Newspapers, LLC),*
  2010 U.S. Dist. LEXIS 1881 (E.D. Pa. Jan. 11, 2010)................29

*In re Lifeguard Industries, Inc.,*
  37 B.R. 3 (Bankr. S.D. Ohio 1983)................19

*In re Lionel Corp.,*
  30 B.R. 327 (Bankr. S.D.N.Y. 1983)................13

*In re Marvel Enter. Group,*
  209 B.R. 832 (D. Del. 1997)................8, 26

*In re Marvel Entertainment Group,*
  234 B.R. 21 (D. Del. 1999)................29

*In re Marvel Entertainment Group, Inc.,*
  140 F.3d 463 (3d Cir. 1998)................28

*McCartney v. Integra National Bank North,*
  106 F.3d 506 (3d Cir. 1997)................25, 28

*In re Mirant Corp.,*
  334 B.R. 800 (Bankr. N.D. Tex. 2005)................14

*In re New York Trap Rock Corp.,*
  138 B.R. 420 (Bankr. S.D.N.Y. 1992)................9, 11, 12, 23, 29

*Newcastle Partners, L.P. v. Vesta, Ins. Group, Inc.,*
  887 A.2d 975 (Del. Ch. 2005)................13, 22

*Pennsylvania Dep't of Pub. Welfare v. Davenport,*
  495 U.S. 552 (1990)................26

*In re Phila. Newspapers, LLC,*
  407 B.R. 606 (E.D. Pa. 2009)................29

*In re Potter Instrument Co.,*
  593 F.2d 470 (2d Cir. 1979)................20

*Saxon Indus. v. NKFW Partners,*
  488 A.D.2d 1298 (Del. 1984)................13

*In re Sonnax Indus., Inc.,*
  907 F.2d 1280 (2d Cir. 1990)................26

*Speiser v. Baker,*
  525 A.2d 1001 (Del. Ch. 1987)................13

*State v. Montoya,*
  115 Wash. App. 1050, 2003 WL 464075 (Wash. App. 2003)................17

**Exhibit C**
**C-27**

RLF1 3557711v.2

*In re Telesphere Communications, Inc.,*
    179 Bankr. 544, 553 (Bankr. N.D. Ill. 1994) ..........................................................16

*In re Temple Retirement Community, Inc.,*
    80 B.R. 367 (Bankr. W.D.Tex. 1987) ................................................................10

*In re United Press Intern., Inc.,*
    60 B.R. 265 (Bankr. D. Dist. Col. 1986) ..........................................................19

*WMI and WMI Investment v. FDIC,*
    No. 09-00533 (D.D.C. Mar. 20, 2009) ..............................................................5

*In re W.R. Grace & Co.,*
    2007 WL 1129170 (Bankr. D. Del. Apr. 13, 2007) ..........................................26

*Washington Mutual, Inc. et al. v. JPMorgan Chase Bank, N.A.,*
    Adv. Proc. No. 09-50934 (MFW) ....................................................................6

*Whiteboard Plastics Co., Inc v. Chase National Bank of New York City,*
    179 F.2d 582 (2d Cir. 1950) ............................................................................16

*Wild West World, L.L.C. v. Mainland Valuation Servs. (In re Wild West World, L.L.C.),*
    2008 Bankr. LEXIS 2964 (Bankr. D. Kan. Oct. 1, 2008) ................................15

### Statutes

11 U.S.C. 1121 ........................................................................................................10

11 U.S.C. § 362(a)(3) ........................................................................................25, 26

11 U.S.C. § 362(d)(1) ..............................................................................................26

11 U.S.C. § 502(h) ...................................................................................................15

17 C.F.R. § 240.14a-16 ............................................................................................22

17 C.F.R. § 240.14a-3 ..............................................................................................21

17 C.F.R. § 240.14a-8(i)(8) ......................................................................................23

RCW 11.92.170 .......................................................................................................18

RCW 23B.07.030 .....................................................................................................18

RCW 23B.07.050 .....................................................................................................21

Washington's RCW 23B.07.030(1) ..........................................................................17

### Rules

Fed. R. Civ. P. 56(c) ..................................................................................................7

**Exhibit C
C-28**

### Other Authorities

Bankruptcy Amendments and Federal Judgeship Act of 1984,
  Pub. L. No. 98-353, § 441(a)(2), 98 Stat. 333 (1984) ........................................... 26

2 Wash. S.J. 2977-3112 (1989) .......................................................................... 17

2008 Columbia Bus. L. Rev. 111, 1114 (2008) ..................................................... 23

Model Business Corporations Act section 7.03, Official Comment No. 2 (2005) ........... 18

SEC Release No. 34-56135, July 26, 2007 ............................................................ 21

## PRELIMINARY STATEMENT[2]

Dissatisfied with the official committee status the U.S. Trustee bestowed upon it, by this motion (the "Motion"), the Official Committee of Equity Security Holders (the "Equity Committee") seeks to seize control over Washington Mutual, Inc. ("WMI") (together, with WMI Investment Corp., the "Debtors") to their own advantage and to the detriment of the Debtors' estates, their creditors, and other interested parties. The U.S. Trustee ostensibly formed the Equity Committee so that the interests of WMI's shareholders would have a voice in these chapter 11 cases (the "Chapter 11 Cases"). Now, the Equity Committee seeks to have that voice heard louder than all others.

Just two months after its formation, and after conferring several times with the Debtors and the Official Committee of Unsecured Creditors (the "Creditors' Committee"), and after gaining a clearer view of the economic realities of the Chapter 11 Cases, the Equity Committee has abandoned all pretense of negotiation and commenced this action (the "Action"). In doing so, the Equity Committee seeks to upset the balance envisioned by the Court (and authorized by Congress in the Bankruptcy Code), without regard to the consequences. In view of the fact that the Equity Committee represents an out-of-the-money constituency, its misplaced ambitions threaten to turn the Chapter 11 Cases on their heads and undermine the groundbreaking, yet still fragile, agreement (the "Agreement") among the Debtors, JPMorgan Chase, N.A. ("JPMC"), and the Federal Deposit Insurance Corp. (in its capacity as receiver for Washington Mutual Bank and in its corporate capacity, the "FDIC"). Ultimately, all of this will surely destabilize the process of putting the recently-filed Joint Plan of Affiliated Debtors (the "Plan") to the test of

---

[2] Capitalized terms not immediately defined shall have the meanings ascribed to them below.

**Exhibit C**
**C-30**

stakeholders' votes and this Court's evaluation under the standards of section 1129 of the Bankruptcy Code.

The Equity Committee's Motion relies on the mistaken assertion that shareholders have "a 'virtually absolute' right to hold a shareholder meeting to elect directors." (Pl. Mem. at 6). That is false. In the present case, there are four important limitations on the exercise of shareholders' rights during the bankruptcy process: (1) "clear abuse" of process; (2) insolvency of the debtor; (3) Washington law affording the Court discretion as to whether to compel a shareholders' meeting; and (4) the Bankruptcy Code's authorization of curtailment of shareholders' rights when equitable to do so. Each of these constraints provides an independent basis for denial of the Motion.

First, the law is well-settled that, where shareholders exhibit a "willingness to risk rehabilitation altogether in order to win a larger share for equity," *In re Johns-Manville Corp.*, 801 F.2d 60, 65 (2d Cir. 1986) ("*Manville I*"), their actions constitute "clear abuse" and must be denied. That is exactly what the Equity Committee seeks to do here by attempting to seize control of the Debtors and implement new, imprudent "swing for the fences" litigation strategies at this highly critical time in the Chapter 11 Cases when the Debtors have just negotiated the fragile, yet valuable, Agreement and are prosecuting the Plan. That the law safeguards against such wasteful conduct is not surprising. If such a course of conduct were pursued by the Debtors (who must consider and balance the interests of both creditors and shareholders), they would be accused of breaching their fiduciary duties.

Moreover, serious questions abound as to whether the Equity Committee possesses the resources to effectuate a proxy solicitation in any event. The law is clear that such costs must be borne by the shareholders, not by the estate. If the Equity Committee cannot fund these

**Exhibit C**
**C-31**

expenses, this is another reason why the Equity Committee's actions constitute clear abuse, because it would render the putative annual meeting an expensive exercise with no proxy contest and no practical effect. The Court need not go any further. That there exists a genuine issue of fact concerning the Equity Committee's intent (and whether it constitutes a clear abuse of the chapter 11 process) is undeniable. This alone is reason to deny the Motion.

Second, courts recognize an independent basis to deny such tactics where shareholders are out of the money, as is the case here. Evidence has already been submitted to this Court and the existence of genuine disputed issues of fact concerning the Debtors' solvency has been recognized. Additionally, it is significant that the Debtors' common shareholders – the only shareholders with the ability to replace a majority of the board – are an incremental $8.3 billion out of the money behind preferred shareholders whose purported rights are limited to voting an additional two directors to the currently serving nine directors. Thus, even if relief were granted with respect to the preferred shareholders' right to vote, it would not cause a change of control. The Debtors' insolvency is a second reason for denial of the Motion.

Third, Washington law is clear that courts have wide discretion in determining whether to compel WMI to hold an annual meeting. In view of the critical juncture at which the Chapter 11 Cases rest, the Court should exercise this discretion to ensure that the Debtors are not forced to incur wasteful expenses and endure distractions from seeking to consummate the Agreement and confirm the Plan. Indeed, the Debtors and their advisors would need to devote significant time and expense to preparing the required documents and filings (including audited financial statements), and do so at the worst possible time in the Chapter 11 Cases. The Equity Committee's desire for control cannot justify such a wasteful and potentially disastrous excursion for an out-of-the-money constituency.

**Exhibit C**
**C-32**

Fourth, the Bankruptcy Code affords the Court equitable powers that may be exercised in exactly these instances. Bankruptcy courts have exercised this authority in a variety of ways, including, *inter alia*, allowing responsible officers to vote shares to elect directors, substituting responsible officers for boards of directors, and taking other measures to preserve debtors' businesses. Here, exercise of the Court's equitable powers is appropriate to preserve the prospect of the Chapter 11 Cases' resolution in a timely and efficient fashion, and to protect the interests of creditors and other interested parties.

Denying the Motion will not prejudice the Equity Committee. If the Equity Committee is unhappy with the progress made by the Debtors in these cases, it has recourse. By its appointment, the U.S. Trustee has granted the Equity Committee a meaningful voice in the Chapter 11 Cases. The Equity Committee will have an opportunity to be heard (and object if it so desires) at any hearing to approve a settlement of estate causes of action or to approve the disclosure statement and/or to confirm the Plan. In other words, the Equity Committee has a role in these cases in the manner Congress contemplated when it drafted section 1102.

Alternatively, the Equity Committee has requested relief from the automatic stay to (re)-commence this Action in Washington state court. However, the Equity Committee first commenced this Action and sought summary judgment. Its alternative request for stay relief is not ripe for adjudication. And, the Equity Committee has not attempted to show the requisite "cause" for stay relief. Having chosen to commence this Action before this Court, the Equity Committee should not be authorized to take this Action elsewhere.

At a minimum, the Debtors should be permitted to obtain discovery into several genuine issues of fact so that they may present evidence at trial demonstrating that (1) the Equity Committee's efforts will severely jeopardize, and are in fact designed to upset, the Debtors'

**Exhibit C**
**C-33**

chapter 11 efforts at this critical juncture, and (2) the Debtors are insolvent. For all of the foregoing reasons, the Motion should be summarily denied.

## BACKGROUND

In the wake of the seizure and subsequent sale of substantially all of Washington Mutual Bank's ("WMB") assets, on September 26, 2008 (the "Petition Date"), the Debtors each commenced the Chapter 11 Cases pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Subsequently, a multitude of disputes arose among the Debtors, JPMC and the FDIC, with each asserting claims for billions of dollars against one or more of the others in various forums, including multiple litigations in this Court, the District Court for the District of Delaware, and the District Court for the District of Columbia. The factual background has been set forth in numerous pleadings with this Court, and is thus described briefly below.

### A. The DC Action

On September 25, 2008, the Director of the Office of Thrift Supervision placed WMB into receivership and appointed the FDIC as receiver. On the same day, the FDIC sold substantially all of WMB's assets to JPMC for $1.88 billion, pursuant to the Purchase and Assumption Agreement Whole Bank, dated September 25, 2008 ("P&A Agreement"). The Debtors subsequently filed a proof of claim with the FDIC, which the FDIC denied on January 23, 2009. Debtors filed a Complaint in the DC District Court on March 20, 2009, challenging the FDIC's disallowance of their initial claims, and asserting additional claims. *WMI and WMI Investment v. FDIC*, No. 09-00533 (D.D.C. Mar. 20, 2009) (the "DC Action").

### B. The Bankruptcy Proceedings

In connection with the Chapter 11 Cases, there are two relevant adversary proceedings pending. First, on March 24, 2009, JPMC filed an action against the Debtors asserting claims to assorted assets that JPMC allegedly purchased under the P&A Agreement. *JPMorgan Chase*

**Exhibit C**
**C-34**

*Bank, N.A. v. Washington Mutual, Inc et al.*, Adv. Proc. No. 09-50551 (MFW) (the "JPMC

Adversary Proceeding"). On May 29, 2009, Debtors filed an answer and counterclaims

asserting, among other things, claims for monetary relief through the avoidance of certain of the

Debtors' assets fraudulently or preferentially transferred to JPMC prior to the commencement of

the Chapter 11 Cases, as well as claims for assets that the Debtors assert were not the property of

WMB and were never transferred to JPMC under the P&A Agreement. The Debtors also filed

an action on April 27, 2009 against JPMC seeking to recover approximately $4 billion in the

Debtors' deposits (the "Deposits"), which JPMC expressly assumed under the P&A Agreement.

*Washington Mutual, Inc. et al v. JPMorgan Chase Bank, N.A.*, Adv. Proc. No. 09-50934 (MFW)

(the "Turnover Action," and with the JPMC Adversary Proceeding, the "Adversary

Proceedings").

C.    The Debtors' Progress in the Chapter 11 Cases and the Agreement

Since the Petition Date, the Debtors have worked diligently to maximize the value of

their estates. The Debtors have served their fiduciary duties well by, *inter alia*, pursuing billions

of dollars in claims through complex litigation, and having filed thirty omnibus claims objections

to date. In addition, the Debtors, the Creditors' Committee, JPMC, the FDIC and other

significant parties in interest have engaged in protracted and hard-fought negotiations seeking to

reach a global resolution of the many issues of dispute among the parties. In that vein, after the

Equity Committee was formed, the Debtors participated in several conference calls and met in

person with the Equity Committee to discuss the pending litigations, and the parties discussed

strategy in connection therewith.

On March 12, 2010, these concentrated efforts bore fruit, as the Debtors, the Creditors

Committee, JPMC, the FDIC, and several of the Debtors' significant creditor constituencies

**Exhibit C**
**C-35**

reached a global Agreement. This key achievement was announced to the Court.[3] On March 26, 2010, the Debtors filed their Plan, referencing and incorporating the Agreement, and a disclosure statement in connection therewith (the "Disclosure Statement"). The Debtors anticipate seeking Court-approval of the Disclosure Statement as soon as the final terms of the Agreement are documented.

While the Agreement and the Plan have not yet been approved, the Agreement will provide substantial recovery to the Debtors' creditors and avoid lengthy, complex, and costly litigation. As provided for by the Bankruptcy Code, the Debtors' prosecution of the Plan through the confirmation process will provide ample opportunity for the Equity Committee to voice their approval or dissent for the Plan.

## ARGUMENT

### A.    Standard of Review

Granting a motion for summary judgment "is proper when the moving party has established that there is no genuine dispute of material fact and that 'the moving party is entitled to judgment as a matter of law.'" *Galli v  New Jersey Meadowlands Comm'n*, 490 F.3d 265, 270 (3d Cir. 2007) (quoting Fed. R. Civ. P. 56(c)). A fact is material "if it might affect the outcome of the suit under the governing substantive law." *Id.* (citing *Anderson v  Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). On a motion for summary judgment, the court "must view the facts in the light most favorable to the non-moving party and must make all reasonable inferences in that party's favor." *Hugh v  Butler County Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005). A

---

[3]  *See* Tr 3/12/10 (Debtors' Counsel: "And I am happy to report today that we have a three-way understanding between the Debtors, JPMorgan Chase and the FDIC with respect to all matters."). Shortly thereafter, the three parties sent a joint letter to Judge Sleet's chambers in the United States District Court for the District of Delaware asking that the court stay all pending appeals to preserve the status quo and allow the parties to finalize the Agreement. A copy of this letter is attached hereto as Exhibit A

**Exhibit C
C-36**

dispute "is genuine if 'evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct.'" *American Electronic Components, Inc. v. Agere Systems, Inc.*, 2009 WL 1653867, at *2 (3d Cir. 2009) (quoting *Clark v. Modern Group Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993)). In this case, as demonstrated below, there are numerous triable issues of fact that go to the core of this dispute, including whether the Action constitutes "clear abuse," the Debtors' insolvency, and whether any recovery could reach WMI's common shareholders, whose claims are junior to over $8 billion in preferred stock. Because these genuine material issues can only be resolved at trial, the Motion should be denied.

**B.    The Equity Committee Ignores Four Limitations on the Ability to Compel a Shareholder Meeting, Which Justify Denial of the Motion**

The Motion is based on the mistaken assumption that shareholders have a "virtually absolute" right to hold a shareholder meeting to elect directors." (Pl. Mem. at 6). In so arguing, the Equity Committee overlooks four important constraints on the exercise of shareholders' rights that are applicable here: (1) "clear abuse" of process; (2) insolvency of the debtor; (3) Washington law affording the Court discretion as to whether to compel a shareholders' meeting; and (4) the Bankruptcy Code's authorization of curtailment of shareholders' rights when equitable to do so. Each of these constraints provides an independent basis for denial of the Motion and taken together, they provide an overwhelming basis for denial of the Motion.

*1.    Commencing the Action on the Eve of the Agreement and the Plan is a Clear Abuse of Process*

Case law in this and other circuits makes clear that the right of shareholders to call a meeting must be impaired "if the Equity Committee is guilty of 'clear abuse' in attempting to call one." *Manville I*, 801 F.2d at 64; *see also In re Marvel Enter. Group*, 209 B.R. 832, 838 (D Del. 1997). The determination "[w]hether the Equity Committee's call for a shareholders' meeting

Exhibit C
C-37

constitutes clear abuse ... [is a] *triable issue[] of fact.*" *Manville I*, 801 F.2d at 69 (emphasis

added). Thus, summary judgment in the present case is clearly inappropriate and unavailable.

Of course, clear abuse may exist short of bad faith. In assessing a "call for a

shareholders' meeting, to elect a board who will withdraw the plan of reorganization, and

whether that call constitutes a clear abuse," the Bankruptcy Court for the Southern District of

New York discussed the standard set forth by the Court of Appeals for the Second Circuit:

> [C]lear abuse of the right to call a shareholders meeting is shown
> by demonstrating that the shareholders have an intent to jeopardize
> the reorganization (including a "willingness to risk rehabilitation
> altogether in order to win a larger share for equity"), and by
> demonstrating that the effect of calling the meeting will be a "real
> jeopardy to reorganization."

*In re Johns-Manville Corp.*, 66 B.R. 517, 533 (Bankr. S.D.N.Y. 1986) ("*Manville II*") (internal

citation omitted). *Accord Marvel*, 209 B.R. at 838 (equating clear abuse with a "willingness to

risk rehabilitation altogether in order to win a larger share for equity."). In sum, and in direct

contravention of the Equity Committee's misstatement of the controlling principles of law, the

right to a shareholder meeting "*is not absolute*, and will be denied if it is found that an election of

new directors might result in an unsatisfactory management which might jeopardize the debtor's

rehabilitation and the rights of creditors and shareholders, so as to constitute a 'clear abuse.'" *In

re New York Trap Rock Corp.*, 138 B.R. 420, 423 (Bankr. S.D.N.Y. 1992) (emphasis added).[4]

Timing is particularly relevant: "an attempt to call a shareholder meeting after a plan has been

submitted to the bankruptcy court and after confirmation hearings have begun would usually be

more disruptive to the proceedings than an earlier attempt would be." *Manville I*, 801 F.2d at 66,

---

[4] Moreover, in determining what may constitute "clear abuse," courts consider the debtor's cost to be
incurred in a proxy fight that would "result[] in the expenditure of large sums of money which the debtor-
in-possession can ill afford." *In re Allegheny Intern. Inc.*, 1988 WL 212509, at *4 (W.D. Pa. 1988) As
noted, however, the case law establishes that shareholders must pay for the cost of distributing an
alternate slate of directors for any meeting.

**Exhibit C
C-38**

n.7.  "Such an attempt might also indicate bad faith and a willingness to risk jeopardy to rehabilitation."  *Id*.

Just as in *Manville II*, the Chapter 11 Cases are at a critical juncture and involve a complex, multi-party settlement.  The Debtors are prosecuting the Plan – which the Equity Committee knew would be filed at the end of the Debtors' exclusivity period – and seek to imminently finalize, request Court-approval of, and implement the Agreement through approval of the Disclosure Statement and confirmation of the Plan.  Declaration of William Kosturos ¶ 5, attached hereto as Exhibit B.  The Debtors, the Creditors Committee, the FDIC, and JPMC have exerted great efforts in negotiating the Agreement, which, if consummated and approved, would bring multiple pending litigation proceedings to an equitable resolution, and provide substantial recovery to creditors of the Chapter 11 Cases.  Kosturos Dec. ¶ 5.  The Plan incorporates the Agreement, is supported by significant creditor constituencies, and further provides for the emergence of a reorganized debtor, a rarity in recent bankruptcies.  Kosturos Dec. ¶ 5.  The Equity Committee's attempt to compel a shareholders' meeting in order to replace the board with its own nominees -- at this late stage in the Chapter 11 Cases – is a transparent design to disrupt and, in fact, cause the implosion of the Chapter 11 Cases.  Rather than allow an orderly plan confirmation process to unfold, the Equity Committee appears willing to delay recoveries for the Debtors' creditors, all in an effort to extract a distribution to out-of-the-money shareholders.  This naked grab for power is not a legitimate justification for the relief the Equity Committee seeks.[5]

---

[5]  The Equity Committee's actions are particularly troublesome given that Debtors' exclusivity period remains pending pursuant to 11 U.S.C. 1121.  The Equity Committee's actions are tantamount to a de facto proposal that shareholders hold-out for an alternative to the Plan.  Such suggestions are prohibited. *In re Clamp-All Corp.*, 233 B.R. 198, 207 (Bankr. D. Mass. 1999) (section 1121 embodies "Congress' intention to allow the debtor a reasonable time to obtain confirmation of a plan without the threat of a

**Exhibit C**
**C-39**

The fact that the Agreement has not yet evolved into a final agreement only underscores the need to protect against "clear abuse." In fact, in *Manville II*, the bankruptcy court noted that "the fact that there is a substantial *but fragile* consensus is not one that this court will take lightly." 66 B.R. at 536 (emphasis added). Just as in *Manville II*, the fragile nature of the Agreement only makes the Chapter 11 Cases more susceptible to, and heightens the need for protection against, tactics that constitute clear abuse.

At a minimum, denial of the Equity Committee's Motion is appropriate in order to give the Debtors the "right to a fair hearing" on whether the Equity Committee's actions constitute clear abuse. *Manville I*, 801 F.2d at 66. In remanding to the bankruptcy court for a hearing on clear abuse, the Second Circuit expressly held that "[w]hether the Equity Committee's call for a shareholders' meeting constitutes clear abuse and whether such a meeting would cause irreparable harm to [the debtor's] reorganization *are triable issues of fact*," requiring a fact-specific, "more elaborate inquiry" at an evidentiary hearing. *Id.* at 69 (emphasis added). Likewise, in *Trap Rock*, the court grounded its denial of a motion to dismiss on the need for an evidentiary hearing to determine whether "the Equity Committee may have a private agenda in seeking an annual shareholders' meeting..." 138 B.R. at 424. Similarly, the Debtors should have a reasonable opportunity to discover and develop relevant facts for presentation at an evidentiary hearing.

For example, on remand, the *Manville II* bankruptcy court unearthed facts that it determined to constitute clear abuse, and of a kind likely to be discovered here. The equity

---

competing plan."); *In re Temple Retirement Community, Inc.*, 80 B.R. 367, 369 (Bankr. W.D.Tex. 1987) (prohibiting creditors from undermining the Debtors' plan, filed during the exclusivity period, by suggesting that there is "a better alternative just around the bend").

**Exhibit C**
**C-40**

constituency was faced with a plan that they believed would "virtually wipe out their entire interest." 66 B.R. at 534. Shareholders understood that no change in "litigation strategy will be effective in improving the position of shareholders to any great extent…[thus,] current shareholders might do well by simply torpedoing the agreement altogether." *Id.* Judge Lifland determined that the decision to seek to nominate a slate of new directors was "the means chosen to achieve the [foregoing] ends." *Id.* The evidence was clear that the shareholders' aim was "a reformulation of the current plan and not merely an election of a new Board of Directors at the shareholders' meeting…." *Id.* at 535.

Here, the Equity Committee has already voiced its opposition to both the Agreement and the Plan. *See* Official Committee of Equity Security Holders of Washington Mutual, Inc. Deliver Statement Regarding Proposed Agreement, PRNewswire, (Mar. 17, 2010) ("The Committee anticipates that the Debtors will seek approval of the Proposed Settlement and its plan of reorganization 60-90 days from [March 26, 2010]. The Committee … does not support, the Proposed Agreement…. At this time, the Committee intends to object to the Proposed Agreement.").[6] If shareholders use the shareholder meeting to seize control and undo the multilateral consensus it has taken over a year to accomplish through the Plan, it is undeniable that numerous creditor groups would promptly move to terminate exclusivity to pursue the Plan as their own; chaos would ensue. The Equity Committee figures that it has nothing to lose; however, there is no viable alternative plan that the Equity Committee can possibly propose other than implementing new, speculative, and reckless "swing for the fences" litigation

---

[6] *See* http://www.prnewswire.com/news-releases/official-committee-of-equity-security-holders-of-washington-mutual-inc-deliver-statement-regarding-proposed-settlement-88237597.html.

**Exhibit C**
**C-41**

strategies that would fail under any fiduciary-duty metric.[7] Moreover, such a plan construct has

no realistic chance of success given the risk and sacrifices that creditors would be necessarily

asked to shoulder.[8]

Notably, the Equity Committee does not cite *any* precedent in which a court has short-

circuited this necessary evidentiary process by deciding on *summary judgment, prior to any*

*discovery whatsoever,* whether the shareholder actions at issue constitute clear abuse. *See* Pl.

Mem. at 6 (citing *Saxon Indus. v. NKFW Partners*, 488 A.D.2d 1298 (Del. 1984) (right to hold

shareholder meeting decided after trial); *Newcastle Partners, L.P. v. Vesta, Ins. Group, Inc.*, 887

A.2d 975, 977 (Del. Ch. 2005), *aff'd*, 906 A.2d 807 (Del. 2005) (same)).[9]

---

[7] As discussed more fully below, the case law is clear that the Equity Committee's request that the Debtors' estates incur the costs for distributing proxy materials for the Equity Committee's slate of proposed directors is improper. *See Trap Rock*, 138 B.R. at 424 ("In the event that the Equity Committee succeeds on the merits, and an annual meeting is directed, counsel for the Equity Committee may not be compensated for any services performed beyond the adversary proceeding in connection with the shareholders' meeting. All shareholder costs and expenses with respect to [the debtor's] annual meeting must be borne by the shareholders themselves."). Unless the Equity Committee is able to demonstrate to the Court that it has the independent resources to cover the costs for distribution of a proxy statement, this Action is revealed to be nothing more than a vehicle to waste the estates' resources that poses "real jeopardy to reorganization prospects." *Manville*, 801 F.2d at 67

[8] *See Manville*, 66 B.R. at 535 (finding that the Equity Committee was seeking, "in utter disregard of the devastating consequences of its conduct," to "achieve a substantial change in the plan of reorganization more favorable to Equity than to those constituencies higher up on the ladder of distributive rights.") In addition, the court found that "[t]he prospects of any potential coalition forming around some new or competing plan is less than dismal." *Id.* at 536.

[9] The Equity Committee cites *Coaxial Communications, Inc v. CAN Financial Corp*, 367 A.2d 994 (Del. 1976), and *Speiser v. Baker*, 525 A.2d 1001 (Del. Ch. 1987), in support of its Motion. However, these Delaware cases do not mention, much less determine, whether conduct constitutes, clear abuse or bad faith. The Equity Committee's reliance on *In re Lionel Corp*, 30 B.R. 327 (Bankr. S.D N.Y. 1983), is equally misplaced. *Lionel* only held that the defendant did not satisfy the stringent standards for obtaining a preliminary injunction to enjoin a state court proceeding seeking to compel a shareholder meeting In declining to enjoin the state court action, *Lionel* never determined whether, *in fact*, such a meeting should be compelled. Any statements by the court in support of the shareholders were thus mere *dicta*. In any case, since the Equity Committee selected to bring its Action in this Court, enjoinment of a state court action is not now at issue, and *Lionel* is inapplicable to whether clear abuse should be evaluated at trial.

**Exhibit C**
**C-42**

In short, whether the Equity Committee's actions constitute clear abuse is an obvious

issue of material fact in genuine dispute, and therefore summary judgment should be denied.

    **2.**    *Denial of the Motion Is Proper Because Equity Holders Are Not Real Parties in Interest Due to Debtors' Insolvency*

        *i*    *The Courts Have Held That Insolvency Is A Fact Issue For Trial*

There are additional issues of fact that require denial of the Motion, including factual

issues concerning the Debtors' insolvency. The Court of Appeals for the Second Circuit in

*Manville I* recognized that "denial of the right to call a meeting would likely be proper" if the

debtor "were determined to be insolvent … because the shareholders would no longer be real

parties in interest." 810 F.2d at 65, n.6; *see also, e.g., In re Mirant Corp.*, 334 B.R. 800, 807

(Bankr. N.D. Tex. 2005) (referencing the court's prior conclusion that a hearing to determine the

debtors' enterprise value was a logical and preferable predicate to immediately allowing

"shareholders, who might or might not ultimately be determined to have an economic interest in

[the debtors'] value," to have a meeting and replace management). The courts have also

recognized that, as a rule, "determinations of solvency and insolvency are fact intensive by

nature. Accordingly, summary judgment [on the question of insolvency] is not appropriate."

*Brandt v. Trivest II, Inc (In re Plassein Intl. Corp )*, Case No. 03-11489 (KG), Adv. Pro. No. 05-

51472 (KG), [D.I. 72, 74 & 82] (Bankr. D. Del. May 5, 2008) (internal citation omitted).

        *ii*    *This Court Has Already Recognized That, At A Minimum, Fact Issues Exist As To Insolvency*

Here, there is no doubt that the Debtors' insolvency is, at a minimum, a triable issue of

fact making summary judgment improper.

In support of the Debtors' Motion for an Order (A) Disbanding Such Committee or (B)

Limiting the Fees and Expenses Which May be Incurred by Such Committee ("<u>Motion to</u>

<u>Disband</u>" [D.I. 2132]), the Debtors submitted evidence to the Court that their estates were

**Exhibit C**
**C-43**

currently burdened with liabilities of $8.294 billion plus an additional $50 billion of claims (not including unliquidated claims). The Debtors incorporate in this motion the same evidence concerning insolvency that they previously put into the record on the Motion To Disband.[10] When this Court previously considered the evidence submitted by the Equity Committee and by the Debtors, this Court recognized that *"[t]here is clearly evidence both ways as to the insolvency of the Debtor." See* Tr. 1/28/10 at 59:7-8 (emphasis added). The Equity Committee has submitted nothing new on this Motion to overcome that conclusion. For this reason alone, the Motion must be denied.

> ### iii     Even Assuming the Debtors Were to Prevail On Certain Litigated Claims, The Equity Committee Overstates The Value That Would Flow To Equity Holders

Moreover, in a flawed attempt to demonstrate that equity holders are an in-the-money constituency, the Equity Committee drastically overstates the value of the Debtors' causes of action vis-a-vis equity holders. Even assuming *arguendo* that the Debtors procured total victories on certain of their claims, it would not mean that a penny goes to equity holders. For example, the Equity Committee has previously stated that "recovery of only the liquidated amounts sought by the Debtors in the Pending Litigation will result in recovery for the equity holders."[11] But at least $10.651 billion of the claims the Equity Committee referenced are avoidance actions that will not yield any recovery whatsoever to equity holders.

Prevailing on such claims would likely give rise to resulting unsecured claims against the Debtors' estates that would increase the amount of existing claims *that come ahead of equity* in

---

[10]  *See* Tr. 1/28/10 at 9:19-22 ("The three documents that I provided, I believe, are, will be admitted into evidence on a consensual basis. And that will go to the asset and liability issue, Your Honor."). A copy of the transcript is attached hereto as Exhibit C  The Debtors incorporate such evidence herein and re-submit it to the Court. Maciel Dec. ¶ 5.

[11]  *See* Opposition of the Equity Committee to the Motion to Disband at 3 [D.I. 2185].

**Exhibit C**
**C-44**

RLF1 3557711v 2

the same amount as the judgment. *See* 11 U.S.C. § 502(h); *see also Wild West World, L.L.C. v Mainland Valuation Servs. (In re Wild West World, L.L.C.)*, 2008 Bankr. LEXIS 2964, *11 (Bankr. D. Kan. Oct. 1, 2008) (noting that defendant/transferee in successful constructive fraudulent transfer action is left with an allowable unsecured claim against the debtor's estate); *In re Telesphere Communications, Inc.*, 179 Bankr. 544, 553 (Bankr. N.D. Ill. 1994) ("Avoidance of a preference results in a return of transferred property to the estate, but may also result in the defendant asserting a claim that otherwise would have been satisfied by the transferred property"). Thus, notwithstanding the considerable dollar amounts that the Equity Committee highlights, prevailing on these claims would not yield value to equity.[12]

Finally, beyond the $8.294 billion in liabilities, there are approximately $7.5 billion in preferred shares outstanding ahead of common shareholders. Declaration of John Maciel ¶ 6, attached hereto as Exhibit D. Moreover, there are more than $835.6 million in unpaid dividends on preferred shares that would need to be paid before any common shareholder recovery. Maciel Dec. ¶ 6. Thus, the common equity holders, who stand behind more than $8.3 billion in preferred equity interests, clearly should not be permitted to call a meeting or vote for directors at any such meeting.

       *iv*       *The Preferred Shareholders Cannot Change Control In Any Event*

---

[12] Moreover, avoidance actions are to be maintained for the benefit of creditors, not the debtor. *See Buncher Co. v. Official Comm. of Unsecured Creditors of Genfarm Ltd.*, 229 F.3d 245, 250 (3d Cir. 2000) ("The purpose of fraudulent conveyance law is to make available to creditors those assets of the debtor that are rightfully a part of the bankruptcy estate, even if they have been transferred away."); *Whiteboard Plastics Co., Inc. v. Chase National Bank of New York City*, 179 F.2d 582, 584 (2d Cir. 1950) (court denied avoidance of a lien finding it was "not in the interest of the general creditors," concluding that the debtor sought avoidance "purely for its own benefit"). Thus, even assuming that section 502(h) were inapplicable, avoidance actions may not recover value for equity. *Balaber-Strauss v. Town of Harrison (In re Murphy)*, 331 B.R. 107, 126 (Bankr. S.D.N.Y. 2005) (holding that trustee has the right to avoid transfer as fraudulent "but only to the extent necessary to satisfy allowed prepetition and administrative creditor claims, i.e., those legally harmed by the transfer.")

Additionally, there is no practical reason to afford even the preferred shareholders the right to vote. Under WMI's Articles of Incorporation, the preferred shareholders' voting rights are limited to the power to "elect two directors in addition to the directors then in office."[13] Articles of Incorporation § 8, Voting Rights. Thus, even if the Motion were granted with respect to the preferred shareholders, and they, voting as a single class, elected two new directors in addition to the currently serving nine directors, there would be no change of control.[14]

As this Court has already acknowledged, at a minimum, a genuine disputed issue of fact exists as to Debtors' insolvency. This is a second reason that requires the Motion be denied.

### 3. Denial Of Plaintiff's Motion Is Consistent with Washington Law

Washington law affords the Court discretion to determine whether it should grant or deny a shareholder request to compel an annual meeting. Washington's RCW 23B.07 030(1) states that "the superior court .. *may*, after notice to the corporation, summarily order a [shareholder] meeting to be held." (emphasis added). In Washington, as elsewhere, courts interpret a statute based upon "the plain meaning of words used in a statute." *Johnson Forestry Contract, Inc. v Washington State Dept.*, 130 Wash. App. 1033, 2005 WL 3113510, at *4 (Wash. App. 2005) (citation and quotation omitted); *State v. Montoya*, 115 Wash. App. 1050, 2003 WL 464075, at *3 (Wash. App. 2003) (looking first to the plain meaning, and noting that "[a] nontechnical statutory term may be given its dictionary meaning") (citation omitted)). Reiterating that the statute should be read according to its plain meaning, the legislative history of Section 7 030 removes any doubt, explaining that the "court has discretion ... since the language of the statute

---

[13] *See* Articles of Amendment to Articles of Incorporation,"Series R, Dec. 17, 2007, § 15 Articles of Amendment to Articles of Incorporation," Series K, Sept. 14, 2006, § 8, attached hereto as Exhibit E

[14] In addition to further establishing just how "underwater" common shareholders are, this is further indicia that the Action constitutes clear abuse of the Chapter 11 Cases.

Exhibit C
C-46

is that the court *'may* summarily order' that a meeting be held." Comments, Washington

Business Corporation Act, 2 Wash. S.J. 2977-3112 (1989) (emphasis in original.). *See also*

Model Business Corporations Act section 7.03, Official Comment No. 2 (2005) ("The court has

discretion under section 7.03 since the language of the statute is that the court "may summarily

order" that a meeting be held."). Thus, under Washington law the court's authority to compel a

shareholders' meeting is indisputably discretionary. [15]

Although the Debtors are aware of no Washington case interpreting this provision, in

*Clabault v. Caribbean Select, Inc.*, 805 A.2d 913 (Del. Ch. 2002), the Delaware Chancery Court

interpreted "may" in a Delaware statute analogous to RCW 23B.07.030, and concluded that "the

conditional language of the statute supports the conclusion that the decision regarding whether or

not to order an annual meeting pursuant to [the Washington analog] is discretionary." *Id.* at 918.

"The use of the terms *'may* summarily order' in the statute obviously reposes a discretion in the

Court to be exercised in light of the existing circumstances." *Id.* (emphasis in the original).

Accordingly, the *Clabault* court refused to order the shareholder meeting of the former debtor

corporation due to the shareholders' bad intent even though the statutory elements for prima facie

relief were met. *Id.*

The existing circumstances of the Chapter 11 Cases, including the willingness exhibited

by the Equity Committee to jeopardize the Debtors' reorganization in order to extract a recovery

for equity and the fact that the Debtors are insolvent, call this Court to exercise the discretion

---

[15]    In a case of first impression interpreting Washington statute RCW 11.92.170, which provides that
"the court may order the transfer of property" of an incapacitated person to a guardian, the Washington
Appellate division upheld the lower court's choice to exercise it discretion and refrain from ordering a
transfer, holding that " 'may,' in its ordinary and usual meaning, conveys the idea of choice, option or
discretion ... [and the] general rule of statutory construction has long been that the word 'may' when used
in a statute or ordinance is permissive and operates to confer discretion." *In re Guardianship of Johnson*,
112 Wash.App. 384, 387 (Wash.App. Div. 2,2002).

**Exhibit C
C-47**

Washington law expressly affords to deny the Motion and avoid the unnecessary expense and potential disastrous effects that the Equity Committee's Action is designed to effectuate.

### 4. The Court Should Exercise its Equitable Powers to Protect the Interests of the Estates

Courts have found that "the shareholders' right to control a Chapter 11 debtor-in-possession is not without limitations under the Bankruptcy Code." *In re Lifeguard Industries, Inc.*, 37 B.R. 3, 17 (Bankr. S.D. Ohio 1983) (denying majority shareholder the right to "install a new [inexperienced] management slate"; ordering the board "not to interfere with the day-to-day operations of the corporation.") Specifically, section 105 of the Bankruptcy Code codifies the Court's equitable powers, empowering the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." *In re Gaslight Club, Inc.*, 782 F.2d 767, 770 (7th Cir. 1986) (noting that the "case law demonstrates that the court has considerable authority to interfere with the management of a debtor corporation in order to protect the creditors' interests") (citation omitted). Courts may use their equitable powers to "assure the orderly conduct of the reorganization proceedings ... to prevent activities which would delay or thwart efforts to reorganize the debtor ... and to block actions which tend to defeat or impair its jurisdiction." *In re Allegheny Intern. Inc.*, 118 B.R. 282, 303 (Bankr. W.D. Pa. 1990) (citations omitted).

Courts have exercised this authority in a variety of ways, including abolishing boards of directors, allowing responsible officers to vote shares to elect directors, substituting responsible officers for boards of directors, and taking other measures to preserve debtors' businesses.[16]

---

[16] *In re Gaslight Club, Inc.*, 782 F.2d 767, 770-72 (7th Cir. 1986) (replacing the majority shareholder/president of debtor with a "responsible officer" to exercise debtor-in-possession powers); *In re United Press Intern., Inc.*, 60 B.R. 265, 274 (Bankr. D. Dist. Col. 1986) (abolishing the debtor's board of directors and authorizing its management to file a plan); *In re FSC Corp*, 38 B.R. 346 (Bankr. W.D.

**Exhibit C**
**C-48**

Here, fairness demands that any final judgment in the Action be delayed pending the Plan's

confirmation process, or at the very least, until holding an evidentiary hearing concerning the

Debtors' solvency and the Equity Committee's intentions. *See In re Acequia, Inc.*, 787 F.2d

1352, 1362 (9th Cir. 1986) (upholding denial of shareholder voting rights during pendency of the

reorganization plan "so as to preserve the prospects of reorganization and protect the interests of

creditors, shareholders and interested parties"); *In re Potter Instrument Co.*, 593 F.2d 470 (2d

Cir. 1979) (holding that bankruptcy court was justified in denying the majority shareholder's

petition, under the corporate bylaws, for a special meeting to elect new directors because "such

an election might result in unsatisfactory management and would probably jeopardize both [the

Debtor's] rehabilitation and the rights of creditors and stockholders.").

C. **Even if the Court is Inclined to Grant the Motion, the Relief Requested Is Unlawful and Must be Modified**

1. *The Extraordinary Request for an April 24th Meeting Should Be Denied, and WMI Should Be Given Sufficient Time to Prepare and Comply with SEC Rules*

Should the Court compel an annual meeting, WMI will require time for reasonable

preparation, including time to comply with federal securities laws requiring public companies to

prepare audited annual financial statements, as well as a proxy statement, and disseminate those

documents to shareholders prior to the annual meeting. Under rules promulgated under the

Securities Exchange Act of 1934 (the "Exchange Act"), an issuer of securities registered under

Section 12 of the Exchange Act that solicits proxy votes from its shareholders must make

available to each shareholding household a copy of its preliminary or definitive proxy statement

---

Pa. 1983) (upholding the authority of the court-appointed "responsible officer" to conduct the affairs of
the debtor corporation, including voting parent-owned shares for the appointment of directors of
subsidiaries); *Lifeguard Industries, Inc.*, 37 B.R. 3 (Bankr. Ohio 1983) (court used its authority to block a
new slate of directors from appointing new management or from taking any action to interfere with the
operations of the debtor.).

**Exhibit C**
**C-49**

according to the requirements of Schedule 14A under the Exchange Act (the "Proxy Statement"), audited balance sheets for the two most recent fiscal years, and audited statements of income and cash flows for each of the three most recent fiscal years (the "Annual Reports"). 17 C.F.R. § 240.14a-3.

Mindful of preserving the limited assets of their estates, and after notifying the U.S. Securities and Exchange Commission (the "SEC") of their intent to do so immediately following commencement of the Chapter 11 Cases, WMI, with the acquiescence of the SEC, has not prepared or filed audited financial statements since the Petition Date, and has not retained an auditor. Kosturos Dec. ¶ 15.[17] WMI therefore would be required to compile and have audited annual reports for the 2008 and 2009 fiscal years. The Equity Committee's request that the meeting be held on April 24, 2010 (Proposed Order at 2), is thus entirely untenable and requires WMI to violate federal securities laws.[18] In addition to the minimum ten-day notice required by Washington statute, see RCW 23B.07.050, WMI estimates that it would require at least 180 days to prepare audited financial statements for 2008 and 2009.[19] Kosturos Dec. ¶ 15. Separately, WMI estimates it would require at least 60 days to prepare a proxy statement. Kosturos Dec. ¶ 15. In order to avoid the substantial cost of distributing hard-copies of the proxy to all shareholders,[20] upon completion of the proxy statement, WMI must provide notice of the Internet

---

[17] The SEC Staff's Legal Bulletin No. 2 expressly contemplates the use of such "modified Exchange Act reporting" during the pendency of chapter 11 bankruptcy proceedings. Accordingly, the Debtors' decision not to prepare and file 10-Ks and 10-Qs during the Chapter 11 Cases is unremarkable.

[18] The Equity Committee acknowledges as much, complaining that the Debtors have "violated" the law by not holding a shareholder meeting. (See Pl Mem. at 4 n.5.)

[19] The 180-day period is a good faith estimate. WMI cannot guarantee that it will be able to procure audited financial statements in this period.

[20] Associated Data Processing, which is the largest distributor of proxy materials in the U.S., estimates that during the 2006 proxy season the cost of printing and mailing a proxy statement, on average, was

**Exhibit C**
**C-50**