# Exhibit 4

**Exhibit 4**
**4-40**

HEARING DATE: April 21, 2010 at 11:30 AM

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

|  |  |
|---|---|
| ------------------------------------------------ X | |
| *In re* ) | |
| ) | Chapter 11 |
| WASHINGTON MUTUAL, INC., et al.[1] ) | |
| ) | Case No. 08-12229 (MFW) |
| Debtors. ) | |
| ) | Jointly Administered |
| ------------------------------------------------ ) | |
| ) | |
| OFFICIAL COMMITTEE OF EQUITY ) | |
| SECURITY HOLDERS, ) | Adversary Proceeding No. 10-50731 (MFW) |
| ) | |
| Plaintiff ) | |
| ) | |
| - against - ) | |
| ) | |
| WASHINGTON MUTUAL, INC., ) | |
| ) | |
| Defendant ) | |
| ------------------------------------------------ X | |

**OPPOSITION OF DEFENDANT WASHINGTON MUTUAL, INC.
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, OR IN
THE ALTERNATIVE, FOR RELIEF FROM THE AUTOMATIC STAY**

---

[1]  The Debtors in these Chapter 11 cases and the last four digits of each Debtor's federal tax identification numbers are: (i) Washington Mutual, Inc. (3725) and (ii) WMI Investment Corp. (5395).  The Debtors are located at 925 Fourth Avenue, Suite 2500, Seattle, Washington 98104.

**Exhibit 4**
**4-41**



0812229100407000000000026

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................1

BACKGROUND ...................................................................................................................5

    A.    The DC Action.............................................................................................5

    B.    The Bankruptcy Proceedings ...................................................................5

    C.    The Debtors' Progress in the Chapter 11 Cases and the Agreement...................6

ARGUMENT.........................................................................................................................7

    A.    Standard of Review ....................................................................................7

    B.    The Equity Committee Ignores Four Limitations on the Ability to Compel a Shareholder Meeting, Which Justify Denial of the Motion ...................8

        1.    Commencing the Action on the Eve of the Agreement and the Plan is a Clear Abuse of Process..............................................8

        2.    Denial of the Motion Is Proper Because Equity Holders Are Not Real Parties in Interest Due to Debtors' Insolvency ...................14

            i    The Courts Have Held That Insolvency Is A Fact Issue For Trial.......................................................................14

            ii    This Court Has Already Recognized That, At A Minimum, Fact Issues Exist As To Insolvency ..............................14

            iii    Even Assuming the Debtors Were to Prevail On Certain Litigated Claims, The Equity Committee Overstates The Value That Would Flow To Equity Holders...................15

            iv    The Preferred Shareholders Cannot Change Control In Any Event ....................................................................16

        3.    Denial Of Plaintiff's Motion Is Consistent with Washington Law............17

        4.    The Court Should Exercise its Equitable Powers to Protect the Interests of the Estates .......................................................19

    C.    Even if the Court is Inclined to Grant the Motion, the Relief Requested Is Unlawful and Must be Modified..............................................20

**Exhibit 4**
**4-42**

1. The Extraordinary Request for an April 24th Meeting Should Be Denied, and WMI Should Be Given Sufficient Time to Prepare and Comply with SEC Rules...........20

2. Request To Have The Equity Committee's Director Slate Included On Debtors' Proxy Statements Should Be Denied........22

D. Plaintiff's Request for Alternative Relief is Improper, the Automatic Stay Applies, and, In Any Event, the Court Should Stay this Action........24

1. The Equity Committee's Request for a Ruling on the Applicability of the Automatic Stay Should Be Denied As An Improper Request for an Advisory Opinion........24

2. The Automatic Stay Applies and the Equity Committee Has Failed to Show Cause For Relief Therefrom........25

3. If Inapplicable, the Automatic Stay Should be Extended Pursuant to the Exercise of this Court's Equitable Powers........27

# TABLE OF AUTHORITIES

**Page**

### Cases

*In re A. H. Robins Co.,*
828 F.2d 1023 (4th Cir. 1987) ................................................................................... 27

*In re Acequia, Inc.,*
787 F.2d 1352 (9th Cir. 1986) .................................................................................. 20

*In re Allegheny Intern. Inc.,*
118 B.R. 282 (Bankr. W.D. Pa. 1990) ...................................................................... 19

*In re Allegheny Intern. Inc.,*
1988 WL 212509 (W.D. Pa. 1988) ............................................................................. 9

*In re Allied Holdings, Inc.,*
2007 Bankr. LEXIS 1598 (Bankr. N.D. Ga. Apr. 19, 2007) ................................... 22

*American Electronic Components, Inc v. Agere Systems, Inc.,*
2009 WL 1653867 (3d Cir. 2009) ............................................................................... 8

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242, 255 (1986) ............................................................................................ 7

*Armstrong World Indus., Inc. v. Adams,*
961 F.2d 405 (3d Cir. 1992) ..................................................................................... 25

*Balaber-Strauss v. Town of Harrison (In re Murphy),*
331 B.R. 107 (Bankr. S.D.N.Y. 2005) ..................................................................... 16

*Belcufine v. Aloe,*
112 F.3d 633 (3d Cir. 1997) ..................................................................................... 28

*In re Bicoastal Corp.,*
1989 Bankr. LEXIS 2046 (Bankr. M.D. Fla. 1989) ................................................. 25

*Brandt v. Trivest II, Inc (In re Plassein Intl. Corp.),*
Case No. 03-11489 (KG), Adv. Pro. No. 05-51472 (KG), [D.I. 72, 74 & 82] (Bankr. D. Del.
May 5, 2008) .............................................................................................................. 14

*Buncher Co. v. Official Comm. of Unsecured Creditors of Genfarm Ltd.,*
229 F.3d 245 (3d Cir. 2000) ..................................................................................... 16

*Clabault v. Caribbean Select, Inc.,*
805 A.2d 913 (Del. Ch. 2002) .................................................................................. 18

*In re Clamp-All Corp.,*
233 B.R. 198 (Bankr. D. Mass. 1999) ...................................................................... 10

*Clark v. Modern Group Ltd.*,
9 F.3d 321 (3d Cir. 1993) ..................................................................................................8

*Coaxial Communications, Inc. v. CAN Financial Corp.*,
367 A.2d 994 (Del. 1976) .................................................................................................13

*Colo. River Water Conservation Dist. v. United States*,
424 U.S. 800 (U.S. 1976) ...................................................................................................24

*Connecticut Nat'l Bank v. Germain*,
503 U.S. 249 (1992) .....................................................................................................25,26

*In re FSC Corp.*,
38 B.R. 346 (Bankr. W. D. Pa. 1983) .................................................................................19

*In re Fairmont Communications Corp.*,
No. 92-B-44861 (slip op.) (Bankr. S.D.N.Y. Mar. 3, 1993) .............................................25

*Galli v. New Jersey Meadowlands Comm'n*,
490 F.3d 265 (3d Cir. 2007) ...............................................................................................7

*In re Gaslight Club, Inc.*,
782 F.2d 767 (7th Cir. 1986) ............................................................................................19

*Gerard v. W.R. Grace & Co. (In re W.R. Grace & Co.)*,
115 Fed. Appx. 565, 570 (3d Cir. 2004) ...........................................................................27

*In re Guardianship of Johnson*,
112 Wash. App. 384 (Wash.App. Div. 2,2002) ................................................................18

*Hoxworth v. Blinder, Robinson & Co., Inc.*,
903 F.2d 186, 204-05 n. 29 (3d Cir. 1990) .......................................................................27

*Hugh v. Butler County Family YMCA*,
418 F.3d 265 (3d Cir. 2005) ...............................................................................................7

*In re I. Burack, Inc.*,
132 B.R. 814 (Bankr. S.D.N.Y. 1991) ...............................................................................28

*International Raw Materials, Ltd. v. Stauffer Chem. Co.*,
978 F.2d 1318, 1327 n. 11 (3d Cir. 1992) .........................................................................27

*JPMorgan Chase Bank, N.A. v. Washington Mutual, Inc. et al.*,
Adv. Proc. No. 09-50551 (MFW) .........................................................................................5

*In re Johns-Manville Corp.*,
801 F.2d 60, 65 (2d Cir. 1986) ...............................................................................2, 8, 9, 14

*In re Johns-Manville Corp.*,
66 B.R. 517 (Bankr. S.D.N.Y. 1986) ..............................................................................9, 11

*Johns-Manville Corp. v. Asbestos Litig. Group (In re Johns-Manville Corp.)*,
26 B.R. 420 (Bankr. S.D.N.Y. 1983) *vacated in part*, 41 B.R. 926 (S.D.N.Y. 1984) ...........27

*Johnson Forestry Contract, Inc. v. Washington State Dept.*,
    130 Wash. App. 1033, 2005 WL 3113510 (Wash. App. 2005)................................17

*Lane v. Phila. Newspapers, LLC (In re Phila. Newspapers, LLC)*,
    2010 U.S. Dist. LEXIS 1881 (E.D. Pa. Jan. 11, 2010) ................................29

*In re Lifeguard Industries, Inc.*,
    37 B.R. 3 (Bankr. S.D. Ohio 1983).................................................19

*In re Lionel Corp.*,
    30 B.R. 327 (Bankr. S.D.N.Y. 1983)...............................................13

*In re Marvel Enter. Group*,
    209 B.R. 832 (D. Del. 1997) ....................................................8, 26

*In re Marvel Entertainment Group*,
    234 B.R. 21 (D. Del. 1999) .....................................................29

*In re Marvel Entertainment Group, Inc.*,
    140 F.3d 463 (3d Cir. 1998)....................................................28

*McCartney v. Integra National Bank North*,
    106 F.3d 506 (3d Cir. 1997).................................................25, 28

*In re Mirant Corp.*,
    334 B.R. 800 (Bankr. N.D. Tex. 2005)...........................................14

*In re New York Trap Rock Corp.*,
    138 B.R. 420 (Bankr. S.D.N.Y. 1992) ................................9, 11, 12, 23, 29

*Newcastle Partners, L.P. v. Vesta, Ins. Group, Inc.*,
    887 A.2d 975 (Del. Ch. 2005)................................................13, 22

*Pennsylvania Dep't of Pub. Welfare v. Davenport*,
    495 U.S. 552 (1990) ..........................................................26

*In re Phila. Newspapers, LLC*,
    407 B.R. 606 (E.D. Pa. 2009) ..................................................29

*In re Potter Instrument Co.*,
    593 F.2d 470 (2d Cir. 1979).....................................................20

*Saxon Indus. v. NKFW Partners*,
    488 A.D.2d 1298 (Del. 1984) ...................................................13

*In re Sonnax Indus., Inc.*,
    907 F.2d 1280 (2d Cir. 1990)...................................................26

*Speiser v. Baker*,
    525 A.2d 1001 (Del. Ch. 1987)..................................................13

*State v. Montoya*,
    115 Wash. App. 1050, 2003 WL 464075 (Wash. App. 2003).........................17

RLF1 3557711v 2

*In re Telesphere Communications, Inc.,*
179 Bankr. 544, 553 (Bankr. N.D. Ill. 1994) ............................................................. 16

*In re Temple Retirement Community, Inc.,*
80 B.R. 367 (Bankr. W.D.Tex. 1987) ....................................................................... 10

*In re United Press Intern , Inc.,*
60 B.R. 265 (Bankr. D. Dist. Col. 1986) ................................................................... 19

*WMI and WMI Investment v. FDIC,*
No. 09-00533 (D.D.C. Mar. 20, 2009) ........................................................................ 5

*In re W.R. Grace & Co.,*
2007 WL 1129170 (Bankr. D. Del. Apr. 13, 2007) ................................................... 26

*Washington Mutual, Inc. et al. v. JPMorgan Chase Bank, N.A.,*
Adv. Proc. No. 09-50934 (MFW) .............................................................................. 6

*Whiteboard Plastics Co., Inc v. Chase National Bank of New York City,*
179 F.2d 582 (2d Cir. 1950) ..................................................................................... 16

*Wild West World, L.L.C. v. Mainland Valuation Servs. (In re Wild West World, L.L.C.),*
2008 Bankr. LEXIS 2964 (Bankr. D. Kan. Oct. 1, 2008) ......................................... 15

## Statutes

11 U.S.C. 1121 ............................................................................................................ 10

11 U.S.C. § 362(a)(3) ............................................................................................ 25, 26

11 U.S.C. § 362(d)(1) ................................................................................................. 26

11 U.S.C. § 502(h) ..................................................................................................... 15

17 C.F.R.§ 240.14a-16 ............................................................................................... 22

17 C.F.R. § 240.14a-3 ................................................................................................ 21

17 C.F.R. § 240.14a-8(i)(8) ....................................................................................... 23

RCW 11.92.170 ......................................................................................................... 18

RCW 23B.07.030 ....................................................................................................... 18

RCW 23B.07.050 ....................................................................................................... 21

Washington's RCW 23B.07.030(1) ........................................................................... 17

## Rules

Fed. R. Civ. P. 56(c) ................................................................................................... 7

## Other Authorities

Bankruptcy Amendments and Federal Judgeship Act of 1984,
    Pub. L. No. 98-353, § 441(a)(2), 98 Stat. 333 (1984) ............................................................. 26

2 Wash. S.J. 2977-3112 (1989) ............................................................................................... 17

2008 Columbia Bus. L. Rev. 111, 1114 (2008) ...........................................................................23

Model Business Corporations Act section 7.03, Official Comment No. 2 (2005) ......................18

SEC Release No. 34-56135, July 26, 2007 ..................................................................................21

## PRELIMINARY STATEMENT[2]

Dissatisfied with the official committee status the U.S. Trustee bestowed upon it, by this motion (the "Motion"), the Official Committee of Equity Security Holders (the "Equity Committee") seeks to seize control over Washington Mutual, Inc. ("WMI") (together, with WMI Investment Corp., the "Debtors") to their own advantage and to the detriment of the Debtors' estates, their creditors, and other interested parties. The U.S. Trustee ostensibly formed the Equity Committee so that the interests of WMI's shareholders would have a voice in these chapter 11 cases (the "Chapter 11 Cases"). Now, the Equity Committee seeks to have that voice heard louder than all others.

Just two months after its formation, and after conferring several times with the Debtors and the Official Committee of Unsecured Creditors (the "Creditors' Committee"), and after gaining a clearer view of the economic realities of the Chapter 11 Cases, the Equity Committee has abandoned all pretense of negotiation and commenced this action (the "Action"). In doing so, the Equity Committee seeks to upset the balance envisioned by the Court (and authorized by Congress in the Bankruptcy Code), without regard to the consequences. In view of the fact that the Equity Committee represents an out-of-the-money constituency, its misplaced ambitions threaten to turn the Chapter 11 Cases on their heads and undermine the groundbreaking, yet still fragile, agreement (the "Agreement") among the Debtors, JPMorgan Chase, N.A. ("JPMC"), and the Federal Deposit Insurance Corp. (in its capacity as receiver for Washington Mutual Bank and in its corporate capacity, the "FDIC"). Ultimately, all of this will surely destabilize the process of putting the recently-filed Joint Plan of Affiliated Debtors (the "Plan") to the test of

---

[2]  Capitalized terms not immediately defined shall have the meanings ascribed to them below.

1

**Exhibit 4
4-49**

stakeholders' votes and this Court's evaluation under the standards of section 1129 of the Bankruptcy Code.

The Equity Committee's Motion relies on the mistaken assertion that shareholders have "a 'virtually absolute' right to hold a shareholder meeting to elect directors." (Pl. Mem. at 6). That is false. In the present case, there are four important limitations on the exercise of shareholders' rights during the bankruptcy process: (1) "clear abuse" of process; (2) insolvency of the debtor; (3) Washington law affording the Court discretion as to whether to compel a shareholders' meeting; and (4) the Bankruptcy Code's authorization of curtailment of shareholders' rights when equitable to do so. Each of these constraints provides an independent basis for denial of the Motion.

First, the law is well-settled that, where shareholders exhibit a "willingness to risk rehabilitation altogether in order to win a larger share for equity," *In re Johns-Manville Corp.*, 801 F.2d 60, 65 (2d Cir. 1986) ("*Manville I*"), their actions constitute "clear abuse" and must be denied. That is exactly what the Equity Committee seeks to do here by attempting to seize control of the Debtors and implement new, imprudent "swing for the fences" litigation strategies at this highly critical time in the Chapter 11 Cases when the Debtors have just negotiated the fragile, yet valuable, Agreement and are prosecuting the Plan. That the law safeguards against such wasteful conduct is not surprising. If such a course of conduct were pursued by the Debtors (who must consider and balance the interests of both creditors and shareholders), they would be accused of breaching their fiduciary duties.

Moreover, serious questions abound as to whether the Equity Committee possesses the resources to effectuate a proxy solicitation in any event. The law is clear that such costs must be borne by the shareholders, not by the estate. If the Equity Committee cannot fund these

expenses, this is another reason why the Equity Committee's actions constitute clear abuse, because it would render the putative annual meeting an expensive exercise with no proxy contest and no practical effect. The Court need not go any further. That there exists a genuine issue of fact concerning the Equity Committee's intent (and whether it constitutes a clear abuse of the chapter 11 process) is undeniable. This alone is reason to deny the Motion.

Second, courts recognize an independent basis to deny such tactics where shareholders are out of the money, as is the case here. Evidence has already been submitted to this Court and the existence of genuine disputed issues of fact concerning the Debtors' solvency has been recognized. Additionally, it is significant that the Debtors' common shareholders – the only shareholders with the ability to replace a majority of the board – are an incremental $8.3 billion out of the money behind preferred shareholders whose purported rights are limited to voting an additional two directors to the currently serving nine directors. Thus, even if relief were granted with respect to the preferred shareholders' right to vote, it would not cause a change of control. The Debtors' insolvency is a second reason for denial of the Motion.

Third, Washington law is clear that courts have wide discretion in determining whether to compel WMI to hold an annual meeting. In view of the critical juncture at which the Chapter 11 Cases rest, the Court should exercise this discretion to ensure that the Debtors are not forced to incur wasteful expenses and endure distractions from seeking to consummate the Agreement and confirm the Plan. Indeed, the Debtors and their advisors would need to devote significant time and expense to preparing the required documents and filings (including audited financial statements), and do so at the worst possible time in the Chapter 11 Cases. The Equity Committee's desire for control cannot justify such a wasteful and potentially disastrous excursion for an out-of-the-money constituency.

**Exhibit 4**
**4-51**

Fourth, the Bankruptcy Code affords the Court equitable powers that may be exercised in exactly these instances. Bankruptcy courts have exercised this authority in a variety of ways, including, *inter alia*, allowing responsible officers to vote shares to elect directors, substituting responsible officers for boards of directors, and taking other measures to preserve debtors' businesses. Here, exercise of the Court's equitable powers is appropriate to preserve the prospect of the Chapter 11 Cases' resolution in a timely and efficient fashion, and to protect the interests of creditors and other interested parties.

Denying the Motion will not prejudice the Equity Committee. If the Equity Committee is unhappy with the progress made by the Debtors in these cases, it has recourse. By its appointment, the U.S. Trustee has granted the Equity Committee a meaningful voice in the Chapter 11 Cases. The Equity Committee will have an opportunity to be heard (and object if it so desires) at any hearing to approve a settlement of estate causes of action or to approve the disclosure statement and/or to confirm the Plan. In other words, the Equity Committee has a role in these cases in the manner Congress contemplated when it drafted section 1102.

Alternatively, the Equity Committee has requested relief from the automatic stay to (re)-commence this Action in Washington state court. However, the Equity Committee first commenced this Action and sought summary judgment. Its alternative request for stay relief is not ripe for adjudication. And, the Equity Committee has not attempted to show the requisite "cause" for stay-relief. Having chosen to commence this Action before this Court, the Equity Committee should not be authorized to take this Action elsewhere.

At a minimum, the Debtors should be permitted to obtain discovery into several genuine issues of fact so that they may present evidence at trial demonstrating that (1) the Equity Committee's efforts will severely jeopardize, and are in fact designed to upset, the Debtors'

**Exhibit 4**
**4-52**

chapter 11 efforts at this critical juncture, and (2) the Debtors are insolvent. For all of the foregoing reasons, the Motion should be summarily denied.

## BACKGROUND

In the wake of the seizure and subsequent sale of substantially all of Washington Mutual Bank's ("WMB") assets, on September 26, 2008 (the "Petition Date"), the Debtors each commenced the Chapter 11 Cases pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Subsequently, a multitude of disputes arose among the Debtors, JPMC and the FDIC, with each asserting claims for billions of dollars against one or more of the others in various forums, including multiple litigations in this Court, the District Court for the District of Delaware, and the District Court for the District of Columbia. The factual background has been set forth in numerous pleadings with this Court, and is thus described briefly below.

### A. The DC Action

On September 25, 2008, the Director of the Office of Thrift Supervision placed WMB into receivership and appointed the FDIC as receiver. On the same day, the FDIC sold substantially all of WMB's assets to JPMC for $1.88 billion, pursuant to the Purchase and Assumption Agreement Whole Bank, dated September 25, 2008 ("P&A Agreement"). The Debtors subsequently filed a proof of claim with the FDIC, which the FDIC denied on January 23, 2009. Debtors filed a Complaint in the DC District Court on March 20, 2009, challenging the FDIC's disallowance of their initial claims, and asserting additional claims. *WMI and WMI Investment v. FDIC*, No. 09-00533 (D.D.C. Mar. 20, 2009) (the "DC Action").

### B. The Bankruptcy Proceedings

In connection with the Chapter 11 Cases, there are two relevant adversary proceedings pending. First, on March 24, 2009, JPMC filed an action against the Debtors asserting claims to assorted assets that JPMC allegedly purchased under the P&A Agreement. *JPMorgan Chase*

**Exhibit 4**
**4-53**

*Bank, N.A. v. Washington Mutual, Inc. et al.*, Adv. Proc. No. 09-50551 (MFW) (the "JPMC Adversary Proceeding"). On May 29, 2009, Debtors filed an answer and counterclaims asserting, among other things, claims for monetary relief through the avoidance of certain of the Debtors' assets fraudulently or preferentially transferred to JPMC prior to the commencement of the Chapter 11 Cases, as well as claims for assets that the Debtors assert were not the property of WMB and were never transferred to JPMC under the P&A Agreement. The Debtors also filed an action on April 27, 2009 against JPMC seeking to recover approximately $4 billion in the Debtors' deposits (the "Deposits"), which JPMC expressly assumed under the P&A Agreement. *Washington Mutual, Inc. et al. v. JPMorgan Chase Bank, N.A.*, Adv. Proc. No. 09-50934 (MFW) (the "Turnover Action," and with the JPMC Adversary Proceeding, the "Adversary Proceedings").

C.     **The Debtors' Progress in the Chapter 11 Cases and the Agreement**

Since the Petition Date, the Debtors have worked diligently to maximize the value of their estates. The Debtors have served their fiduciary duties well by, *inter alia*, pursuing billions of dollars in claims through complex litigation, and having filed thirty omnibus claims objections to date. In addition, the Debtors, the Creditors' Committee, JPMC, the FDIC and other significant parties in interest have engaged in protracted and hard-fought negotiations seeking to reach a global resolution of the many issues of dispute among the parties. In that vein, after the Equity Committee was formed, the Debtors participated in several conference calls and met in person with the Equity Committee to discuss the pending litigations, and the parties discussed strategy in connection therewith.

On March 12, 2010, these concentrated efforts bore fruit, as the Debtors, the Creditors Committee, JPMC, the FDIC, and several of the Debtors' significant creditor constituencies

**Exhibit 4**
**4-54**

reached a global Agreement. This key achievement was announced to the Court.[3] On March 26, 2010, the Debtors filed their Plan, referencing and incorporating the Agreement, and a disclosure statement in connection therewith (the "Disclosure Statement"). The Debtors anticipate seeking Court-approval of the Disclosure Statement as soon as the final terms of the Agreement are documented.

While the Agreement and the Plan have not yet been approved, the Agreement will provide substantial recovery to the Debtors' creditors and avoid lengthy, complex, and costly litigation. As provided for by the Bankruptcy Code, the Debtors' prosecution of the Plan through the confirmation process will provide ample opportunity for the Equity Committee to voice their approval or dissent for the Plan.

## ARGUMENT

### A.    Standard of Review

Granting a motion for summary judgment "is proper when the moving party has established that there is no genuine dispute of material fact and that 'the moving party is entitled to judgment as a matter of law.'" *Galli v. New Jersey Meadowlands Comm'n*, 490 F.3d 265, 270 (3d Cir. 2007) (quoting Fed. R. Civ. P. 56(c)). A fact is material "if it might affect the outcome of the suit under the governing substantive law." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). On a motion for summary judgment, the court "must view the facts in the light most favorable to the non-moving party and must make all reasonable inferences in that party's favor." *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005). A

---

[3]  *See* Tr 3/12/10 (Debtors' Counsel: "And I am happy to report today that we have a three-way understanding between the Debtors, JPMorgan Chase and the FDIC with respect to all matters."). Shortly thereafter, the three parties sent a joint letter to Judge Sleet's chambers in the United States District Court for the District of Delaware asking that the court stay all pending appeals to preserve the status quo and allow the parties to finalize the Agreement. A copy of this letter is attached hereto as Exhibit A

**Exhibit 4**
**4-55**

dispute "is genuine if 'evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct.'" *American Electronic Components, Inc. v. Agere Systems, Inc.*, 2009 WL 1653867, at *2 (3d Cir. 2009) (quoting *Clark v. Modern Group Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993)). In this case, as demonstrated below, there are numerous triable issues of fact that go to the core of this dispute, including whether the Action constitutes "clear abuse," the Debtors' insolvency, and whether any recovery could reach WMI's common shareholders, whose claims are junior to over $8 billion in preferred stock. Because these genuine material issues can only be resolved at trial, the Motion should be denied.

**B.    The Equity Committee Ignores Four Limitations on the Ability to Compel a Shareholder Meeting, Which Justify Denial of the Motion**

The Motion is based on the mistaken assumption that shareholders have a "virtually absolute" right to hold a shareholder meeting to elect directors." (Pl. Mem. at 6). In so arguing, the Equity Committee overlooks four important constraints on the exercise of shareholders' rights that are applicable here: (1) "clear abuse" of process; (2) insolvency of the debtor; (3) Washington law affording the Court discretion as to whether to compel a shareholders' meeting; and (4) the Bankruptcy Code's authorization of curtailment of shareholders' rights when equitable to do so. Each of these constraints provides an independent basis for denial of the Motion and taken together, they provide an overwhelming basis for denial of the Motion.

**1.    *Commencing the Action on the Eve of the Agreement and the Plan is a Clear Abuse of Process***

Case law in this and other circuits makes clear that the right of shareholders to call a meeting must be impaired "if the Equity Committee is guilty of 'clear abuse' in attempting to call one." *Manville I*, 801 F.2d at 64; *see also In re Marvel Enter. Group*, 209 B.R. 832, 838 (D. Del. 1997). The determination "[w]hether the Equity Committee's call for a shareholders' meeting

**Exhibit 4**
**4-56**

constitutes clear abuse ... [is a] *triable issue[] of fact.*" *Manville I*, 801 F.2d at 69 (emphasis

added). Thus, summary judgment in the present case is clearly inappropriate and unavailable.

Of course, clear abuse may exist short of bad faith. In assessing a "call for a

shareholders' meeting, to elect a board who will withdraw the plan of reorganization, and

whether that call constitutes a clear abuse," the Bankruptcy Court for the Southern District of

New York discussed the standard set forth by the Court of Appeals for the Second Circuit:

> [C]lear abuse of the right to call a shareholders meeting is shown
> by demonstrating that the shareholders have an intent to jeopardize
> the reorganization (including a "willingness to risk rehabilitation
> altogether in order to win a larger share for equity"), and by
> demonstrating that the effect of calling the meeting will be a "real
> jeopardy to reorganization."

*In re Johns-Manville Corp.*, 66 B.R. 517, 533 (Bankr. S.D.N.Y. 1986) ("*Manville II*") (internal

citation omitted). *Accord Marvel*, 209 B.R. at 838 (equating clear abuse with a "willingness to

risk rehabilitation altogether in order to win a larger share for equity."). In sum, and in direct

contravention of the Equity Committee's misstatement of the controlling principles of law, the

right to a shareholder meeting "*is not absolute*, and will be denied if it is found that an election of

new directors might result in an unsatisfactory management which might jeopardize the debtor's

rehabilitation and the rights of creditors and shareholders, so as to constitute a 'clear abuse.'" *In*

*re New York Trap Rock Corp.*, 138 B.R. 420, 423 (Bankr. S.D.N.Y. 1992) (emphasis added).[4]

Timing is particularly relevant: "an attempt to call a shareholder meeting after a plan has been

submitted to the bankruptcy court and after confirmation hearings have begun would usually be

more disruptive to the proceedings than an earlier attempt would be." *Manville I*, 801 F.2d at 66,

---

[4]  Moreover, in determining what may constitute "clear abuse," courts consider the debtor's cost to be
incurred in a proxy fight that would "result[] in the expenditure of large sums of money which the debtor-
in-possession can ill afford." *In re Allegheny Intern. Inc.*, 1988 WL 212509, at *4 (W.D. Pa. 1988)  As
noted, however, the case law establishes that shareholders must pay for the cost of distributing an
alternate slate of directors for any meeting.

**Exhibit 4**
**4-57**

n.7. "Such an attempt might also indicate bad faith and a willingness to risk jeopardy to rehabilitation." *Id*.

Just as in *Manville II*, the Chapter 11 Cases are at a critical juncture and involve a complex, multi-party settlement. The Debtors are prosecuting the Plan – which the Equity Committee knew would be filed at the end of the Debtors' exclusivity period – and seek to imminently finalize, request Court-approval of, and implement the Agreement through approval of the Disclosure Statement and confirmation of the Plan. Declaration of William Kosturos ¶ 5, attached hereto as Exhibit B. The Debtors, the Creditors Committee, the FDIC, and JPMC have exerted great efforts in negotiating the Agreement, which, if consummated and approved, would bring multiple pending litigation proceedings to an equitable resolution, and provide substantial recovery to creditors of the Chapter 11 Cases. Kosturos Dec. ¶ 5. The Plan incorporates the Agreement, is supported by significant creditor constituencies, and further provides for the emergence of a reorganized debtor, a rarity in recent bankruptcies. Kosturos Dec. ¶ 5. The Equity Committee's attempt to compel a shareholders' meeting in order to replace the board with its own nominees – at this late stage in the Chapter 11 Cases – is a transparent design to disrupt and, in fact, cause the implosion of the Chapter 11 Cases. Rather than allow an orderly plan confirmation process to unfold, the Equity Committee appears willing to delay recoveries for the Debtors' creditors, all in an effort to extract a distribution to out-of-the-money shareholders. This naked grab for power is not a legitimate justification for the relief the Equity Committee seeks.[5]

---

[5] The Equity Committee's actions are particularly troublesome given that Debtors' exclusivity period remains pending pursuant to 11 U.S.C. 1121. The Equity Committee's actions are tantamount to a de facto proposal that shareholders hold-out for an alternative to the Plan. Such suggestions are prohibited. *In re Clamp-All Corp.*, 233 B.R. 198, 207 (Bankr. D. Mass. 1999) (section 1121 embodies "Congress' intention to allow the debtor a reasonable time to obtain confirmation of a plan without the threat of a

**Exhibit 4**
**4-58**

The fact that the Agreement has not yet evolved into a final agreement only underscores the need to protect against "clear abuse." In fact, in *Manville II*, the bankruptcy court noted that "the fact that there is a substantial *but fragile* consensus is not one that this court will take lightly." 66 B.R. at 536 (emphasis added). Just as in *Manville II*, the fragile nature of the Agreement only makes the Chapter 11 Cases more susceptible to, and heightens the need for protection against, tactics that constitute clear abuse.

At a minimum, denial of the Equity Committee's Motion is appropriate in order to give the Debtors the "right to a fair hearing" on whether the Equity Committee's actions constitute clear abuse. *Manville I,* 801 F.2d. at 66. In remanding to the bankruptcy court for a hearing on clear abuse, the Second Circuit expressly held that "[w]hether the Equity Committee's call for a shareholders' meeting constitutes clear abuse and whether such a meeting would cause irreparable harm to [the debtor's] reorganization *are triable issues of fact,*" requiring a fact-specific, "more elaborate inquiry" at an evidentiary hearing. *Id.* at 69 (emphasis added). Likewise, in *Trap Rock*, the court grounded its denial of a motion to dismiss on the need for an evidentiary hearing to determine whether "the Equity Committee may have a private agenda in seeking an annual shareholders' meeting..." 138 B.R. at 424. Similarly, the Debtors should have a reasonable opportunity to discover and develop relevant facts for presentation at an evidentiary hearing.

For example, on remand, the *Manville II* bankruptcy court unearthed facts that it determined to constitute clear abuse, and of a kind likely to be discovered here. The equity

competing plan."); *In re Temple Retirement Community, Inc*, 80 B.R. 367, 369 (Bankr. W.D.Tex. 1987) (prohibiting creditors from undermining the Debtors' plan, filed during the exclusivity period, by suggesting that there is "a better alternative just around the bend").

**Exhibit 4**
**4-59**

constituency was faced with a plan that they believed would "virtually wipe out their entire interest." 66 B.R. at 534. Shareholders understood that no change in "litigation strategy will be effective in improving the position of shareholders to any great extent...[thus,] current shareholders might do well by simply torpedoing the agreement altogether." *Id.* Judge Lifland determined that the decision to seek to nominate a slate of new directors was "the means chosen to achieve the [foregoing] ends." *Id.* The evidence was clear that the shareholders' aim was "a reformulation of the current plan and not merely an election of a new Board of Directors at the shareholders' meeting. ..." *Id.* at 535.

Here, the Equity Committee has already voiced its opposition to both the Agreement and the Plan. *See* Official Committee of Equity Security Holders of Washington Mutual, Inc. Deliver Statement Regarding Proposed Agreement, PRNewswire, (Mar. 17, 2010) ("The Committee anticipates that the Debtors will seek approval of the Proposed Settlement and its plan of reorganization 60-90 days from [March 26, 2010]. The Committee ... does not support, the Proposed Agreement.... At this time, the Committee intends to object to the Proposed Agreement.").[6] If shareholders use the shareholder meeting to seize control and undo the multilateral consensus it has taken over a year to accomplish through the Plan, it is undeniable that numerous creditor groups would promptly move to terminate exclusivity to pursue the Plan as their own; chaos would ensue. The Equity Committee figures that it has nothing to lose; however, there is no viable alternative plan that the Equity Committee can possibly propose other than implementing new, speculative, and reckless "swing for the fences" litigation

---

[6] *See* http://www.prnewswire.com/news-releases/official-committee-of-equity-security-holders-of-washington-mutual-inc-deliver-statement-regarding-proposed-settlement-88237597.html.

**Exhibit 4**
**4-60**

strategies that would fail under any fiduciary-duty metric.[7] Moreover, such a plan construct has

no realistic chance of success given the risk and sacrifices that creditors would be necessarily

asked to shoulder.[8]

Notably, the Equity Committee does not cite *any* precedent in which a court has short-

circuited this necessary evidentiary process by deciding on *summary judgment, prior to any*

*discovery whatsoever*, whether the shareholder actions at issue constitute clear abuse. *See* Pl.

Mem. at 6 (citing *Saxon Indus. v. NKFW Partners*, 488 A.D.2d 1298 (Del. 1984) (right to hold

shareholder meeting decided after trial); *Newcastle Partners, L.P. v. Vesta, Ins. Group, Inc.*, 887

A.2d 975, 977 (Del. Ch. 2005), *aff'd*, 906 A.2d 807 (Del. 2005) (same)).[9]

---

[7] As discussed more fully below, the case law is clear that the Equity Committee's request that the Debtors' estates incur the costs for distributing proxy materials for the Equity Committee's slate of proposed directors is improper. *See Trap Rock*, 138 B.R. at 424 ("In the event that the Equity Committee succeeds on the merits, and an annual meeting is directed, counsel for the Equity Committee may not be compensated for any services performed beyond the adversary proceeding in connection with the shareholders' meeting. All shareholder costs and expenses with respect to [the debtor's] annual meeting must be borne by the shareholders themselves."). Unless the Equity Committee is able to demonstrate to the Court that it has the independent resources to cover the costs for distribution of a proxy statement, this Action is revealed to be nothing more than a vehicle to waste the estates' resources that poses "real jeopardy to reorganization prospects." *Manville*, 801 F.2d at 67

[8] *See Manville*, 66 B.R. at 535 (finding that the Equity Committee was seeking, "in utter disregard of the devastating consequences of its conduct," to "achieve a substantial change in the plan of reorganization more favorable to Equity than to those constituencies higher up on the ladder of distributive rights.") In addition, the court found that "[t]he prospects of any potential coalition forming around some new or competing plan is less than dismal." *Id*. at 536.

[9] The Equity Committee cites *Coaxial Communications, Inc v. CAN Financial Corp*, 367 A.2d 994 (Del. 1976), and *Speiser v. Baker*, 525 A.2d 1001 (Del. Ch. 1987), in support of its Motion. However, these Delaware cases do not mention, much less determine, whether conduct constitutes clear abuse or bad faith. The Equity Committee's reliance on *In re Lionel Corp*, 30 B.R. 327 (Bankr. S.D N.Y 1983), is equally misplaced. *Lionel* only held that the defendant did not satisfy the stringent standards for obtaining a preliminary injunction to enjoin a state court proceeding seeking to compel a shareholder meeting. In declining to enjoin the state court action, *Lionel* never determined whether, *in fact*, such a meeting should be compelled. Any statements by the court in support of the shareholders were thus mere *dicta*. In any case, since the Equity Committee selected to bring its Action in this Court, enjoinment of a state court action is not now at issue, and *Lionel* is inapplicable to whether clear abuse should be evaluated at trial.

**Exhibit 4**
**4-61**

In short, whether the Equity Committee's actions constitute clear abuse is an obvious

issue of material fact in genuine dispute, and therefore summary judgment should be denied.

> **2.** ***Denial of the Motion Is Proper Because Equity Holders Are Not Real Parties in Interest Due to Debtors' Insolvency***

> *i*     ***The Courts Have Held That Insolvency Is A Fact Issue For Trial***

There are additional issues of fact that require denial of the Motion, including factual

issues concerning the Debtors' insolvency. The Court of Appeals for the Second Circuit in

*Manville I* recognized that "denial of the right to call a meeting would likely be proper" if the

debtor "were determined to be insolvent … because the shareholders would no longer be real

parties in interest." 810 F.2d at 65, n.6; *see also, e.g., In re Mirant Corp.*, 334 B.R. 800, 807

(Bankr. N.D. Tex. 2005) (referencing the court's prior conclusion that a hearing to determine the

debtors' enterprise value was a logical and preferable predicate to immediately allowing

"shareholders, who might or might not ultimately be determined to have an economic interest in

[the debtors'] value," to have a meeting and replace management). The courts have also

recognized that, as a rule, "determinations of solvency and insolvency are fact intensive by

nature. Accordingly, summary judgment [on the question of insolvency] is not appropriate."

*Brandt v. Trivest II, Inc (In re Plassein Intl. Corp.)*, Case No. 03-11489 (KG), Adv. Pro. No. 05-

51472 (KG), [D.I. 72, 74 & 82] (Bankr. D. Del. May 5, 2008) (internal citation omitted).

> *ii*     ***This Court Has Already Recognized That, At A Minimum, Fact Issues Exist As To Insolvency***

Here, there is no doubt that the Debtors' insolvency is, at a minimum, a triable issue of

fact making summary judgment improper.

In support of the Debtors' Motion for an Order (A) Disbanding Such Committee or (B)

Limiting the Fees and Expenses Which May Be Incurred by Such Committee ("Motion to

Disband" [D.I. 2132]), the Debtors submitted evidence to the Court that their estates were

**Exhibit 4**
**4-62**

currently burdened with liabilities of $8.294 billion plus an additional $50 billion of claims (not including unliquidated claims). The Debtors incorporate in this motion the same evidence concerning insolvency that they previously put into the record on the Motion To Disband.[10] When this Court previously considered the evidence submitted by the Equity Committee and by the Debtors, this Court recognized that *"[t]here is clearly evidence both ways as to the insolvency of the Debtor."* See Tr. 1/28/10 at 59:7-8 (emphasis added). The Equity Committee has submitted nothing new on this Motion to overcome that conclusion. For this reason alone, the Motion must be denied.

> ### iii  *Even Assuming the Debtors Were to Prevail On Certain Litigated Claims, The Equity Committee Overstates The Value That Would Flow To Equity Holders*

Moreover, in a flawed attempt to demonstrate that equity holders are an in-the-money constituency, the Equity Committee drastically overstates the value of the Debtors' causes of action vis-a-vis equity holders. Even assuming *arguendo* that the Debtors procured total victories on certain of their claims, it would not mean that a penny goes to equity holders. For example, the Equity Committee has previously stated that "recovery of only the liquidated amounts sought by the Debtors in the Pending Litigation will result in recovery for the equity holders."[11] But at least $10.651 billion of the claims the Equity Committee referenced are avoidance actions that will not yield any recovery whatsoever to equity holders.

Prevailing on such claims would likely give rise to resulting unsecured claims against the Debtors' estates that would increase the amount of existing claims *that come ahead of equity* in

---

[10] *See* Tr. 1/28/10 at 9:19-22 ("The three documents that I provided, I believe, are, will be admitted into evidence on a consensual basis. And that will go to the asset and liability issue, Your Honor."). A copy of the transcript is attached hereto as Exhibit C. The Debtors incorporate such evidence herein and re-submit it to the Court. Maciel Dec. ¶ 5

[11] *See* Opposition of the Equity Committee to the Motion to Disband at 3 [D.I. 2185].

RLF1 3557711v 2

**Exhibit 4**
**4-63**

the same amount as the judgment. *See* 11 U.S.C. § 502(h); *see also Wild West World, L.L.C. v Mainland Valuation Servs. (In re Wild West World, L.L.C.)*, 2008 Bankr. LEXIS 2964, *11 (Bankr. D. Kan. Oct. 1, 2008) (noting that defendant/transferee in successful constructive fraudulent transfer action is left with an allowable unsecured claim against the debtor's estate); *In re Telesphere Communications, Inc.*, 179 Bankr. 544, 553 (Bankr. N.D. Ill. 1994) ("Avoidance of a preference results in a return of transferred property to the estate, but may also result in the defendant asserting a claim that otherwise would have been satisfied by the transferred property"). Thus, notwithstanding the considerable dollar amounts that the Equity Committee highlights, prevailing on these claims would not yield value to equity.[12]

Finally, beyond the $8.294 billion in liabilities, there are approximately $7.5 billion in preferred shares outstanding ahead of common shareholders. Declaration of John Maciel ¶ 6, attached hereto as Exhibit D. Moreover, there are more than $835.6 million in unpaid dividends on preferred shares that would need to be paid before any common shareholder recovery. Maciel Dec. ¶ 6. Thus, the common equity holders, who stand behind more than $8.3 billion in preferred equity interests, clearly should not be permitted to call a meeting or vote for directors at any such meeting.

> iv    *The Preferred Shareholders Cannot Change Control In Any Event*

---

[12] Moreover, avoidance actions are to be maintained for the benefit of creditors, not the debtor. *See Buncher Co. v. Official Comm. of Unsecured Creditors of Genfarm Ltd.*, 229 F.3d 245, 250 (3d Cir. 2000) ("The purpose of fraudulent conveyance law is to make available to creditors those assets of the debtor that are rightfully a part of the bankruptcy estate, even if they have been transferred away."); *Whiteboard Plastics Co., Inc. v. Chase National Bank of New York City*, 179 F.2d 582, 584 (2d Cir. 1950) (court denied avoidance of a lien finding it was "not in the interest of the general creditors," concluding that the debtor sought avoidance "purely for its own benefit"). Thus, even assuming that section 502(h) were inapplicable, avoidance actions may not recover value for equity. *Balaber-Strauss v. Town of Harrison (In re Murphy)*, 331 B.R. 107, 126 (Bankr. S.D.N.Y. 2005) (holding that trustee has the right to avoid transfer as fraudulent "but only to the extent necessary to satisfy allowed prepetition and administrative creditor claims, i.e., those legally harmed by the transfer.")

Exhibit 4
4-64

Additionally, there is no practical reason to afford even the preferred shareholders the right to vote. Under WMI's Articles of Incorporation, the preferred shareholders' voting rights are limited to the power to "elect two directors in addition to the directors then in office."[13] Articles of Incorporation § 8, Voting Rights. Thus, even if the Motion were granted with respect to the preferred shareholders, and they, voting as a single class, elected two new directors in addition to the currently serving nine directors, there would be no change of control.[14]

As this Court has already acknowledged, at a minimum, a genuine disputed issue of fact exists as to Debtors' insolvency. This is a second reason that requires the Motion be denied.

### 3. Denial Of Plaintiff's Motion Is Consistent with Washington Law

Washington law affords the Court discretion to determine whether it should grant or deny a shareholder request to compel an annual meeting. Washington's RCW 23B.07 030(1) states that "the superior court .. *may*, after notice to the corporation, summarily order a [shareholder] meeting to be held." (emphasis added). In Washington, as elsewhere, courts interpret a statute based upon "the plain meaning of words used in a statute." *Johnson Forestry Contract, Inc. v Washington State Dept.*, 130 Wash. App. 1033, 2005 WL 3113510, at *4 (Wash. App. 2005) (citation and quotation omitted); *State v. Montoya*, 115 Wash. App. 1050, 2003 WL 464075, at *3 (Wash. App. 2003) (looking first to the plain meaning, and noting that "[a] nontechnical statutory term may be given its dictionary meaning") (citation omitted)). Reiterating that the statute should be read according to its plain meaning, the legislative history of Section 7 030 removes any doubt, explaining that the "court has discretion ... since the language of the statute

---

[13] *See* Articles of Amendment to Articles of Incorporation,"Series R, Dec. 17, 2007, § 15 Articles of Amendment to Articles of Incorporation," Series K, Sept. 14, 2006, § 8, attached hereto as Exhibit E

[14] In addition to further establishing just how "underwater" common shareholders are, this is further indicia that the Action constitutes clear abuse of the Chapter 11 Cases.

**Exhibit 4**
**4-65**

is that the court '*may* summarily order' that a meeting be held." Comments, Washington Business Corporation Act, 2 Wash. S.J. 2977-3112 (1989) (emphasis in original.). *See also* Model Business Corporations Act section 7.03, Official Comment No. 2 (2005) ("The court has discretion under section 7.03 since the language of the statute is that the court "may summarily order" that a meeting be held."). Thus, under Washington law the court's authority to compel a shareholders' meeting is indisputably discretionary. [15]

Although the Debtors are aware of no Washington case interpreting this provision, in *Clabault v. Caribbean Select, Inc.*, 805 A.2d 913 (Del. Ch. 2002), the Delaware Chancery Court interpreted "may" in a Delaware statute analogous to RCW 23B.07.030, and concluded that "the conditional language of the statute supports the conclusion that the decision regarding whether or not to order an annual meeting pursuant to [the Washington analog] is discretionary." *Id.* at 918. "The use of the terms '*may* summarily order' in the statute obviously reposes a discretion in the Court to be exercised in light of the existing circumstances." *Id.* (emphasis in the original). Accordingly, the *Clabault* court refused to order the shareholder meeting of the former debtor corporation due to the shareholders' bad intent even though the statutory elements for prima facie relief were met. *Id.*

The existing circumstances of the Chapter 11 Cases, including the willingness exhibited by the Equity Committee to jeopardize the Debtors' reorganization in order to extract a recovery for equity and the fact that the Debtors are insolvent, call this Court to exercise the discretion

---

[15] In a case of first impression interpreting Washington statute RCW 11.92.170, which provides that "the court may order the transfer of property" of an incapacitated person to a guardian, the Washington Appellate division upheld the lower court's choice to exercise it discretion and refrain from ordering a transfer, holding that " 'may,' in its ordinary and usual meaning, conveys the idea of choice, option or discretion ... [and the] general rule of statutory construction has long been that the word 'may' when used in a statute or ordinance is permissive and operates to confer discretion." *In re Guardianship of Johnson*, 112 Wash.App. 384, 387 (Wash.App. Div. 2,2002).

RLF1 3557711v2

**Exhibit 4**
**4-66**

Washington law expressly affords to deny the Motion and avoid the unnecessary expense and potential disastrous effects that the Equity Committee's Action is designed to effectuate.

### 4. The Court Should Exercise its Equitable Powers to Protect the Interests of the Estates

Courts have found that "the shareholders' right to control a Chapter 11 debtor-in-possession is not without limitations under the Bankruptcy Code." *In re Lifeguard Industries, Inc.*, 37 B.R. 3, 17 (Bankr. S.D. Ohio 1983) (denying majority shareholder the right to "install a new [inexperienced] management slate"; ordering the board "not to interfere with the day-to-day operations of the corporation.") Specifically, section 105 of the Bankruptcy Code codifies the Court's equitable powers, empowering the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." *In re Gaslight Club, Inc.*, 782 F.2d 767, 770 (7th Cir. 1986) (noting that the "case law demonstrates that the court has considerable authority to interfere with the management of a debtor corporation in order to protect the creditors' interests") (citation omitted). Courts may use their equitable powers to "assure the orderly conduct of the reorganization proceedings ... to prevent activities which would delay or thwart efforts to reorganize the debtor ... and to block actions which tend to defeat or impair its jurisdiction." *In re Allegheny Intern. Inc.*, 118 B.R. 282, 303 (Bankr. W.D. Pa. 1990) (citations omitted).

Courts have exercised this authority in a variety of ways, including abolishing boards of directors, allowing responsible officers to vote shares to elect directors, substituting responsible officers for boards of directors, and taking other measures to preserve debtors' businesses.[16]

---

[16] *In re Gaslight Club, Inc.*, 782 F.2d 767, 770-72 (7th Cir. 1986) (replacing the majority shareholder/president of debtor with a "responsible officer" to exercise debtor-in-possession powers); *In re United Press Intern., Inc.*, 60 B.R. 265, 274 (Bankr. D. Dist. Col. 1986) (abolishing the debtor's board of directors and authorizing its management to file a plan); *In re FSC Corp.*, 38 B.R. 346 (Bankr. W.D.

**Exhibit 4
4-67**

Here, fairness demands that any final judgment in the Action be delayed pending the Plan's confirmation process, or at the very least, until holding an evidentiary hearing concerning the Debtors' solvency and the Equity Committee's intentions. *See In re Acequia, Inc*, 787 F.2d 1352, 1362 (9th Cir. 1986) (upholding denial of shareholder voting rights during pendency of the reorganization plan "so as to preserve the prospects of reorganization and protect the interests of creditors, shareholders and interested parties"); *In re Potter Instrument Co.*, 593 F.2d 470 (2d Cir. 1979) (holding that bankruptcy court was justified in denying the majority shareholder's petition, under the corporate bylaws, for a special meeting to elect new directors because "such an election might result in unsatisfactory management and would probably jeopardize both [the Debtor's] rehabilitation and the rights of creditors and stockholders.").

C. **Even if the Court is Inclined to Grant the Motion, the Relief Requested Is Unlawful and Must be Modified**

1. *The Extraordinary Request for an April 24th Meeting Should Be Denied, and WMI Should Be Given Sufficient Time to Prepare and Comply with SEC Rules*

Should the Court compel an annual meeting, WMI will require time for reasonable preparation, including time to comply with federal securities laws requiring public companies to prepare audited annual financial statements, as well as a proxy statement, and disseminate those documents to shareholders prior to the annual meeting. Under rules promulgated under the Securities Exchange Act of 1934 (the "Exchange Act"), an issuer of securities registered under Section 12 of the Exchange Act that solicits proxy votes from its shareholders must make available to each shareholding household a copy of its preliminary or definitive proxy statement

---

Pa. 1983) (upholding the authority of the court-appointed "responsible officer" to conduct the affairs of the debtor corporation, including voting parent-owned shares for the appointment of directors of subsidiaries); *Lifeguard Industries, Inc*, 37 B.R. 3 (Bankr. Ohio 1983) (court used its authority to block a new slate of directors from appointing new management or from taking any action to interfere with the operations of the debtor.).

RLF1 3557711v2

**Exhibit 4
4-68**

according to the requirements of Schedule 14A under the Exchange Act (the "Proxy Statement"), audited balance sheets for the two most recent fiscal years, and audited statements of income and cash flows for each of the three most recent fiscal years (the "Annual Reports"). 17 C.F.R. § 240.14a-3.

Mindful of preserving the limited assets of their estates, and after notifying the U.S. Securities and Exchange Commission (the "SEC") of their intent to do so immediately following commencement of the Chapter 11 Cases, WMI, with the acquiescence of the SEC, has not prepared or filed audited financial statements since the Petition Date, and has not retained an auditor. Kosturos Dec ¶ 15.[17] WMI therefore would be required to compile and have audited annual reports for the 2008 and 2009 fiscal years. The Equity Committee's request that the meeting be held on April 24, 2010 (Proposed Order at 2), is thus entirely untenable and requires WMI to violate federal securities laws.[18] In addition to the minimum ten-day notice required by Washington statute, *see* RCW 23B.07.050, WMI estimates that it would require at least 180 days to prepare audited financial statements for 2008 and 2009.[19] Kosturos Dec. ¶ 15. Separately, WMI estimates it would require at least 60 days to prepare a proxy statement. Kosturos Dec. ¶ 15. In order to avoid the substantial cost of distributing hard-copies of the proxy to all shareholders,[20] upon completion of the proxy statement, WMI must provide notice of the Internet

---

[17] The SEC Staff's Legal Bulletin No. 2 expressly contemplates the use of such "modified Exchange Act reporting" during the pendency of chapter 11 bankruptcy proceedings. Accordingly, the Debtors' decision not to prepare and file 10-Ks and 10-Qs during the Chapter 11 Cases is unremarkable.

[18] The Equity Committee acknowledges as much, complaining that the Debtors have "violated" the law by not holding a shareholder meeting. (*See* Pl Mem. at 4 n.5.)

[19] The 180-day period is a good faith estimate. WMI cannot guarantee that it will be able to procure audited financial statements in this period.

[20] Associated Data Processing, which is the largest distributor of proxy materials in the U.S., estimates that during the 2006 proxy season the cost of printing and mailing a proxy statement, on average, was

**Exhibit 4**
**4-69**

availability of the statement to all shareholders at least 40 calendar days prior to the annual

meeting date, *see* 17 C.F.R.§ 240.14a-16. Kosturos Dec. ¶ 15.

In recognition of this federal law, other courts have allowed for a reasonable delay of an

annual meeting in order to permit issuers in arrears on production of audited financials sufficient

time to comply with the SEC proxy rules. *See e.g., In re Allied Holdings, Inc.*, 2007 Bankr.

LEXIS 1598 (Bankr. N.D. Ga. Apr. 19, 2007) (denying motion to compel debtor to hold a

shareholders' meeting to the extent debtor would be required to do so without complying with

applicable federal securities regulations); *see also Newcastle Partners*, 887 A.2d at 977

(affording company 90 days to comply with securities laws).

So that WMI may comply with federal securities laws, if the Court were somehow

inclined to grant the Motion, WMI should be afforded at least 180 days to procure audited

financial statements for 2008 and 2009 to be issued with the requisite proxy statements.

> **2.    *Request To Have The Equity Committee's Director Slate Included On Debtors' Proxy Statements Should Be Denied***

Indicating it is either unable or unprepared to assume the cost of its insurgent proxy

battle, the Equity Committee asks this Court to require WMI to include the Equity Committee's

hand-picked slate of board nominees on WMI's "meeting notice, proxy materials, including

proxies (if any), and on the agenda of the annual meeting." (Proposed Order at 2j). This

extraordinary request violates well-settled law: (1) companies are not required to include

dissident candidates in their proxy materials and (2) companies are not required to fund the costs

of a contested board election.

---

$5.64 per copy   72 F.R. 42222-01, 42231, SEC Release No. 34-56135 (17 CFR PART 240, Final Rule,
July 26, 2007).

**Exhibit 4
4-70**

Federal securities law provides WMI an indisputable statutory right to refuse to include a dissident slate of shareholder nominees for director in its own proxy materials. Under paragraph (i)(8) of rule 14a-8 of the Exchange Act, a company may exclude from its own proxy statement any shareholder proposal that "relates to a nomination or an election for membership on the company's board of directors or analogous governing body or a procedure for such nomination or election." 17 C.F.R. § 240.14a-8(i)(8).[21]

While shifting the financial burden would be beneficial to the Equity Committee, it simply has no legal support in any context. It is the shareholders themselves, not the Debtors' estates, who must bear the costs associated with a contested election. *See Trap Rock*, 138 B.R. at 424 ("In the event that the Equity Committee succeeds on the merits, and an annual meeting is directed, counsel for the Equity Committee may not be compensated for any services performed beyond the adversary proceeding in connection with the shareholders' meeting. All shareholder costs and expenses with respect to [the debtor's] annual meeting must be borne by the shareholders themselves").[22] The Equity Committee offers no authority for its unsupportable request, slipped into its proposed order and unreferenced in its brief.

---

[21] *See also* Thomas Lee Hazen, 3 TREATISE ON THE LAW OF SECURITIES REGULATION 273 (6th ed. 1995) ("The broadly stated rule provides that a proposal may be excluded if it 'relates to an election for membership on the company's board of directors or analogous governing body '"); *id.* at 281 ("Management may exclude shareholder proposals relating to a specific election and the nominees running for office ..."). Indeed, "in November 2007 the SEC reaffirmed its longstanding position that companies may exclude from their proxy materials any Rule 14a-8 proposals (whether binding or precatory) that relate to 'shareholder access' – a procedure allowing shareholders to place the names of their board nominees directly on the company's proxy card." 1721 PLI/Corp 241, "Inching Towards A New Proxy Environment: Recent Developments" 247 & n.6 (February 18, 2009).

[22] *See also* 1791 PLI/Corp 299, "Regulatory Reform and Developments in the Areas of Proxy" (February 17, 2010) ("A shareholder may prepare and distribute its own proxy materials, obtaining a list of shareholders from the issuer ... *all at the shareholders' cost*") (emphasis added); Blake Smith, "Proxy Access and the Internet Age: Using Electronic Shareholder Forums to Improve Corporate Governance," 2008 Columbia Bus. L. Rev. 111, 1114 (2008) ("The SEC rules enumerate thirteen categories of shareholder proposals that a corporation may elect to exclude from its proxy materials," including "a

**Exhibit 4**
**4-71**

In short, there is simply no legal support for the dramatic cost-shifting of an insurgent proxy contest that the Equity Committee demands. After trial, if the Equity Committee is successful in replacing WMI's board, it will always be able to file an application to this Court to have its expenses allowed as administrative claims pursuant to section 503(b)(3)(D) of the Bankruptcy Code. Particularly given the fact that shareholders are out of the money, the estates should not be forced to include the Equity Committee's slate on their proxy and should not be forced to bear the costs of the Equity Committee's proxy campaign. For this reason, too, the relief requested in the Motion should be denied.[23]

**D.     Plaintiff's Request for Alternative Relief is Improper, the Automatic Stay Applies, and, In Any Event, the Court Should Stay this Action**

*1.     The Equity Committee's Request for a Ruling on the Applicability of the Automatic Stay Should Be Denied As An Improper Request for an Advisory Opinion*

Although it commenced this Action, the Equity Committee has alternatively asked this court, "to determine the automatic stay is not applicable or grant relief from the automatic stay to commence an action in Washington State court." (Pl. Memo. at 1). Having filed its Motion requesting summary judgment here, this Court has a "virtually unflagging obligation" to exercise

---

shareholder proposal 'if the proposal related to ... an election for membership on the company's board of directors or analogous governing body.'").

[23]     Again without briefing or discussion, the Equity Committee has asked the Court to alter the quorum requirement for taking action at a shareholder meeting as defined in WMI's Bylaws to "direct that the votes represented at the meeting constitute a quorum." Proposed Order at 2.f.[1] Quorums are generally altered if there is concern that a large shareholder may frustrate a shareholder meeting by refusing to attend. *See* Model Business Corporations Act, section 7.03, Official Comment No. 4 (2005) (reasoning that quorum altering is designed to "prevent[] a holder of the majority of the votes (who may not desire that a meeting be held) from frustrating the court-ordered meeting by not attending to prevent the existence of a quorum.") The Equity Committee has stated no such cause. Rather, by pursuing this requested relief, the Equity Committee seeks to effectively empower itself with the power to unilaterally direct the Debtors' course. Such a concentration of power is inappropriate and beyond the contemplation of the U.S. Trustee or this Court in refusing to disband the Equity Committee. Waiver of quorum is therefore neither necessary or appropriate, and the request should be denied.

**Exhibit 4
4-72**

the jurisdiction given it. *Colo. River Water Conservation Dist. v United States*, 424 U.S 800, 817 (U.S. 1976). The Equity Committee's request for stay relief is made in the alternative – there is no real case or controversy for the Court to resolve prior to ruling on summary judgment. Evincing the fact that it's request for a ruling on the automatic stay is not ripe, the Equity Committee's "briefing" is limited to one sentence found in the introductory and conclusion paragraphs of its brief, asserting in conclusory fashion that, "[i]n the alternative, the Court should determine that the automatic stay does not apply or grant relief from the automatic stay such that Plaintiffs may seek such relief in Washington." (Pl. Mem. at 8). This is an improper request for an advisory opinion that should be rejected. *Armstrong World Indus., Inc v. Adams*, 961 F.2d 405, 410 (3d Cir. 1992) ("The ripeness doctrine stems from the requirements of Article III of the U.S. Constitution, which prohibits federal courts from issuing advisory opinions.").

### 2. The Automatic Stay Applies and the Equity Committee Has Failed to Show Cause For Relief Therefrom

The automatic stay offers debtors a "breathing spell" by stopping *all actions* asserted against them, permitting debtors the time and resources necessary to formulate a plan for reorganization or rehabilitation, and repayment of creditors. *See McCartney v. Integra National Bank North*, 106 F.3d 506, 509 (3d Cir. 1997). The plain text of section 362(a)(3) provides for the automatic stay of "any act . . . to exercise control over property of the estate " 11 U.S C. § 362(a)(3). Here, the Equity Committee seeks to replace the Debtors' board of directors in order to garner "control" and dominion over the management of *all* the estates' assets. Thus, the plain language of the automatic stay instructs that the Equity Committee's action is indeed stayed. *See Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992).

Courts have found that attempts by stakeholders to exercise their rights to elect directors to a debtor in possession's board constitute attempts "to exercise control over property of the

**Exhibit 4**
**4-73**

estate." *See, e.g., In re Fairmont Communications Corp.*, No. 92-B-44861 (slip op.)

(Bankr. S.D.N.Y. Mar. 3, 1993); *In re Bicoastal Corp.*, 1989 Bankr. LEXIS 2046 (Bankr. M.D.

Fla. 1989). Although these decisions are based in part upon the shareholders' joint status as

creditors, the language of the statute does not call for an assessment of what the "act ... to

exercise control over property of the estate" arises out of or for what it is motivated. Rather, the

Bankruptcy Code stays automatically "*any* act" and applies to "*all* entities." 11 U.S.C.

§ 362(a)(3) (emphasis added).[24]

    Assuming *arguendo* the automatic stay applies, the Equity Committee does not make a

single argument in support of its request to lift the automatic stay and thus, by definition, falls far

short of establishing "cause." 11 U.S.C. § 362(d)(1). As discussed above, the Equity

Committee's "briefing" is limited to one conclusory sentence in its brief. It cannot be said that

the Equity Committee has satisfied its "heavy and possibly insurmountable burden of proving

that the balance of hardships tips significantly in favor of granting relief." *In re W.R. Grace &*

*Co.*, 2007 WL 1129170, at *2 (Bankr. D. Del. Apr. 13, 2007) (the party seeking relief from

automatic stay bears the burden). Failure by the Equity Committee to carry its burden alone

---

[24] In *In re Marvel Entertainment Group, Inc.*, 209 B.R. 832 (D. Del. 1997), a decision that is not binding authority on this Court, the court found that "the automatic stay provisions of the Bankruptcy Code are not implicated by the exercise of shareholders' corporate governance rights." *Id.* at 838. However, the key "exercise control" language of section 362(a)(3) was not in the Bankruptcy Code until it was added by the 1984 Amendment to the Bankruptcy Code. *See* Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. No. 98-353, § 441(a)(2), 98 Stat. 333 (1984). As a result, this language was not applicable in *any* of the cases cited by *Marvel*, including *Manville*, 801 F.2d at 60. Thus, *Marvel's* finding was based entirely upon cases that had not considered the Bankruptcy Code as currently effective. *Marvel* did conclude that the "exercise control" language was inapplicable based upon its assessment of legislative intent, determining that "if Congress had intended such a marked departure from well-established law, the legislative history of the 1984 amendment would contain some indication of that intention." *Marvel*, 209 B.R. at 838. However, the Supreme Court has stated that "statutory interpretation begins with the language of the statute itself," *Pennsylvania Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 557-58 (1990), and "time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Germain*, 503 U.S. at 253-54.

**Exhibit 4**
**4-74**

"requires a denial of the requested relief." *Id.*; *see also, e.g., In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1285 (2d Cir. 1990) ("If the movant fails to make an initial showing of cause... the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection.").

The Equity Committee has waived any argument that it may show cause for stay-relief. "A moving party may not raise new issues and present new factual materials in a reply brief that it should have raised in its initial brief." *See International Raw Materials, Ltd. v. Stauffer Chem. Co.*, 978 F.2d 1318, 1327 n. 11 (3d Cir. 1992) (refusing to consider an issue raised for the first time in a reply brief); *see also Hoxworth v. Blinder, Robinson & Co., Inc.*, 903 F.2d 186, 204-05 n. 29 (3d Cir. 1990). The stay should remain in full force and effect and the Action should not proceed.

### 3. *If Inapplicable, the Automatic Stay Should be Extended Pursuant to the Exercise of this Court's Equitable Powers*

Even if this Court were to find that the automatic stay were not applicable in the first instance, it should extend the stay using its power under section 105 of the Bankruptcy Code and enjoin further prosecution of this Action in any forum. The Third Circuit has endorsed the extension of the automatic stay where such litigation "could interfere with the reorganization of the debtor, or would interfere with, deplete or adversely affect property of the estates or which would frustrate the statutory scheme of chapter 11 or diminish the debtor's ability to formulate a plan of reorganization." *Gerard v. W.R. Grace & Co. (In re W.R. Grace & Co.)*, 115 Fed. Appx. 565, 570 (3d Cir. 2004) (*citing In re A. H. Robins Co.*, 828 F.2d 1023, 1026 (4th Cir. 1987) (staying action against debtor's insurer because action "will put a substantial burden on [the debtor and] it will detract from the reorganization process") and *Johns-Manville Corp. v. Asbestos Litig. Group (In re Johns-Manville Corp.)*, 26 B.R. 420, 436 (Bankr. S.D.N.Y. 1983)

**Exhibit 4**
**4-75**

*vacated in part*, 41 B.R. 926 (S.D.N.Y. 1984) (extending the automatic stay under § 362 pursuant to § 105(a) against non-debtors)) (internal citation omitted).[25] While these grounds alone are sufficient to demand extension of the stay, the Debtors have a right to enhanced protection from the interference and distraction of outside litigation during the exclusivity period. *See In re I Burack, Inc.*, 132 B.R. 814, 817 -818 (Bankr. S.D.N.Y. 1991) ("It is generally recognized that during the exclusivity period ... [a] claimholder should not be permitted to pursue litigation against the debtor in another court unless extraordinary circumstances are shown.") (internal citation omitted).

Moreover, the Third Circuit has held that the automatic stay may be extended where "unusual circumstances" exist, including where the action will have an adverse impact on the debtor's ability to accomplish reorganization. *See McCartney v. Integra Nat'l Bank North*, 106 F.3d 506, 509-10 (3d Cir. 1997). Here, for all the reasons adopted by the Third Circuit, there can be no question that unusual circumstances exist that justify extending the automatic stay. Beyond simply threatening to "interfere with the reorganization" of the Debtors, if the Action were allowed to proceed, the Equity Committee will seek to replace the Debtors' board of directors and almost certainly withdraw support of the Plan and Agreement, risking everything accomplished to date in the Chapter 11 Cases. The value that the Plan and Agreement provide to be recovered for the benefit of the Debtors' estates would be depleted and replaced with a "swing for the fences" litigation strategy that very likely will only further deplete value and delay distributions to creditors. At best, if the Action were to proceed, the Equity Committee would no doubt attempt to extract a recovery for shareholders, notwithstanding that creditors will not be

---

[25] *See also Belcufine v. Aloe*, 112 F.3d 633, 637 n.5 (3d Cir. 1997) (stating that the *Robbins* rationale for extending the automatic stay "has since been adopted by this Circuit").

**Exhibit 4**
**4-76**

paid in full, thus frustrating the statutory scheme of chapter 11. *In re Marvel Entertainment Group, Inc.*, 140 F.3d 463 (3d Cir. 1998) provides a clear example of the adverse impact the Action threatens to impose on the Chapter 11 Cases. After certain bondholders foreclosed upon common stock and removed and replaced the Marvel board, the chapter 11 case spiraled out of control. There were ever-escalating litigations and disputes, and an overarching "lack of confidence all creditors had in the [new board's] ability to act as fiduciaries." *Id* at 473. Less than six months after the new board took control, the district court withdrew the reference and ordered the appointment of a chapter 11 trustee to replace the board, and the Third Circuit affirmed. *Id.* at 467-69, 478. It took the chapter 11 trustee another seven expensive months to stabilize Marvel and confirm a plan of reorganization. *See In re Marvel Entertainment Group*, 234 B.R. 21, 23 (D. Del. 1999).

Additionally, as of April 7, 2010, in its Answer to the Equity Committee's Complaint, the Debtors will have asserted a counterclaim, requesting that the Court enjoin further prosecution of this Action – in any forum – pursuant to its inherent power under section 105 of the Bankruptcy Code (the "Counterclaim"). Such authority has been exercised in similar circumstances in the past and is fully appropriate here. *See Trap Rock*, 138 B.R. at 424 (court enjoined prosecution of an action to compel a shareholder meeting in any forum other than in the bankruptcy court); *see also In re Phila. Newspapers, LLC*, 407 B.R. 606, 618 (E.D. Pa. 2009) (affirming bankruptcy court's grant of injunction enjoining suit against non-debtors); *Lane v. Phila. Newspapers, LLC (In re Phila. Newspapers, LLC)*, 2010 U.S. Dist. LEXIS 1881, *15 (E.D. Pa. Jan. 11, 2010) (same). In view of the fact that this Court will, presumably, adjudicate the Debtors' Counterclaim – a core proceeding over which a Washington state court would have no

**Exhibit 4
4-77**

jurisdiction -- judicial economy alone precludes authorizing the Equity Committee to take up this Action in state court.

## CONCLUSION

For the reasons stated, the Motion should be denied.

Dated: April 7, 2010
Wilmington, Delaware

/s/ _____

Mark D. Collins (No. 2981)
Chun I. Jang (No. 4790)
Drew G. Sloan (No. 5069)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

-- and --

Marcia L. Goldstein, Esq.
Brian S. Rosen, Esq.
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

# Exhibit 5

Exhibit 5
5-79

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | |
| WASHINGTON MUTUAL, INC., *et al.*,[1] | ) ) ) | Chapter 11 |
| Debtors. | ) ) | Case No. 08-12229 (MFW) |
| | ) ) | Jointly Administered |
| | ) | |
| OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Adv. Pro. No. 10-50731 (MFW) |
| WASHINGTON MUTUAL, INC., | ) ) | |
| Defendant. | ) ) | |

## PLAINTIFF'S ANSWER TO DEBTOR'S COUNTERCLAIM

In this pleading, the Official Committee of Equity Security Holders (EC or Equity Committee) restates the allegations contained in the Debtor's Counterclaim followed by the EC's admission, denial, or counter-assertion.

## NATURE OF ACTION

1.     This suit is brought to protect the integrity, equity and progress to date of the Debtor's chapter 11 proceedings, to avoid waste of the asset of the Debtor's estate, and in pursuit of an efficient and equitable distribution of the Debtor's assets to the benefit of all parties in interest, which is the purpose of these chapter 11 proceedings.

---

[1]     Debtors in these Chapter 11 cases and the last four digits of each Debtor's federal tax identification numbers are: (i) Washington Mutual, Inc. (3725) and (ii) WMI Investment Corp. (5395). The Debtors are located at 925 Fourth Avenue, Suite 2500, Seattle, Washington 98104.

**Exhibit 5**
**5-80**

**ANSWER:** This paragraph addresses the Debtor's intent in bringing this counter-claim and does not call for a response.

2.     The Debtor seeks an order, pursuant to 11 U.S.C. § 105, enjoining the Equity Committee from bringing suit or prosecuting an action, in any forum, that seeks to compel a meeting of WMI shareholders.

**ANSWER:** This paragraph describes legal relief sought by the Debtor and does not call for a response.

## JURISDICTION AND VENUE

3.     This is an action pursuant to Federal Rule of Bankruptcy Procedure 7001 and 11 U.S.C. §§ 541, 544, 547, 548, and 550.

**ANSWER:** The EC admits that the Counterclaim seeks relief under the identified statutes and rule.

4.     The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334(b).

**ANSWER:** The EC admits the allegations in this paragraph.

5.     Venue is proper in this Court under 28 U.S.C.§ 1409(b).

**ANSWER:** The EC admits that venue is proper in this Court.

6.     This is a core proceeding pursuant to 28 U.S.C.§ 1579(b)(2).

**ANSWER:** This adversary proceeding raises both core and non-core issues. The Bankruptcy Court has already determined that the Debtor's shareholders may proceed in state court in Washington State with an action to compel a shareholder meeting, establishing that such an action is not a core proceeding.

**Exhibit 5**
**5-81**

## THE PARTIES

7.     Counterclaim-Plaintiff Washington Mutual, Inc. ("WMI" or the "Debtor") is a corporation organized under the laws of the State of Washington with its principal place of business located at 925 Fourth Avenue, Suite 2500, Seattle, Washington 98104.

**ANSWER:** The EC admits the allegations in this paragraph.

8.     Counterclaim-Defendant the Official Committee of the Equity Security Holders (the "Equity Committee") was appointed by the U.S. Trustee.

**ANSWER:** The EC admits the allegations in this paragraph.

## FACTUAL ALLEGATIONS

9.     Since the Petition Date, the Debtor has worked diligently to maximize the value of its estate, pursuing billions of dollars in claims through complex litigation, and filing thirty omnibus claims objections to date.

**ANSWER:** The EC admits that the Debtor filed thirty omnibus claims objections through the date of the filing of its counterclaims. The remaining allegations in this paragraph are denied.

10.     The Debtor, the Creditors' Committee, JPMC, the FDIC and other significant parties in interest have engaged in protracted and hard-fought negotiations seeking to reach a global resolution of the many issues of dispute among the parties. On March 12, 2010, these efforts bore fruit, as the Debtor, JPMC, the FDIC, and several of the Debtor's significant creditor constituencies reached a global agreement (the "Agreement").

**ANSWER:** The EC denies the allegations in this paragraph.

11.     On March 26, 2010, the final day to file during the exclusivity period, the Debtor filed its Plan, referencing and incorporating the Agreement, and a disclosure

**Exhibit 5**
**5-82**

statement in connection therewith (the "Disclosure Statement"). The Debtor anticipates seeking Court-approval of the Disclosure Statement as soon as the final terms of the Agreement are documented.

**ANSWER:** The EC admits that the Debtor filed a proposed Plan on March 26, 2010 with a disclosure statement and copy of a purported tentative agreement between the Debtor and other parties. The allegation regarding the Debtor's intentions for seeking Court approval does not require a response.

12.     Under the Plan, the preferred shareholders of WMI are out of the money by over $400 million, and the common shareholders of WMI are more than $8 billion further out of the money than the preferred shareholders.

**ANSWER:** The EC denies the allegations in this paragraph because the phrase "out of the money" is vague and because several contingencies would impact the recovery of the preferred and common shareholders under the proposed Plan.

13.     Under the WMI Amended Articles of Incorporation, under no circumstances at an annual meeting of shareholders could preferred shareholders have a right to vote, as a group, for more than two directors, which would be added to the current total of nine directors (of the eleven authorized seats) now serving on the WMI board. Therefore, only common shareholders have voting rights sufficient to precipitate a change in control of WMI via the election of directors at an annual meeting.

**ANSWER:** The EC denies the allegations in this paragraph.

14.     The U.S. Trustee formed the Equity Committee so that the interests of shareholders of the Debtor would have a voice in these chapter 11 cases. Yet, just two months after its formation, the Equity Committee seeks to abandon this sensible and balanced approach, and seize a dominate position over the other parties, and the entire rehabilitation process, by reconstituting the board of the Debtor with their own nominees

**Exhibit 5**
**5-83**

-4-

for director.

ANSWER: The EC admits that the Equity Committee was formed by the U.S. Trustee in order to advocate for the interest of equity investors in the Debtor. The remaining allegations in this paragraph are denied.

15. In pursuit of this design, the Equity Committee seeks to compel the Debtor to hold an annual meeting of its shareholders for the purpose of election of directors beholden to the Plaintiffs. Its does so in order to see the Debtor withdraw the Plan, repudiate the Agreement, and undo the tremendous progress toward rehabilitation of the Debtor and repayment of creditors made over the past 18 months of these chapter 11 proceedings and over one year of negotiation of the Agreement.

ANSWER: The EC denies the allegations in this paragraph.

16. Through its Action and the relief it requests, the Equity Committee seeks to exercise control over property of the Debtor's estate.

ANSWER: The EC denies the allegation in this paragraph.

17. The Equity Committee has publicly stated its opposition to the Agreement and the Plan.

ANSWER: The Equity Committee admits the allegation in this paragraph.

18. Permitting the Equity Committee to call such a meeting poses a serious threat and real jeopardy to the Agreement, the Plan, and the Debtor's reorganization. The Plan and the Debtor's reorganization are based upon the Agreement, which is sufficiently tentative and tenuous such that it will not survive the dislocation engendered by a shareholders meeting. The Agreement was reached only after many compromises by the Debtor, its creditors, the FDIC, and JPMC. If the Agreement is upset, the Plan will likely not be confirmed, and the chapter 11 cases will be disrupted significantly. The current negotiating postures of the parties will change significantly. This will most certainly

**Exhibit 5**
**5-84**

mean a return to aggressive positions held previously in the chapter 11 cases, erasing over a year's worth of progress toward a negotiated settlement.

**ANSWER:** The EC denies the allegations in this paragraph.

19. Pursuant to Washington law, a WMI common shareholder could have applied to the court seeking an order to compel an annual meeting at any time since July 15, 2009. Yet, prior to filing of the Equity Committee's Complaint, neither the Equity Committee, any of its individual members, any WMI shareholder, nor any party had done so. The Equity Committee's motion for summary judgment on its Complaint (the "Motion") was filed less than 24 hours prior to announcement before this Court that the Agreement had been reached, and that under its terms equity would receive no recovery.

**ANSWER:** The EC admits that a WMI common shareholder could have applied to a Washington court seeking an order to compel an annual meeting at any time. The EC admits that, to its knowledge, prior to the filing of the adversary complaint in this case, no WMI shareholder had done so. The EC also admits that the Debtors announced in this Court that a tentative proposed settlement agreement had been reached between the Debtor and certain other parties less than 24 hours after the Equity Committee filed its motion for summary judgment and additional relief in this adversary proceeding.

20. The Equity Committee has requested the Court compel an annual meeting on April 24, 2010, less than three weeks from the deadline for responding to its Motion. *See* Proposed Order at ¶ 2, attached to Plaintiff's Memorandum of Law in support of the Motion.

**ANSWER:** The EC admits the allegation in this paragraph.

21. The Equity Committee has asked the Court to compel the Debtor to distribute the Equity Committee's (as yet unnamed) nominees for director with the Debtor's own proxy materials. *See* Proposed Order ¶ 2j, attached to Plaintiff's

**Exhibit 5**
**5-85**

Memorandum of Law in support of the Motion.

**ANSWER:** The EC admits the allegation in this paragraph.

22. Compelling an issuer of public securities to include a dissident slate of directors on its own proxy disclosure statement and proxy ballot is contrary to applicable federal law.

**ANSWER:** The EC denies the legal conclusion set out in this paragraph.

23. The Equity Committee requested the Court "[d]irect that the votes represented at the [annual] meeting constitute a quorum." *See* Proposed Order at ¶ 2f, attached to Plaintiff's Memorandum of Law in support of the Motion.

**ANSWER:** The EC admits the allegation in this paragraph.

24. Under the WMI Bylaws, the director candidates receiving a plurality of votes are to be seated as directors. *See* Bylaws section 3.11.2.

**ANSWER:** The EC admits that the cited section of the WMI Bylaws provides that WMI's election of directors would be governed by Wash. Rev. Code § 23B.10.205 and that, in any election of directors that is not a contested election, the candidates elected would be those receiving a majority of votes cast. The EC denies any other allegations in this paragraph.

25. If a shareholder meeting is called, creditor constituencies are likely to move for appointment of a chapter 11 trustee, causing substantial delay and leading to submission of competing plans. The problems and complexities of the proceedings would increase exponentially. These events would have a deleterious effect on the Chapter 11 cases, causing significant diminution in value and forcing creditors to go without recovery for a significantly longer period of time than already endured.

**ANSWER:** The EC denies the allegations in this paragraph.

26. Shareholders of WMI have a voice in the confirmation process of the Plan

**Exhibit 5**
**5-86**

via the Equity Committee.

**ANSWER:** The EC admits that it has standing to address the proposed Plan in the bankruptcy. Any other allegations or implications in this paragraph are denied.

27. 11 U.S.C. §§ 105 grants this court authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the [the Bankruptcy Code]."

**ANSWER:** The EC admits that the quote from the cited statute in this paragraph is accurate.

28. The Court also has discretionary authority pursuant to Revised Code of Washington ("RCW") section 23B.07.030, which states: "The superior court of the country in which the corporation's registered office is located may, after notice to the corporation, summarily order a meeting to be held...On application of any shareholder of the corporation entitled to vote in the election of directors at an annual meeting...." (emphasis added).

**ANSWER:** The EC denies the legal analysis set out in this paragraph.

## COUNTERCLAIM

### Local Action by Plaintiff That Seeks to Compel a Meeting of WMI Shareholders Should Be Stayed Pursuant to Court's Authority Under 11 U.S.C. § 105(a)

29. Debtor repeats and re-alleges each and every allegation contained in the preceding paragraphs 1-28.

**ANSWER:** The EC answers these paragraphs as indicated above.

30. In a desperate, self-interested, and reckless attempt to scuttle the Plan, which leaves it constituents out of the money, the Equity Committee seeks to seize control of the Debtor. Plaintiff's scheme is to convince this Court to compel a hasty annual meeting, force the Debtor (contrary to law) to bear the cost of a proxy contest by

**Exhibit 5**
**5-87**

including the Plaintiff's slate of hand-picked directors on the Debtors proxy materials, and gain a waiver of quorum. In combination, these series of requests could, within a matter of weeks, allow a handful of common shareholders – who are over $8 billion out of the money – to seize control of the Debtor, withdraw the Plan, and terminate the Agreement, erasing 18 months of progress in these proceedings and doing irreparable harm to the Debtor and its creditors – the true parties in interest of these Chapter 11 proceedings.

ANSWER: The EC denies the allegations in this paragraph.

31. To allow this result would be antithetical to very purpose and principles of the Bankruptcy Code—equitable and efficient distribution of a debtor's assets and a fresh start for the debtor. In order to protect the integrity and equity of these Chapter 11 cases, preserve this Court's expertise and management over the settlement process, and maintain the delicate balance of interests among the stakeholders that would be jeopardized by a change in control of the Debtor at this critical juncture in the proceedings, this Court should stay Plaintiff's Action and/or otherwise bar the Equity Committee from seeking relief in the Washington state court, or any other forum, in order to compel a WMI shareholders meeting.

ANSWER: The EC denies the allegations in this paragraph.

Exhibit 5
5-88

Dated: April 30, 2010

ASHBY & GEDDES, P.A.

_[signature]_

William P. Bowden (DE Bar No. 2553)
Gregory A. Taylor (DE Bar No. 4008)
Stacy L. Newman (DE Bar No. 5044)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
Telephone: (302) 654-1888
Facsimile: (302) 654-2067
E-mail:   wbowden@ashby-geddes.com
          gtaylor@ashby-geddes.com
          snewman@ashby-geddes.com

_Delaware Counsel to the Official Committee of
Equity Security Holders of Washington Mutual,
Inc., et al._

-And-

**SUSMAN GODFREY, L.L.P.**
Stephen D. Susman (NY Bar No. 3041712)
Seth D. Ard (NY Bar No. 4773982)
654 Madison Avenue, 5th Floor
New York, NY 10065
E-mail:
ssusman@susmangodfrey.com
sard@susmangodfrey.com

Parker C. Folse, III (WA Bar No. 24895)
Edgar Sargent (WA Bar No. 28283)
Justin A. Nelson (WA Bar No. 31864)
1201 Third Ave., Suite 3800
Seattle, WA 98101
Telephone: (206) 516-3880
Facsimile: (206) 516-3883
E-mail:
pfolse@susmangodfrey.com
esargent@susmangodfrey.com
jnelson@susmangodfrey.com

_Proposed Co-Counsel for the Official Committee of
Equity Security Holders of Washington Mutual,
Inc., et al._

-10-

**Exhibit 5**
**5-89**

# Exhibit 6

Exhibit 6
6-90

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
-----------------------------------x
                                   :
In re:                             :    Chapter 11
                                   :
WASHINGTON MUTUAL, INC., et al,    :    Case No. 08-12229 (MFW)
                                   :    (Jointly Administered)
                      Debtors.     :
                                   :    Related Dkt. No. 2501
-----------------------------------x
-----------------------------------x
                                   :
OFFICIAL COMMITTEE OF              :
EQUITY SECURITY HOLDERS,           :    Adv. Proc. No. 10-50731(MFW)
                                   :
Plaintiff,                         :
                                   :
                                   :
v.                                 :    Related Dkt. No. 3//9
WASHINGTON MUTUAL, INC.,           :
                                   :
Defendant,                         :
                                   :
-----------------------------------x
```

## ORDER

Upon the motion, dated March 11, 2010 (the "Motion"), of the Official Committee of

Equity Security Holders (the "Equity Committee"), the plaintiff herein, for an order granting

summary judgment, or in the alternative, for relief from the automatic stay, and a memorandum

of law in support thereof; and the Court having jurisdiction over this matter pursuant to 28

U.S.C. §§ 157 and 1334; and the relief granted herein being a core proceeding pursuant to 28

U.S.C. § 157(b)(2); and venue being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and

Washington Mutual, Inc. ("WMI"), the defendant herein, having (1) answered the complaint

herein and filed a counterclaim (the "Counterclaim") with respect thereto, and (2) interposed an

opposition to the Motion and the relief requested therein (the "Opposition"); and the Equity

**Exhibit 6**
**6-91**

Committee having filed a reply to the Opposition (the "Reply"); and the Court having scheduled a hearing for April 21, 2010 (the "Hearing") to consider solely the issue of the applicability of the automatic stay imposed by operation of section 362 of title 11 of the United States Code (the "Bankruptcy Code"); and the Court having duly considered the relevant portions of the Motion, the Opposition and the Reply, and the testimony and the arguments presented at the Hearing; and the Court having determined that section 362 of the Bankruptcy Code is inapplicable to the relief requested in the Motion; upon due deliberation, good and sufficient cause appearing therefore, it is hereby **ORDERED** that:

1. The automatic stay imposed by operation of section 362 of the Bankruptcy Code is inapplicable to an action by any one or more shareholders of WMI including, without limitation, members of the Equity Committee, in the state courts of the State of Washington seeking to compel WMI to hold an annual shareholders meeting and any relief related to such action; provided, however, that the foregoing is without prejudice to the rights of WMI to contest the relief requested in any such action and in any such court.

2. The relief granted herein does not affect, nor is it intended to affect, the rights of WMI with respect to the Counterclaim and the Equity Committee to oppose the relief requested in the Counterclaim.

3. The Court retains jurisdiction to enter further orders as necessary to accomplish the purposes of this Order.

Dated: Wilmington, Delaware
    April 26, 2010

_____
The Honorable Mary F. Walrath
United States Bankruptcy Court Judge

**Exhibit 6**
**6-92**

# Exhibit 7

Exhibit 7
7-93

UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN THE MATTER OF: | : | Chapter 11 |
| | : | |
| | : | Case No. 08-12229 (MFW) |
| Washington Mutual, Inc., *et al.*, | : | |
| | : | NOTICE OF APPOINTMENT OF |
| | : | COMMITTEE OF EQUITY SECURITY |
| Debtors. | : | HOLDERS |

----------------------------------

Pursuant to Section 1102(a)(1) of the Bankruptcy Code, I hereby appoint the following persons to the Committee of Equity Security Holders in connection with the above-captioned cases:

1. **Esopus Creek Value, LLC**, Attn: Joseph S. Criscione, 150 JFK Parkway, Suite 100, Short Hills, NJ 07078, Phone: 973-847-5904

2. **Kenneth l. Feldman**

3. **Saul Sutton**

4. **Dorothea Barr**

5. **Joyce M. Presnall**

6. **Tyson Matthews**

7. **Michael Willingham**

ROBERTA A. DEANGELIS
Acting United States Trustee, Region 3

/s/ Joseph J. McMahon, Jr. for
WILLIAM K. HARRINGTON
ASSISTANT UNITED STATES TRUSTEE

DATED:  January 11, 2010

Attorney assigned to these cases:  Joseph J. McMahon, Jr., Esquire, Phone: (302) 573-6491, Fax: (302) 573-6497
Debtors' co-counsel:  Mark D. Collins, Esquire, Phone: (302) 651-7700, Fax: (302) 651-7701

**Exhibit 7**
**7-94**

0812229100111000000000031

# Exhibit 8

Exhibit 8
8-95

☐ EXPEDITE
✓ No hearing set
☐ Hearing is set:
    Date:
    Time.
    Judge/Calendar:

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

FOR THE COUNTY OF THURSTON

| | |
|---|---|
| MICHAEL WILLINGHAM and ESOPUS CREEK VALUE LP,<br><br>        Plaintiffs,<br><br>vs.<br><br>WASHINGTON MUTUAL, INC., a Washington corporation,<br><br>        Defendant. | No.<br><br>[Clerk's Action Required]<br><br>COMPLAINT TO COMPEL SHAREHOLDERS' MEETING |

Plaintiffs Michael Willingham and Esopus Creek Value LP ("Plaintiffs"), shareholders of defendant Washington Mutual, Inc. ("Defendant" or "WaMu"), bring this action pursuant to RCW 23B.07.030 to compel a WaMu shareholders' meeting.

## I.   <u>NATURE OF ACTION</u>

1.     This action is brought as a result of Defendant's failure, for more than two years, to convene its annual shareholders' meeting.

2.     During the last two years, defendant, a publicly traded company, also has failed to submit certain annual, quarterly, and other periodic reports, including financial statements, required to be filed with the U.S. Securities and Exchange Commission ("SEC").

3.     By failing to hold an annual shareholders' meeting, Defendant has deprived Plaintiffs and other shareholders from nominating and voting for WaMu directors.

COMPLAINT TO COMPEL SHAREHOLDERS'
MEETING - 1

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
US Bank Centre
1420 5th Ave., Suite 3010
Seattle, WA 98101
Telephone 206.622.1711 Fax 206.292.0460

**Exhibit 8**
**8-96**

PDX/121991/175276/CJF/5898380.1

1      4.     Plaintiffs seek an order pursuant to RCW 23B.070.030(1)(a), summarily

2 compelling Defendant to hold the required shareholders' meeting on a date certain, to be

3 fixed by the Court, in accordance with Washington law, and to issue additional orders

4 pursuant to RCW 23B.070.030(2).

5                **II.**   **PARTIES**

6      5.     Michael Willingham is an individual who resides in Pittsburg, Texas.

7      6.     Michael Willingham is the beneficial owner of approximately 1,030,000

8 shares of common stock in WaMu.

9      7.     Michael Willingham is a shareholder of WaMu.

10     8.     Michael Willingham is entitled to vote in the election of directors of WaMu at

11 an annual meeting.

12     9.     Esopus Creek Value LP ("Esopus") is a limited partnership organized and

13 existing under the laws of the State of Delaware.

14     10.    Esopus maintains its principal place of business at 150 JFK Parkway, Suite

15 100, Short Hills, New Jersey 07078.

16     11.    Esopus is the beneficial owner of the following equity securities of WaMu:

17 approximately 100,000 shares of common stock and approximately 15,000 shares of

18 preferred stock.

19     12.    Esopus is a shareholder of WaMu.

20     13.    Esopus is entitled to vote in the election of directors of WaMu at an annual

21 meeting.

22     14.    WaMu's 2007 fiscal year follows the calendar year, and ended on December

23 31, 2007.

24     15.    WaMu's last shareholder meeting was held on or about April 20, 2008.

25     16.    WaMu is a corporation organized and existing under the laws of the State of

26 Washington.

COMPLAINT TO COMPEL SHAREHOLDERS'
MEETING - 2

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
US Bank Centre
1420 5th Ave., Suite 3010
Seattle, WA 98101
Telephone 206.522.1711 Fax 206.292.0460

**Exhibit 8**
**8-97**

17.     WaMu maintains its registered office in Thurston County, Washington.

18.     WaMu's registered agent for service of process in Washington is Corporation Service Company, 300 Deschutes Way SW, Suite 304, Tumwater, Washington 98501.

19.     WaMu is a savings bank holding company and the owner of Washington Mutual Bank, which was the largest savings and loan association in the United States of America.

20.     On September 25, 2008, the United States Office of Thrift Supervision ("OTS") seized Washington Mutual Bank from WaMu and placed it into the receivership of the Federal Deposit Insurance Corporation ("FDIC").

21.     The FDIC sold WaMu's banking subsidiaries (minus unsecured debt or equity claim) to JP Morgan Chase for $1.9 billion.

22.     The holding company, WaMu, was left with $33 billion in assets and $8 billion in debt after being stripped of its banking subsidiary by the FDIC.

23.     On September 26, 2008, Defendant filed for Chapter 11 voluntary bankruptcy in Delaware.

24.     On April 21, 2010, the Honorable Mary Walrath held that the automatic bankruptcy stay did not apply to bar shareholders from exercising their corporate governance rights.

### III.     VENUE AND JURISDICTION

25.     This court has jurisdiction over this matter pursuant to RCW 23B.07.030 and Washington law.

26.     WaMu's registered office is in Thurston County, Washington.

27.     Venue is proper in Thurston County.

### IV.     CAUSE OF ACTION

28.     Washington statute, at RCW 23B.07.030(1), provides that the superior court of the county in which a corporation's registered office is located may, after notice to the

COMPLAINT TO COMPEL SHAREHOLDERS'
MEETING - 3

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
US Bank Centre
1420 5th Ave., Suite 3010
Seattle, WA 98101
Telephone 206.622.1711 Fax 206.292.0460

**Exhibit 8**
**8-98**

PDX/121991/175276/CJF/5898380.1

1  corporation, summarily order a meeting to be held: (a) On application of any shareholder of
2  the corporation entitled to vote in the election of directors at an annual meeting, if an annual
3  meeting was not held within the earlier of six months after the end of the corporation's fiscal
4  year or fifteen months after its last annual meeting or approval of corporate action by
5  shareholder consent in lieu of such a meeting; or (b) On application of a shareholder who
6  executed a demand for a special meeting valid under RCW 23B.07.020, if: (i) Notice of the
7  special meeting was not given within thirty days after the date the demand was delivered to
8  the corporation's secretary; or (ii) The special meeting was not held in accordance with the
9  notice.

10      29.    Plaintiffs are shareholders of WaMu, and Plaintiffs are entitled to vote in the
11  election of directors of WaMu at an annual meeting.

12      30.    WaMu's registered office is in Thurston County, Washington.

13      31.    WaMu's fiscal year runs from January 1 to December 31.

14      32.    WaMu has not held a shareholders' meeting since April 20, 2008.

15      33.    An annual WaMu shareholders' meeting was not held within six months after
16  the end of WaMu's 2008 fiscal year.

17      34.    An annual WaMu shareholders' meeting was not held within fifteen months
18  after its last annual meeting or approval of corporate action by shareholder consent in lieu of
19  such a meeting.

20      35.    Washington statute, at RCW 23B.07.030(2), also provides that the court may,
21  after notice to the corporation, fix the time and place of the meeting, determine the shares
22  and shareholders entitled to participate in the meeting, specify a record date for determining
23  shareholders entitled to notice of and to vote at the meeting, prescribe the manner, form, and
24  content of the meeting notice, fix the quorum required for specific matters to be considered at
25  the meeting, or direct that the votes represented at the meeting constitute a quorum for

26

COMPLAINT TO COMPEL SHAREHOLDERS'
MEETING - 4

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
US Bank Centre
1420 5th Ave., Suite 3010
Seattle, WA 98101
Telephone 206.622.1711 Fax 206.292.0460

**Exhibit 8**
**8-99**

PDX/121991/175276/CJF/5898380.1

1   approval of those matters, and enter other orders necessary to accomplish the purpose or

2   purposes of the meeting.

3         36.   WaMu has not set a date for an annual meeting of shareholders in 2010.

4         37.   WaMu did not hold an annual meeting within 15 months after its last annual

5   meeting.

6         38.   WaMu has not taken any action by written consent to elect WaMu directors in

7   lieu of an annual meeting.

8         39.   WaMu should be compelled to schedule and hold an annual shareholders'

9   meeting on a date certain, pursuant to RCW 23B.07.030.

10       WHEREFORE, Plaintiffs respectfully request that the Court enter an Order:

11         A.   Directing Defendant to promptly convene and hold an annual shareholders'

12   meeting for the nomination and election of directors;

13         B.   Designating the time and place of the annual meeting, as well as the form of

14   notice of the meeting to be delivered to all shareholders by Defendant; and

15         C.   Entering further orders as necessary to accomplish the purposes of the

16   meeting.

17       Dated this 26th day of April, 2010.

18                    SCHWABE, WILLIAMSON & WYATT, P.C.

19

20               By:                    34211

21                    Bert W. Markovich, WSBA #13580
                       Colin Folawn, WSBA #34211

22                    Attorneys for Plaintiffs

23

24

25

26

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
US Bank Centre
1420 5th Ave., Suite 3010
Seattle, WA 98101
Telephone 206.622.1711 Fax 206.292.0460

**Exhibit 8
8-100**

# Exhibit 9

Exhibit 9
9-101

```
1
2   ☐ EXPEDITE
    ✓ No hearing set
3   ☐ Hearing is set:
       Date:
4      Time.
       Judge McPhee/Civil
5
```

6

7           IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

8                     FOR THE COUNTY OF THURSTON

9   MICHAEL WILLINGHAM and ESOPUS
    CREEK VALUE LP,
10
                    Plaintiffs,                     No. 10-2-00854-1
11
          vs.                                       FIRST AMENDED COMPLAINT TO
12                                                  COMPEL SHAREHOLDERS'
    WASHINGTON MUTUAL, INC., a                      MEETING
13  Washington corporation,

14                  Defendant.

15          Plaintiffs Michael Willingham and Esopus Creek Value LP ("Plaintiffs"),

16  shareholders of defendant Washington Mutual, Inc. ("Defendant" or "WaMu"), bring this

17  action pursuant to RCW 23B.07.030 to compel a WaMu shareholders' meeting.

18                  I.      **NATURE OF ACTION**

19          1.      This action is brought as a result of Defendant's failure, for more than two

20  years, to convene its annual shareholders' meeting.

21          2.      During the last two years, defendant, a publicly traded Washington

22  corporation, also has failed to submit certain annual, quarterly, and other periodic reports,

23  including financial statements, required to be filed with the U.S. Securities and Exchange

24  Commission ("SEC").

25          3.      By failing to hold an annual shareholders' meeting, Defendant has deprived

26  Plaintiffs and other shareholders from nominating and voting for WaMu directors.

FIRST AMENDED COMPLAINT TO COMPEL
SHAREHOLDERS' MEETING - 1

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
US Bank Centre
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone 206.622.1711 Fax 206.292.0460

**Exhibit 9**
**9-102**

PDX/121991/175276/CJF/5932052.1

1    4.    Plaintiffs seek an order pursuant to RCW 23B.070.030(1)(a), summarily
2    compelling Defendant to hold the required shareholders' meeting on a date certain, to be
3    fixed by the Court, in accordance with Washington law, and to issue additional orders
4    pursuant to RCW 23B.070.030(2).

5                              II.    **PARTIES**

6    5.    Michael Willingham is an individual who resides in Pittsburg, Texas.

7    6.    Michael Willingham is the beneficial owner of approximately 1,030,000
8    shares of common stock in WaMu.

9    7.    Michael Willingham is a shareholder of WaMu.

10   8.    Michael Willingham is entitled to vote in the election of directors of WaMu at
11   an annual meeting.

12   9.    Esopus Creek Value LP ("Esopus") is a limited partnership organized and
13   existing under the laws of the State of Delaware.

14   10.   Esopus maintains its principal place of business at 150 JFK Parkway, Suite
15   100, Short Hills, New Jersey 07078.

16   11.   Esopus is the beneficial owner of the following equity securities of WaMu:
17   approximately 100,000 shares of common stock and approximately 15,000 shares of
18   preferred stock.

19   12.   Esopus is a shareholder of WaMu.

20   13.   Esopus is entitled to vote in the election of directors of WaMu at an annual
21   meeting.

22   14.   WaMu's fiscal year is the same as the calendar year and ends on December
23   31.

24   15.   WaMu's last annual shareholder meeting was held on or about April 15, 2008.

25   16.   WaMu is a corporation organized and existing under the laws of the State of
26   Washington.

FIRST AMENDED COMPLAINT TO COMPEL
SHAREHOLDERS' MEETING - 2

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
US Bank Centre
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone 206.622.1711 Fax 206.292.0460

**Exhibit 9**
**9-103**

1    17.    WaMu maintains its registered office in Thurston County, Washington.

2    18.    WaMu's registered agent for service of process in Washington is Corporation
3    Service Company, 300 Deschutes Way SW, Suite 304, Tumwater, Washington 98501.

4    19.    WaMu is a savings bank holding company and the owner of Washington
5    Mutual Bank, which was the largest savings and loan association in the United States of
6    America.

7    20.    On September 25, 2008, the United States Office of Thrift Supervision
8    ("OTS") seized Washington Mutual Bank from WaMu and placed it into the receivership of
9    the Federal Deposit Insurance Corporation ("FDIC").

10    21.    The FDIC sold WaMu's banking subsidiaries (minus unsecured debt or equity
11    claim) to JP Morgan Chase for $1.9 billion.

12    22.    The holding company, WaMu, was left with $33 billion in assets and $8
13    billion in debt after being stripped of its banking subsidiary by the FDIC.

14    23.    On September 26, 2008, Defendant filed for Chapter 11 voluntary bankruptcy
15    in Delaware.

16    24.    On April 21, 2010, the Honorable Mary Walrath held that the automatic
17    bankruptcy stay did not apply to bar shareholders from exercising their corporate governance
18    rights.

19    **III.    VENUE AND JURISDICTION**

20    25.    This court has jurisdiction over this matter pursuant to RCW 23B.07.030 and
21    Washington law.

22    26.    WaMu's registered office is in Thurston County, Washington.

23    27.    Venue is proper in Thurston County.

24    **IV.    CAUSE OF ACTION**

25    28.    Washington statute, at RCW 23B.07.030(1), provides that the superior court
26    of the county in which a corporation's registered office is located may, after notice to the

FIRST AMENDED COMPLAINT TO COMPEL
SHAREHOLDERS' MEETING - 3

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
US Bank Centre
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone 206.622.1711 Fax 206.292.0460

**Exhibit 9**
**9-104**

1   corporation, summarily order a meeting to be held: (a) On application of any shareholder of

2   the corporation entitled to vote in the election of directors at an annual meeting, if an annual

3   meeting was not held within the earlier of six months after the end of the corporation's fiscal

4   year or fifteen months after its last annual meeting or approval of corporate action by

5   shareholder consent in lieu of such a meeting; or (b) On application of a shareholder who

6   executed a demand for a special meeting valid under RCW 23B.07.020, if: (i) Notice of the

7   special meeting was not given within thirty days after the date the demand was delivered to

8   the corporation's secretary; or (ii) The special meeting was not held in accordance with the

9   notice.

10      29.     Plaintiffs are shareholders of WaMu, and Plaintiffs are entitled to vote in the

11  election of directors of WaMu at an annual meeting.

12      30.     WaMu's registered office is in Thurston County, Washington.

13      31.     WaMu's fiscal year runs from January 1 to December 31.

14      32.     WaMu has not held an annual shareholders' meeting since April 15, 2008.

15      33.     WaMu held a special shareholders meeting on or about June 24, 2008. The

16  special shareholders meeting was for the purpose of raising capital.

17      34.     An annual WaMu shareholders' meeting was not held within six months after

18  the end of WaMu's 2008 fiscal year.

19      35.     An annual WaMu shareholders' meeting was not held within fifteen months

20  after its last annual meeting or approval of corporate action by shareholder consent in lieu of

21  such a meeting.

22      36.     Washington statute, at RCW 23B.07.030(2), also provides that the court may,

23  after notice to the corporation, fix the time and place of the meeting, determine the shares

24  and shareholders entitled to participate in the meeting, specify a record date for determining

25  shareholders entitled to notice of and to vote at the meeting, prescribe the manner, form, and

26  content of the meeting notice, fix the quorum required for specific matters to be considered at

FIRST AMENDED COMPLAINT TO COMPEL
SHAREHOLDERS' MEETING - 4

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
US Bank Centre
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone 206.622.1711 Fax 206.292.0460

**Exhibit 9**
**9-105**

1  the meeting, or direct that the votes represented at the meeting constitute a quorum for
2  approval of those matters, and enter other orders necessary to accomplish the purpose or
3  purposes of the meeting.

4      37.    WaMu has not set a date for an annual meeting of shareholders in 2010.

5      38.    WaMu did not hold an annual meeting within 15 months after its last annual
6  meeting.

7      39.    WaMu has not taken any action by written consent to elect WaMu directors in
8  lieu of an annual meeting.

9      40.    WaMu should be compelled to schedule and hold an annual shareholders'
10 meeting on a date certain, pursuant to RCW 23B.07.030.

11     WHEREFORE, Plaintiffs respectfully request that the Court enter an Order:

12     A.    Directing Defendant to promptly convene and hold an annual shareholders'
13 meeting for the nomination and election of directors;

14     B.    Designating the time and place of the annual meeting, as well as the form of
15 notice of the meeting to be delivered to all shareholders by Defendant; and

16     C.    Entering further orders as necessary to accomplish the purposes of the
17 meeting.

18     Dated this 4th day of May, 2010.

19                  SCHWABE, WILLIAMSON & WYATT, P.C.

20

21             By: _____
22                   Bert W. Markovich, WSBA #13580
                   Colin Folawn, WSBA #34211
23                    Attorneys for Plaintiffs

24

25

26

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
US Bank Centre
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone 206.622.1711 Fax 206.292.0460

**Exhibit 9**
**9-106**

# Exhibit 10

**Exhibit 10**
**10-107**

1

2

3

4

5

6

7            IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

8                 FOR THE COUNTY OF THURSTON

9

MICHAEL WILLINGHAM and ESOPUS
10 CREEK VALUE LP,

          No. 10-2-00854-1
11         Plaintiffs,

          DECLARATION OF ANDREW SOLE
          IN SUPPORT OF MOTION FOR
12    vs.             ORDER TO COMPEL
          SHAREHOLDERS' MEETING
WASHINGTON MUTUAL, INC., a
13 Washington corporation,

14         Defendant.

15      I, ANDREW SOLE, hereby declare as follows:

16        1.     I am a managing member of Esopus Creek Advisors LLC, where Esopus

17 Creek Advisors LLC serves as the general partner to Esopus Creek Value LP ("Esopus"),

18 which is a plaintiff in the above-entitled matter. I am competent to testify to the matters set

19 forth below, and I make this declaration based on personal knowledge.

20        2.     Esopus is a limited partnership. It is the beneficial owner of the following

21 equity securities of Washington Mutual, Inc. ("WaMu"): approximately 100,000 shares of

22 common stock and approximately 15,000 shares of preferred stock.

23        3.     As a shareholder of WaMu, Esopus is entitled to vote in the election of

24 directors of WaMu at an annual meeting.

25        4.     WaMu is a corporation organized and existing under the laws of the State of

26 Washington. WaMu's registered office is in Thurston County, Washington. WaMu is a

DECLARATION OF ANDREW SOLE IN SUPPORT OF
MOTION FOR ORDER TO COMPEL SHAREHOLDERS'
MEETING - 1

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
US Bank Centre
1420 5th Ave., Suite 3010
Seattle, WA 98101
Telephone 206.622.1711 Fax 206.292.0460

PDX/121991/175276/CJF/5704844.2

**Exhibit 10**
**10-108**

1   savings bank holding company and the owner of Washington Mutual Bank, which was the
2   largest savings and loan association in the United States of America.

3        5.     On September 25, 2008, the United States Office of Thrift Supervision
4   ("OTS") seized Washington Mutual Bank from WaMu and placed it into the receivership of
5   the Federal Deposit Insurance Corporation ("FDIC"). The FDIC sold the banking
6   subsidiaries (minus unsecured debt or equity claim) to JP Morgan Chase for $1.9 billion. The
7   holding company, Defendant Washington Mutual, Inc., was left with $33 billion assets, and
8   $8 billion debt after being stripped of its banking subsidiary by the FDIC.

9        6.     On the next day, September 26, 2008, Defendant filed for Chapter 11
10  voluntary bankruptcy in Delaware.

11       7.     WaMu's fiscal year follows the calendar year and ends on December 31.
12  WaMu's last annual shareholder meeting was held on April 15, 2008. A special shareholder
13  meeting was held on or about June 24, 2008. WaMu has not held an annual shareholders'
14  meeting since April 15, 2008.

15       8.     An annual WaMu shareholders' meeting was not held within six months after
16  the end of WaMu's 2008 fiscal year. An annual WaMu shareholders' meeting was not held
17  within fifteen months after its last annual meeting or approval of corporate action by
18  shareholder consent in lieu of such a meeting.

19       9.     WaMu did not conduct an annual shareholders' meeting in 2009, and it has
20  not set a date for an annual meeting of shareholders in 2010. WaMu did not hold an annual
21  meeting within 15 months after its last annual meeting.

22  /// 
23  /// 
24  /// 
25  /// 
26  /// 

DECLARATION OF ANDREW SOLE IN SUPPORT OF
MOTION FOR ORDER TO COMPEL SHAREHOLDERS'
MEETING - 2
PDX/121991/175276/CJF/5704844.2

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
US Bank Centre
1420 5th Ave., Suite 3010
Seattle, WA 98101
Telephone 206.622.1711 Fax 206.292.0460

**Exhibit 10**
**10-109**

///

10. WaMu has not taken any action by written consent to elect WaMu directors in lieu of an annual meeting.

I declare under penalty of perjury under the laws of the state of Washington, that the above and foregoing is true and accurate.

EXECUTED this ___4___ day of May, 2010, at Los Angeles, California.

Andrew Sole

DECLARATION OF ANDREW SOLE IN SUPPORT OF
MOTION FOR ORDER TO COMPEL SHAREHOLDERS'
MEETING - 3

PDX/121991/175276/CJF/5704844.2

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
US Bank Centre
1420 5th Ave., Suite 3010
Seattle, WA 98101
Telephone 206.622.1711 Fax 206.292.0460

Exhibit 10
10-110

# Exhibit 11

Exhibit 11
11-111

1

2
☐ EXPEDITE
☐ No hearing set

3
☒ Hearing is set:
    Date: June 11, 2010

4
    Time: 9:00 A.M.
    Judge McPhee/Civil

5

6

7             IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

8                      FOR THE COUNTY OF THURSTON

9   MICHAEL WILLINGHAM and ESOPUS
    CREEK VALUE LP,
10                                              No. 10-2-00854-1
                Plaintiffs,
11                                              MOTION FOR ORDER TO COMPEL
        vs.                                     SHAREHOLDERS' MEETING
12
    WASHINGTON MUTUAL, INC., a
13  Washington corporation,

14              Defendant.

15          I.    **INTRODUCTION AND RELIEF REQUESTED**

16      Plaintiffs move the Court for an order to compel a shareholders' meeting pursuant to

17  RCW 23B.07.030. Plaintiffs are shareholders of WaMu and are entitled to ask this Court to

18  compel a shareholders' meeting pursuant to statute.

19      All elements of the statute are met. Defendant Washington Mutual, Inc. ("WaMu"),

20  should be ordered to hold a shareholders' meeting as set forth in the attached proposed order.

21          II.    **FACTS**

22      Michael Willingham is the beneficial owner of approximately 1,030,000 shares of

23  common stock in WaMu.[1] Esopus is a limited partnership.[2] It is the beneficial owner of the

24  _____
    [1] Declaration of Michael Willingham in Support of Motion for Order to Compel
25  Shareholders' Meeting ("Willingham Decl.") at ¶ 2.
    [2] Declaration of Andrew Sole in Support of Motion for Order to Compel Shareholders'
26  Meeting ("Sole Decl.") at ¶ 2.

MOTION FOR ORDER TO COMPEL SHAREHOLDERS'
MEETING - 1

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
US Bank Centre
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone 206.622.1711 Fax 206.292.0460

**Exhibit 11**
**11-112**

PDX/121991/175276/CJF/5704513.2

1 following equity securities of WaMu: approximately 100,000 shares of common stock and

2 approximately 15,000 shares of preferred stock.[3] As shareholders of WaMu, Esopus and

3 Michael Willingham are entitled to vote in the election of directors of WaMu at an annual

4 meeting.[4]

5     WaMu is a corporation organized and existing under the laws of the State of

6 Washington.[5] WaMu's registered office is in Thurston County, Washington.[6] WaMu is a

7 savings bank holding company and the owner of Washington Mutual Bank, which was the

8 largest savings and loan association in the United States of America.[7]

9     On September 25, 2008, the United States Office of Thrift Supervision ("OTS")

10 seized Washington Mutual Bank from WaMu and placed it into the receivership of the

11 Federal Deposit Insurance Corporation ("FDIC").[8] The FDIC sold the banking subsidiaries

12 (minus unsecured debt or equity claim) to JP Morgan Chase for $1.9 billion.[9] The holding

13 company, Defendant Washington Mutual, Inc., was left with $33 billion assets, and $8

14 billion debt after being stripped of its banking subsidiary by the FDIC.[10] The next day,

15 September 26, 2008, Defendant filed for Chapter 11 voluntary bankruptcy in Delaware.[11]

16     WaMu's fiscal year is the same as the calendar year.[12] WaMu's last annual

17 shareholder meeting was held on April 15, 2008.[13] WaMu has not held an annual

18 ───────────────

[3] *Id.*

19 [4] Sole Decl. at ¶ 3; Willingham Decl. at ¶ 2.

20 [5] Sole Decl. at ¶ 4.

21 [6] *Id.*

[7] *Id.*

22 [8] *Id.* at ¶ 5.

23 [9] *Id.*

[10] *Id.*

24 [11] *Id.* at ¶ 6.

25 [12] *See id.* at ¶ 7.

26 [13] *Id.*

MOTION FOR ORDER TO COMPEL SHAREHOLDERS'
MEETING - 2

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
US Bank Centre
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone 206.622.1711 Fax 206.292.0460

**Exhibit 11**
**11-113**

PDX/121991/175276/CJF/5704513.2

1  shareholders' meeting since April 15, 2008.[14] An annual WaMu shareholders' meeting was

2  not held within the earlier of six months after the end of WaMu's 2008 fiscal year or fifteen

3  months after its last annual meeting or approval of corporate action by shareholder consent in

4  lieu of such a meeting ("the Statutory Period").[15]

5      WaMu has not set a date for an annual meeting of shareholders in 2010.[16] WaMu has

6  not held an annual meeting within the Statutory Period.[17] WaMu has not taken any action by

7  written consent to elect WaMu directors in lieu of an annual meeting.[18]

8      On Wednesday, April 21, 2010, the Honorable Mary F. Walrath ruled that the

9  automatic bankruptcy stay is inapplicable and does not affect an action by any one or more

10  shareholders to compel a shareholders' meeting. Plaintiffs timely initiated this lawsuit and

11  filed this motion.

### III.  EVIDENCE RELIED UPON

13  1.    Declaration of Andrew Sole.

14  2.    Declaration of Michael Willingham, with attached exhibit.

15  3.    Court records and files therein.

### IV.  ISSUE PRESENTED

17      Washington statute expressly provides that the superior court may, after notice to the

18  corporation, summarily order a shareholders' meeting when an annual shareholders' meeting

19  was not held within the earlier of six months after the end of the corporation's fiscal year or

20  fifteen months after its last annual meeting or approval of corporate action by shareholder

21  consent in lieu of such a meeting.[19] No such annual meeting has been held. Defendant has

---

22  [14] *Id.* A special meeting was held on June 24, 2008. *Id.*

23  [15] *See id.* at ¶ 8.

24  [16] *Id.* at ¶ 9.

     [17] *See id.*

25  [18] *Id.* at ¶ 10.

26  [19] *See* RCW 23B.07.030.

MOTION FOR ORDER TO COMPEL SHAREHOLDERS'
MEETING - 3

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
US Bank Centre
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone 206.622.1711 Fax 206.292.0460

**Exhibit 11**
**11-114**

1   been provided notice. Plaintiffs timely initiated this action and filed this motion. Should this

2   Court compel a shareholders' meeting as set forth in the attached proposed order? <u>Yes</u>.

3             **V.    ARGUMENT AND AUTHORITY**

4      A.   <u>**The Court should compel a shareholders' meeting to elect a Board**</u>

5         <u>**of Directors, because there has been no shareholders' meeting for**</u>
        <u>**almost two years and shareholders' meetings must be conducted.**</u>

6       The ability of shareholders to elect a board of directors at an annual shareholders'

7   meeting is fundamental to all concepts of good corporate governance.[20] The WaMu

8   shareholders should not be denied their basic rights of democratic corporate governance.

9   Shareholder rights are exercised through annual shareholder meetings and the election of a

10   board of directors. WaMu has not held an annual shareholders' meeting since April 15, 2008.

11   Under Washington statute, this Court should compel a shareholders' meeting on a date

12   certain and as set forth in the attached proposed order.

13       Washington law provides that the superior court of the county of a corporation's

14   registered office may, after notice to the corporation, "summarily order a meeting to be

15   held[.]"[21] This may be done on application of a shareholder who is entitled to vote in the

16   annual election of directors at an annual meeting,

17         if an annual meeting was not held within the earlier of six months after the
         end of the corporation's fiscal year or fifteen months after its last annual

18         meeting or approval of corporate action by shareholder consent in lieu of such

19         a meeting[.][22]

20   After notice to the corporation,[23] the superior court may:

---

21   [20] *See generally Washington State Labor Council v. Federated American Ins. Co.*, 78 Wn.2d

22   263, 271, 474 P.2d 98 (1970); *State ex rel. Lidral v. Superior Court for King County*, 198
  Wash. 610, 89 P.2d 501 (1939); *cf.* 5 WILLIAM MEADE FLETCHER, ET AL., FLETCHER

23   CYCLOPEDIA OF THE LAW OF CORPORATIONS § 2025 (perm. ed., rev. vol. 2010)
  (characterizing the right of a qualified shareholder to vote for directors who are to manage

24   corporate affairs as, *inter alia*, "one of the most important rights incident to stock
  ownership").

25   [21] RCW 23B.07.030(1).

  [22] RCW 23B.07.030(1)(a).

26   [23] The statute does not set a specific notice period, reinforcing the expedient nature of the

MOTION FOR ORDER TO COMPEL SHAREHOLDERS'
MEETING - 4

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
US Bank Centre
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone 206.622.1711 Fax 206.292.0460

**Exhibit 11**
**11-115**

fix the time and place of the meeting, determine the shares and shareholders entitled to participate in the meeting, specify a record date for determining shareholders entitled to notice of and to vote at the meeting, prescribe the manner, form, and content of the meeting notice, fix the quorum required for specific matters to be considered at the meeting, or direct that the votes represented at the meeting constitute a quorum for approval of those matters, and enter other orders necessary to accomplish the purpose or purposes of the meeting.[24]

WaMu's fiscal year is the same as the calendar year.[25] WaMu's last annual shareholder meeting was held on April 15, 2008.[26] WaMu has not held an annual shareholders' meeting to elect directors since that date.[27] An annual WaMu shareholders' meeting was not held within the Statutory Period.[28] WaMu did not conduct an annual shareholders' meeting in fiscal year 2009.[29] WaMu has not set a date for an annual meeting of shareholders in 2010.[30] WaMu did not hold an annual meeting within 15 months after its last annual meeting.[31] WaMu has not taken any action by written consent to elect WaMu directors in lieu of an annual meeting.[32]

The Washington Business Corporation Act mandates that all Washington corporations "hold a meeting of shareholders annually for the election of directors at a time stated in or fixed in accordance with the bylaws."[33] WaMu has not done this for over two

---

action.

[24] RCW 23B.07.030(2).

[25] Sole Decl. at ¶ 7.

[26] *Id.*

[27] *Id.*

[28] *See id.* at ¶ 8.

[29] *Id.* at ¶ 9.

[30] *Id.*

[31] *Id.*

[32] *Id.* at ¶ 10.

[33] RCW 23B.07.010(1). There are narrow exceptions for investment companies and consents in lieu of meetings, neither of which applies in this case. *See* RCW 23B.07.010(2), (5).

MOTION FOR ORDER TO COMPEL SHAREHOLDERS'
MEETING - 5

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
US Bank Centre
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone 206.622.1711 Fax 206.292.0460

Exhibit 11
11-116

1   years. When a board of directors fails to hold an annual shareholders' meeting, Washington

2   statute provides a remedy.[34] The statute permits a shareholder to seek an order that the

3   meeting be held. This is so that shareholders are not deprived of the basic right to elect

4   directors at an annual shareholders' meeting. The shareholders are entitled to vote on a board

5   of directors. This Court should uphold those fundamental rights of democratic corporate

6   governance and compel a shareholders' meeting, with the provisions set forth in the attached

7   order.

8   **B.**    **An order should issue promptly, compelling a shareholders' meeting.**

9

10      The right to hold a shareholders' meeting is expressly protected by Washington

statute.[35] For several decades, Washington policy has strongly favored and defended the right

11

12   of shareholders to vote: "The right of a qualified shareholder in a corporation to vote, either

13   personally or by proxy, for the directors who are to manage the corporate affairs is a valuable

and vested property right."[36] The right to participate in the election of the governing board of

14

15   a corporation is one of the most important rights incident to stock ownership.[37] Commentary

is in accord: "The right to participate in the election of a board is one of the most important

16

17   rights incident to stock ownership, and courts will try not to deprive shareholders of this

fundamental right."[38]

18

19      This right is also given preeminence in Delaware.[39] The shareholders' right "to be

20   [34] *See* RCW 23B.07.030.

21   [35] *See* RCW 23B.07.030.

22   [36] *Washington State Labor Council v. Federated American Ins. Co.*, 78 Wn.2d 263, 271, 474 P.2d 98 (1970).

23   [37] *See id.; see also State ex rel. Lidral v. Superior Court for King County*, 198 Wash. 610, 89 P.2d 501 (1939).

24   [38] STEWARD M. LANDEFELD, BARRY M. KAPLAN & STEPHEN M. GRAHAM, WASHINGTON

25   CORPORATION LAW & PRACTICE § 6.10 (Supp. 1999) (citing *State ex rel. Lidral v. Superior Court for King County*, 198 Wash. 610, 89 P.2d 501 (1939)).

26   [39] *See, e.g., In RE Marvel Entertainment Group, Inc.*, 209 B.R. 832, 838 (D. Del. 1997) (holding, *inter alia*, that "It is well settled that the right of shareholders to compel a

MOTION FOR ORDER TO COMPEL SHAREHOLDERS'
MEETING - 6

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
US Bank Centre
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone 206.622.1711 Fax 206.292.0460

**Exhibit 11**
**11-117**

PDX/121991/175276/CJF/5704513.2

1 represented by directors of their choice and thus to control corporate policy is paramount."[40]

2 Shareholders "should have the right to be adequately represented in the conduct of a debtor's

3 affairs, particularly in such an important matter as the reorganization of the debtor."[41] In

4 interpreting Delaware's statute, Delaware courts have held that, "a stockholder's right to

5 have a meeting convened to elect directors is 'virtually absolute.'"[42]

6 Once a shareholder makes out a prima facie case that he or she is entitled to a

7 shareholders' meeting, courts have rarely declined to convene a shareholders' meeting, or

8 refused to require a meeting to be held as scheduled.[43] "[G]iven the importance of an annual

9 meeting of stockholders in the administration of corporate affairs, 'prompt' relief is

10 essential."[44] So long as the shareholders' meeting is not sought for a purpose that is unlawful

11 or against public policy, the court should "jealously protect[] the right of a stockholder to

12 seek an order compelling an annual stockholder meeting" when he or she has met the

13 statutory requirements.[45]

14 Even if a shareholders' meeting could potentially have an adverse effect upon a

15

16 shareholders' meeting for the purpose of electing a new board of directors subsists during reorganization proceedings" and citing *In RE Johns-Manville Corp.*, 801 F.2d 60, 64 (2d Cir.

17 1986)).

18 [40] *In RE Marvel Entertainment Group, Inc.*, 209 B.R. at 838 (quoting *In RE Potter Instrument Co., Inc.*, 593 F.2d 470, 475 (2d Cir. 1979) (quoting *In RE J.P. Linahan, Inc.*, 111

19 F.2d 590, 592 (2d Cir. 1940))).

20 [41] *In RE Marvel Entertainment Group, Inc.*, 209 B.R. at 838 (quoting *In RE Johns-Manville*, 801 F.2d at 65 (quoting *In RE Bush Terminal Co.*, 78 F.2d 662, 664 (2nd Cir. 1935))).

21 [42] *Saxon Industries, Inc. v. NKFW Partners*, 488 A.2d 1298, 1301 (Del. 1984) (citing *Coaxial Communications, Inc. v. CNA Financial Corp.*, 367 A.2d 994 (Del. 1976); *Prickett*

22 *v. American Steel and Pump Corp.*, 251 A.2d 576 (Del. 1969)); *see also Speiser v. Baker*, 525 A.2d 1001, 1005–06 (Del. 1987); *Opportunity Partners, L.P. v. Transtech Serv.*

23 *Partners, Inc.*, __ A.2d __, 2009 Del. Ch. LEXIS 49 at *11 (Del. Ch. Apr. 14, 2009).

24 [43] *See id; Coaxial*, 367 A.2d at 998; *Savin Business Machines Corp. v. Rapifax Corp.*, 375 A.2d 469 (Del. 1977).

25 [44] *Coaxial*, 367 A.2d at 998.

26 [45] *Opportunity Partners, L.P. v. Transtech Serv. Partners, Inc.*, __ A.2d __, 2009 Del. Ch. LEXIS 49 at *11 (Del. Ch. Apr. 14, 2009); *Speiser v. Baker*, 525 A.2d at 1005.

MOTION FOR ORDER TO COMPEL SHAREHOLDERS' MEETING - 7

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
US Bank Centre
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone 206.622.1711 Fax 206.292.0460

**Exhibit 11**
**11-118**

PDX/121991/175276/CJF/5704513.2

1 reorganization plan or if the future financial condition of the corporation is uncertain, that
2 will not outweigh a shareholder's right to compel a shareholders' meeting.[46] For example, in
3 *Saxon*, a corporation filed for Chapter 11 reorganization and subsequently elected new
4 directors, without a shareholders' meeting.[47] After more than 31 months had elapsed since
5 the last annual shareholders' meeting, shareholders sued to compel an annual meeting.[48] The
6 corporation argued that a shareholders' meeting might adversely affect the corporation's
7 Chapter 11 reorganization plan, and that bankruptcy court was a more appropriate forum for
8 considering the competing demands of shareholders and creditors.[49] The Delaware Supreme
9 Court rejected those arguments and ordered a shareholders' meeting, explaining:

> Certainly an appropriate balance must be struck between the Bankruptcy Code
> and our General Corporation Law. But given the strong Delaware policy
> behind the free exercise of a stockholder's right to elect directors, and the
> absence of that focus in the pending bankruptcy proceedings, the scales
> necessarily tip in favor of the former. Moreover, we must conclude that the
> alleged harm portrayed by Saxon on this record is too ethereal to constitute an
> adequate affirmative defense to a section 211 action.[50]

In this case, the bankruptcy court has already ruled that this particular action may go
forward, notwithstanding the WaMu bankruptcy proceedings. The Honorable Mary F.
Walrath ruled in open court as follows:

> I think that it is clear, not only under *Marvel* but under *Johns-Manville* itself,
> that the automatic stay does not bar shareholders from exercising their
> corporate governance rights. It just is not at all encompassed by 362. It's well
> settled law that the rights of shareholders to compel a shareholders meeting
> for purposes of electing a new board continues, notwithstanding bankruptcy.
> And that's a quote from *Johns-Manville*.[51]

---

[46] *Saxon*, 488 A.2d at 1302–03.

[47] *Id.* at 1300.

[48] *Id.*

[49] *Id.*

[50] *Id.* at 1301–02.

[51] Willingham Decl., Exh. A (Transcript of Hearing on April 21, 2010) at 64:20–65:2.

MOTION FOR ORDER TO COMPEL SHAREHOLDERS'
MEETING - 8

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
US Bank Centre
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone 206.622.1711 Fax 206.292.0460

**Exhibit 11**
**11-119**

1  WaMu attempted to argue that such an action was improper, but Judge Walrath expressly

2  held that WaMu failed to make such a showing of clear abuse, stating as follows:

3      In order to enjoin shareholders from doing that[,] the courts look to whether
        there's clear abuse. There is none shown on the record before me. There's not
4      even a motion to enjoin the shareholders. Before the debtor files any motion
        to enjoin and makes me have a hearing, I think it's clear from the case law
5      that you need more than just the fact that the shareholders disagree with what
6      the debtor may have done.

7      ….

8      The courts have also said the mere desire to get more bargaining power in the
9      bankruptcy reorganization is not clear abuse. Not enough that they want to
        elect board members who have a different opinion as to how the bankruptcy
10     case should proceed. I just don't see any basis to find clear abuse here or any
        basis to stop the shareholders from exercising their state law rights.[52]
11
12  This is a simple case. Plaintiffs merely seek a shareholders' meeting to exercise their

    fundamental and vested right to elect a new board of directors. This right should not be
13
    ignored by WaMu any longer. The Court should compel a shareholders' meeting.
14

15              VI.    **CONCLUSION**

16      Washington statute and extrajurisidictional authorities demonstrate that shareholders

    must be given the ability to exercise their right to elect directors at shareholders' meetings.
17
    The elements of the statute are plainly satisfied, and this Court should compel a
18
    shareholders' meeting.
19
        The shareholders are entitled to elect a board of directors and be adequately
20
    represented during the reorganization of WaMu. The Court should grant Plaintiffs' motion
21
    and compel a shareholders' meeting. A proposed order is attached.
22

23

24

25

26  [52] *Id.* at 65:3–24.

MOTION FOR ORDER TO COMPEL SHAREHOLDERS'
MEETING - 9

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
US Bank Centre
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone 206.622.1711 Fax 206.292.0460

**Exhibit 11**

**11-120**

Dated this 5th day of May, 2010.

SCHWABE, WILLIAMSON & WYATT, P.C.

By: _____
Ben Markovich, WSBA #13580
Colin Folawn, WSBA #34211
Attorneys for Plaintiffs

MOTION FOR ORDER TO COMPEL SHAREHOLDERS'
MEETING - 10

PDX/121991/175276/CJF/5704513.2

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
US Bank Centre
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone 206.622.1711 Fax 206.292.0460

**Exhibit 11**
**11-121**

# Exhibit 12

Exhibit 12
12-122

1
2
3
4
5
6
7
8
9
10
11
12
13

14 UNITED STATES BANKRUPTCY COURT
15 WESTERN DISTRICT OF WASHINGTON
16 AT TACOMA
17
18
19 In re
20
21 WASHINGTON MUTUAL, INC.,
22
23 Debtor.
24
25
26 ESOPUS CREEK VALUE LP and
27 MICHAEL WILLINGHAM
28
29 Plaintiffs,
30
31 vs.
32
33 WASHINGTON MUTUAL, INC.,
34
35 Defendant.
36
37
38
39 Pursuant to 28 U.S.C. §§ 1452(a) and 1334(b), Rule 9027 of the Federal Rules of
40
41 Bankruptcy Procedure, Rule 101(e) of the Local Civil Rules of the U.S. District Court for
42
43 the Western District of Washington (the "District Court"), and Local Bankruptcy Rule 9027-
44
45 1 of the U.S. Bankruptcy Court for the Western District of Washington (the "Bankruptcy
46
47 Court"), and without waiving any and all applicable defenses at law and in equity to the

Case No. 08-12229-MFW
District of Delaware

Chapter 11

Adversary No. _____

**NOTICE OF REMOVAL**

NOTICE OF REMOVAL – 1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

53000-0005/LEGAL18307356.1

Exhibit 12
12-123

claim asserted in the Washington State Action (as defined below), defendant Washington Mutual, Inc. ("WMI") hereby gives notice that it has removed the Washington State Action from the Superior Court of the State of Washington, for the County of Thurston, to the District Court, and, by reference and local rules, from the District Court to the Bankruptcy Court.[1] This notice is supported by the Declaration of William C. Rava ("Rava Decl.") and exhibits attached thereto. In support thereof, WMI states as follows:

1. On September 26, 2008, WMI and WMI Investment Corp. (collectively, "Debtors") each filed cases under title 11 of chapter 11 of the U.S. Code in the U.S. Bankruptcy Court for the District of Delaware (the "Delaware Bankruptcy Court") (Chapter 11 Case No. 08-12229, Jointly Administered (Walrath, J.)).

2. On March 26, 2010, Debtors filed a proposed joint plan of reorganization (the "Plan"). The Plan's confirmation hearing is scheduled for July 20, 2010. A key component of the Plan is the proposed global settlement (the "Settlement") of Debtors' multi-billion dollar claims against, *inter alia*, JPMorgan Chase, N.A. ("JPMC") and the Federal Deposit Insurance Corp. ("FDIC"), arising from the sale of assets pursuant to that certain Purchase and Assumption Agreement, Whole Bank, dated as of September 25, 2008. the provisions of the Settlement have been agreed to by WMI, JPMC and significant creditor groups of WMI, as of this date, the FDIC has some remaining concerns. However, discussions among the parties are ongoing, and they are hopeful that such agreement will be obtained in the near future.

3. On March 3, 2010, the Official Committee of WMI Equity Security Holders (the "Equity Committee") filed an adversary proceeding (the "Adversary Proceeding")

---

[1] At the same time as the filing of this Notice of Removal, WMI is separately moving under 28 U.S.C. § 1412 to transfer the Washington State Action from this Court to the U.S. District Court for the District of Delaware.

NOTICE OF REMOVAL – 2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

53000-0005/LEGAL18307356.1

**Exhibit 12**
**12-124**

(Adversary Proceeding Case No. 10-50731 (Walrath, J.)) in the Delaware Bankruptcy Court seeking an order under Revised Code of Washington (the "RCW") 23B.07.030 and 23B.01.010 compelling WMI to expend substantial estate resources to immediately convene and hold an annual WMI shareholders' meeting for the nomination and election of WMI's board of directors. The Equity Committee's adversary complaint alleges that the Adversary Proceeding constitutes a "core" proceeding within the meaning of 28 U.S.C. § 157(b). Rava Decl., Ex. A, ¶ 3. The Equity Committee's stated purpose in filing the Adversary Proceeding is to replace WMI's current board of directors with a slate of directors that will oppose the Plan and Settlement, under which WMI's shareholders will not receive economic distributions.

4.      On March 11, 2010, the Equity Committee filed a motion for summary judgment under Federal Rule of Bankruptcy Procedure 7056 or, in the alternative, for relief from the automatic stay. Rava Decl., Ex. B.

5.      On April 7, 2010, WMI opposed the Equity Committee's summary judgment motion, Rava Decl., Ex. C; answered the Equity Committee's adversary complaint and asserted a counterclaim for relief under 11 U.S.C. § 105(a), alleging, *inter alia*, that because WMI was insolvent and the Equity Committee's attempt to force WMI to convene and hold an annual WMI shareholders' meeting constitutes "clear abuse," the Delaware Bankruptcy Court should "stay" the Adversary Proceeding "and/or otherwise bar the Equity Committee from seeking relief in Washington state court, or any other forum, in order to compel a WMI shareholders meeting." Rava Decl., Ex. D ¶ 31.

6.      On April 26, 2010, after finding that it had jurisdiction over the Adversary Proceeding under 28 U.S.C. §§ 157 and 1334 and that the Adversary Proceeding constituted a "core" proceeding within the meaning of 28 U.S.C. § 157(b)(2), the Delaware Bankruptcy

NOTICE OF REMOVAL – 3

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Court found the automatic stay "inapplicable to an action by any one or more shareholders of WMI . . . seeking to compel WMI to hold an annual shareholders meeting. . . ." Rava Decl., Ex. E ¶ 1. The Delaware Bankruptcy Court made clear, however, that the "foregoing is without prejudice to the rights of WMI to contest the relief requested in any such action in any such court" and that the "relief granted herein does not affect, nor is it intended to affect, the rights of WMI with respect to the Counterclaim. . . ." *Id.* ¶ 2. Thus, the Counterclaim is still pending in the Delaware Bankruptcy Court.

7.     On April 26, 2010, plaintiffs Esopus Creek Value LP and Michael Willingham (collectively, "Plaintiffs") sued WMI in the Superior Court of the State of Washington, for the County of Thurston (Case No. 10-2-00854-1) (the "Washington State Action"), asserting the same claim seeking the same relief as the Equity Committee in the Adversary Proceeding. Rava Decl., Ex. F. On May 4, 2010, Plaintiffs amended this complaint, asserting the same claim seeking the same relief against the same defendant as in the original complaint. Rava Decl., Ex. G.

8.     On May 5, 2010, Plaintiffs moved to compel the holding of a WMI annual shareholders' meeting. Rava Decl., Ex. H.

9.     28 U.S.C. § 1452(a) permits removal of "any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if [the] district court has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. § 1452(a). Under 28 U.S.C. § 1334(b), district courts have original (but not exclusive) jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." *Id.* § 1334(b).

10.     The Washington State Action is "related to" WMI's chapter 11 case and constitutes a "core" proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A). The

NOTICE OF REMOVAL – 4

**Perkins Coie** LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

outcome of the Washington State Action could alter WMI's assets and liabilities. If WMI were ordered to convene and hold an annual shareholders' meeting, it would be responsible for paying the substantial costs of such a meeting and of waging a proxy contest against the Equity Committee for the election of directors who will continue to support the Plan and Settlement. Further, if the Equity Committee succeeds in its stated purpose of replacing WMI's current board of directors, the administration of WMI's estate – and, indeed, WMI's reorganization – will be substantially affected: a change in control of WMI could "torpedo" the Plan and Settlement and thus the likelihood of WMI's emerging from chapter 11. Thus, under § 1334(b), this Court has original jurisdiction over the claim asserted in the Washington State Action.

11.     The District Court is the appropriate court for removal of a civil action from the Superior Court of the State of Washington, for the County of Thurston. *See* Fed. R. Bankr. P. 9027(a)(1). Thurston County, in which the Washington State Action was filed, is located within the jurisdiction of this Court. Pursuant to District Court General Rule 7 and Local Civil Rule 101(e), this action is hereby filed in the Bankruptcy Court.

12.     Because WMI first received Plaintiffs' complaint in the Washington State Action on April 26, 2010, this Notice of Removal is timely. *See id.* 9027(a)(3).

13.     Thus, because this Court has original jurisdiction over the Washington State Action and this case is not a civil proceeding in the U.S. Tax Court or a civil action to enforce a governmental unit's police or regulatory power, § 1452(a) and Rule 9027 authorize removal of the Washington State Action to this Court. *See* 28 U.S.C. § 1452(a); Fed. R. Bankr. P. 9027(a).

14.     A copy of Plaintiff's First Amended Complaint to Compel Shareholders' Meeting, filed May 4, 2010, is attached hereto as Exhibit A. Copies of all process and

NOTICE OF REMOVAL – 5

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

53000-0005/LEGAL18307356.1

**Exhibit 12
12-127**

pleadings filed in the Washington State Action and the state court docket sheet are attached to the Report of State Court Proceedings, to be filed herein. Further, in accordance with Bankruptcy Rules 9027(b) and 9027(c), WMI will serve a copy of this Notice of Removal on all parties to the Washington State Action and will file a copy of this Notice of Removal with the clerk for the Superior Court of the State of Washington, for the County of Thurston.

WHEREFORE WMI removes the action in its entirety now pending in the Superior Court of the State of Washington, for the County of Thurston, styled *Esopus Creek Value LP and Michael Willingham v. Washington Mutual, Inc.* (Case No. 10-2-00854-1), to the District Court and, by reference and local rules, from the District Court to the Bankruptcy Court.

DATED: May 13, 2010

**PERKINS COIE** LLP

By: /s/ John S. Kaplan
    John S. Kaplan, WSBA No. 23788
    JKaplan@perkinscoie.com
    William C. Rava, WSBA No. 29948
    WRava@perkinscoie.com
    David J. Burman, WSBA No. 10611
    DBurman@perkinscoie.com
    Penny Fields, WSBA No. 36024
    PFields@perkinscoie.com
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000

Attorneys for Washington Mutual, Inc.

**Perkins Coie** LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Exhibit 12**
**12-128**

# Exhibit A

**Exhibit 12**
**12-129**

```
 1
 2  ☐ EXPEDITE
 3  ✓ No hearing set
    ☐ Hearing is set:
 4     Date:
       Time.
 5     Judge McPhee/Civil
 6
```

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

FOR THE COUNTY OF THURSTON

| | |
|---|---|
| MICHAEL WILLINGHAM and ESOPUS CREEK VALUE LP, | No. 10-2-00854-1 |
| Plaintiffs, | FIRST AMENDED COMPLAINT TO COMPEL SHAREHOLDERS' MEETING |
| vs. | |
| WASHINGTON MUTUAL, INC., a Washington corporation, | |
| Defendant. | |

Plaintiffs Michael Willingham and Esopus Creek Value LP ("Plaintiffs"), shareholders of defendant Washington Mutual, Inc. ("Defendant" or "WaMu"), bring this action pursuant to RCW 23B.07.030 to compel a WaMu shareholders' meeting.

## I.    NATURE OF ACTION

1.    This action is brought as a result of Defendant's failure, for more than two years, to convene its annual shareholders' meeting.

2.    During the last two years, defendant, a publicly traded Washington corporation, also has failed to submit certain annual, quarterly, and other periodic reports, including financial statements, required to be filed with the U.S. Securities and Exchange Commission ("SEC").

3.    By failing to hold an annual shareholders' meeting, Defendant has deprived Plaintiffs and other shareholders from nominating and voting for WaMu directors.

FIRST AMENDED COMPLAINT TO COMPEL
SHAREHOLDERS' MEETING - 1

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
US Bank Centre
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone 206.622.1711 Fax 206.292.0460

1    4.    Plaintiffs seek an order pursuant to RCW 23B.070.030(1)(a), summarily
2    compelling Defendant to hold the required shareholders' meeting on a date certain, to be
3    fixed by the Court, in accordance with Washington law, and to issue additional orders
4    pursuant to RCW 23B.070.030(2).

5                            II.    **PARTIES**

6    5.    Michael Willingham is an individual who resides in Pittsburg, Texas.

7    6.    Michael Willingham is the beneficial owner of approximately 1,030,000
8    shares of common stock in WaMu.

9    7.    Michael Willingham is a shareholder of WaMu.

10   8.    Michael Willingham is entitled to vote in the election of directors of WaMu at
11   an annual meeting.

12   9.    Esopus Creek Value LP ("Esopus") is a limited partnership organized and
13   existing under the laws of the State of Delaware.

14   10.   Esopus maintains its principal place of business at 150 JFK Parkway, Suite
15   100, Short Hills, New Jersey 07078.

16   11.   Esopus is the beneficial owner of the following equity securities of WaMu:
17   approximately 100,000 shares of common stock and approximately 15,000 shares of
18   preferred stock.

19   12.   Esopus is a shareholder of WaMu.

20   13.   Esopus is entitled to vote in the election of directors of WaMu at an annual
21   meeting.

22   14.   WaMu's fiscal year is the same as the calendar year and ends on December
23   31.

24   15.   WaMu's last annual shareholder meeting was held on or about April 15, 2008.

25   16.   WaMu is a corporation organized and existing under the laws of the State of
26   Washington.

FIRST AMENDED COMPLAINT TO COMPEL
SHAREHOLDERS' MEETING - 2

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
US Bank Centre
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone 206.622.1711 Fax 206.292.0460

**Exhibit 12**
**12-131**

1       17.     WaMu maintains its registered office in Thurston County, Washington.

2       18.     WaMu's registered agent for service of process in Washington is Corporation

3 Service Company, 300 Deschutes Way SW, Suite 304, Tumwater, Washington 98501.

4       19.     WaMu is a savings bank holding company and the owner of Washington

5 Mutual Bank, which was the largest savings and loan association in the United States of

6 America.

7       20.     On September 25, 2008, the United States Office of Thrift Supervision

8 ("OTS") seized Washington Mutual Bank from WaMu and placed it into the receivership of

9 the Federal Deposit Insurance Corporation ("FDIC").

10      21.     The FDIC sold WaMu's banking subsidiaries (minus unsecured debt or equity

11 claim) to JP Morgan Chase for $1.9 billion.

12      22.     The holding company, WaMu, was left with $33 billion in assets and $8

13 billion in debt after being stripped of its banking subsidiary by the FDIC.

14      23.     On September 26, 2008, Defendant filed for Chapter 11 voluntary bankruptcy

15 in Delaware.

16      24.     On April 21, 2010, the Honorable Mary Walrath held that the automatic

17 bankruptcy stay did not apply to bar shareholders from exercising their corporate governance

18 rights.

19         **III.    VENUE AND JURISDICTION**

20      25.     This court has jurisdiction over this matter pursuant to RCW 23B.07.030 and

21 Washington law.

22      26.     WaMu's registered office is in Thurston County, Washington.

23      27.     Venue is proper in Thurston County.

24         **IV.    CAUSE OF ACTION**

25      28.     Washington statute, at RCW 23B.07.030(1), provides that the superior court

26 of the county in which a corporation's registered office is located may, after notice to the

FIRST AMENDED COMPLAINT TO COMPEL
SHAREHOLDERS' MEETING - 3

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
US Bank Centre
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone 206.622.1711 Fax 206.292.0460

PDX/121991/175276/CJF/5932052.1

**Exhibit 12**
**12-132**

1  corporation, summarily order a meeting to be held: (a) On application of any shareholder of

2  the corporation entitled to vote in the election of directors at an annual meeting, if an annual

3  meeting was not held within the earlier of six months after the end of the corporation's fiscal

4  year or fifteen months after its last annual meeting or approval of corporate action by

5  shareholder consent in lieu of such a meeting; or (b) On application of a shareholder who

6  executed a demand for a special meeting valid under RCW 23B.07.020, if: (i) Notice of the

7  special meeting was not given within thirty days after the date the demand was delivered to

8  the corporation's secretary; or (ii) The special meeting was not held in accordance with the

9  notice.

10  29.  Plaintiffs are shareholders of WaMu, and Plaintiffs are entitled to vote in the

11  election of directors of WaMu at an annual meeting.

12  30.  WaMu's registered office is in Thurston County, Washington.

13  31.  WaMu's fiscal year runs from January 1 to December 31.

14  32.  WaMu has not held an annual shareholders' meeting since April 15, 2008.

15  33.  WaMu held a special shareholders meeting on or about June 24, 2008. The

16  special shareholders meeting was for the purpose of raising capital.

17  34.  An annual WaMu shareholders' meeting was not held within six months after

18  the end of WaMu's 2008 fiscal year.

19  35.  An annual WaMu shareholders' meeting was not held within fifteen months

20  after its last annual meeting or approval of corporate action by shareholder consent in lieu of

21  such a meeting.

22  36.  Washington statute, at RCW 23B.07.030(2), also provides that the court may,

23  after notice to the corporation, fix the time and place of the meeting, determine the shares

24  and shareholders entitled to participate in the meeting, specify a record date for determining

25  shareholders entitled to notice of and to vote at the meeting, prescribe the manner, form, and

26  content of the meeting notice, fix the quorum required for specific matters to be considered at

FIRST AMENDED COMPLAINT TO COMPEL
SHAREHOLDERS' MEETING - 4

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
US Bank Centre
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone 206.622.1711 Fax 206.292.0460

the meeting, or direct that the votes represented at the meeting constitute a quorum for approval of those matters, and enter other orders necessary to accomplish the purpose or purposes of the meeting.

37. WaMu has not set a date for an annual meeting of shareholders in 2010.

38. WaMu did not hold an annual meeting within 15 months after its last annual meeting.

39. WaMu has not taken any action by written consent to elect WaMu directors in lieu of an annual meeting.

40. WaMu should be compelled to schedule and hold an annual shareholders' meeting on a date certain, pursuant to RCW 23B.07.030.

WHEREFORE, Plaintiffs respectfully request that the Court enter an Order:

A. Directing Defendant to promptly convene and hold an annual shareholders' meeting for the nomination and election of directors;

B. Designating the time and place of the annual meeting, as well as the form of notice of the meeting to be delivered to all shareholders by Defendant; and

C. Entering further orders as necessary to accomplish the purposes of the meeting.

Dated this 4th day of May, 2010.

SCHWABE, WILLIAMSON & WYATT, P.C.

By: _____
Bert W. Markovich, WSBA #13580
Colin Folawn, WSBA #34211
Attorneys for Plaintiffs

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
US Bank Centre
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone 206.622.1711 Fax 206.292.0460

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of May, 2010, I caused to be served the foregoing FIRST AMENDED COMPLAINT TO COMPEL SHAREHOLDERS' MEETING on the following parties at the following address:

Tom Boeder
William Rava
PERKINS COIE
1201 Third Avenue, Ste 4800
Seattle, WA 98101
Tel: 206.359.8000
Fax: 206.359.9000
Email: tboeder@perkinscoie.com
Email: wrava@perkinscoie.com

*Counsel for Defendant*

by:

- [ ] U.S. Postal Service, ordinary first class mail
- [ ] U.S. Postal Service, certified or registered mail, return receipt requested
- [x] hand delivery
- [ ] facsimile
- [x] electronic service
- [ ] other (specify) _____

Mary A. Williams

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
US Bank Centre
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone 206.622.1711 Fax 206.292.0460

**Exhibit 12**
**12-135**