# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | x | |
|---|---|---|
| *In re* | : | Chapter 11 |
| WASHINGTON MUTUAL, INC., *et al.*[1] | : | Case No. 08-12229 (MFW) |
| Debtors. | : | Jointly Administered |
| | : | |
| OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS, | : | |
| Plaintiff | : | |
| v. | : | Adv. Pro. No. 10-50731 (MFW) |
| WASHINGTON MUTUAL, INC., | : | |
| | : | **Hearing Date: 8/10/10 at 1:30 p.m. (ET)** |
| Defendant | : | **Obj. Deadline: 8/9/10 at 4:00 p.m. (ET)** |
| | x | |

## MOTION TO COMPEL PRODUCTION OF DOCUMENTS

Pursuant to Rules 26(b), 34 and 37(a) of the Federal Rules of Civil Procedure, as incorporated into this adversary proceeding by Rules 7026, 7034 and 7037 of the Federal Rules of Bankruptcy Procedure, defendant Washington Mutual, Inc. ("WMI") files this motion to compel the Official Committee of Equity Security Holders (the "Equity Committee") to produce documents responsive to *Debtor's First Request for the Production of Documents Directed to the Official Committee of Equity Security Holders of Washington Mutual, Inc.* (the "Document Request"), a copy of which is attached hereto as Exhibit A, and respectfully represents:

---

[1] The Debtors in these Chapter 11 cases and the last four digits of each Debtor's federal tax identification numbers are: (i) Washington Mutual, Inc. (3725) and (ii) WMI Investment Corp. (5395). The Debtors are located at 925 Fourth Avenue, Suite 2500, Seattle, Washington 98104.

## PRELIMINARY STATEMENT

1. The instant adversary proceeding (the "Adversary Proceeding") seeks an order under Washington law compelling WMI to hold an annual shareholders' meeting. In connection with the Adversary Proceeding and WMI's counterclaim under 11 U.S.C. § 105(a), seeking an order staying the Adversary Proceeding and any other proceeding to force WMI to hold such a meeting almost two years into its chapter 11 case, WMI served the Equity Committee with targeted requests for the production of documents and noticed the deposition of each of its members.

2. The Equity Committee has objected to several of these requests. The parties have been able to resolve all but one of these objections: the Equity Committee's objection to WMI's request for the production of documents concerning the Equity Committee's members' financial ability to fund a proxy contest for the election of WMI's board of directors—the purported purpose of the Adversary Proceeding.

3. The Equity Committee's three objections to the production of such documents do not withstand scrutiny.

4. First, the Equity Committee asserts that the production of such documents would be "unduly burdensome." Yet, WMI has agreed to narrow the scope of the relevant document request (Request Number 18). As narrowed, the request would not call for the production of all documents concerning the Equity Committee members' financial resources but, rather, only those documents sufficient to show the members' ability (or lack thereof) to finance a proxy contest. There is no reason to think that it would be unduly burdensome for the Equity Committee to produce such information. In any event, the probative value of such documents far outweighs any purported production burden.

5. Second, the Equity Committee's second objection—that the documents sought are "neither relevant to any claim or defense in this action nor likely to lead to the discovery of admissible evidence"—overlooks that it is blackletter law that WMI is under no legal obligation to finance the Equity Committee's proxy contest. Hence, if WMI were directed to hold an annual shareholders' meeting, the costs of such a contest would fall on the shoulders of the Equity Committee's individual members—not WMI; not WMI's creditors; and not WMI's chapter 11 estate. WMI is entitled to discover whether these members have the resources to pay for such a contest. Otherwise, in the event that the Court renders judgment in favor of the Equity Committee, ordering WMI to hold an annual shareholders' meeting would be both pointless and wasteful.

6. Further, if these members were unable to fund such a contest, the Adversary Proceeding could have only one, improper purpose: to leverage benefits for WMI's out-of-the-money equity holders, even at the expense of the ultimate success of WMI's chapter 11 reorganization. Accordingly, such documents are relevant to WMI's defense that the Adversary Proceeding constitutes "clear abuse of process."

7. Third, the members of the Equity Committee voluntarily agreed to serve on the committee and then chose to file a public action (the Adversary Proceeding) that placed directly at issue their own financial resources. Based upon the relief requested and the fact that their financial wherewithal is a critical component of the instant action, members of the Equity Committee can have no valid expectation of privacy over documents relevant to the prosecution of their own action. In addition, WMI is willing to sign a confidentiality agreement with appropriate protections for the documents at issue. And, in any event, the probative value of these documents trumps any alleged privacy interests.

8.  Accordingly, WMI is entitled to the documents at issue here and seeks an order directing their prompt production, as well as the production of documents responsive to the balance of its document requests, if any. As explained in greater detail below, to date, the Equity Committee has failed to produce a single document. As a result, and despite the fact that the Equity Committee suggests that WMI be unprepared for the depositions that it has noticed, WMI submits that it would be imprudent and waste estate funds to take depositions at this time. Given the pendency of the Equity Committee's summary judgment motion in this case, WMI needs to complete discovery quickly. Hence, unless the Equity Committee is directed promptly to complete its production, WMI will be prejudiced.

## BACKGROUND

9.  On September 26, 2008, WMI and WMI Investment Corp. (collectively, "Debtors") commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code. On October 3, 2008, pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure, this Court entered an order authorizing the joint administration of Debtors' chapter 11 cases.

10. On October 15, 2008, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors and on January 11, 2010, the U.S. Trustee appointed the Equity Committee.

11. On March 26, 2010, Debtors filed the *Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code* and disclosure statement, which have been subsequently amended.

12. On March 3, 2010, the Equity Committee filed the Adversary Proceeding seeking an order under Washington law compelling WMI to hold an annual shareholders' meeting. The

stated purpose of the Adversary Proceeding is to replace WMI's board of directors with directors who will oppose this plan and the proposed compromise and settlement embodied therein.

13. On March 11, 2010, the Equity Committee moved for summary judgment or, alternatively, for an order declaring that the automatic stay under the United States Bankruptcy Codes does not bar any action to force WMI to hold an annual shareholders' meeting.

14. On April 7, 2010, WMI answered the Equity Committee's complaint and opposed the Equity Committee's summary judgment motion. In its opposition, WMI asserted various defenses, including "clear abuse of process" and insolvency of the debtor. (See Opp. Pls. Mot. Summ. J. at 2.)

15. Also, on April 7, 2010, WMI asserted a counterclaim for relief under 11 U.S.C. § 105(a), alleging that the Equity Committee's attempt to force WMI to hold an annual shareholders' meeting constitutes "clear abuse" and thus a stay of the Adversary Proceeding (and any other action to compel WMI to hold an annual shareholders' meeting) is warranted.

16. On April 26, 2010, this Court found that the "automatic stay imposed by operation of section 362 of the Bankruptcy Code is inapplicable to an action by any one or more shareholders of WMI . . . seeking to compel WMI to hold an annual shareholders' meeting," but did not rule on the Equity Committee's motion for summary judgment. (Order ¶ 1 [Docket No. 20].) Similarly, the Court did not address WMI's counterclaim.

17. On June 4, 2010, WMI served the Document Request and notices of depositions on the Equity Committee's members.[2] Responses and objections to the Document Request were

---

[2] Those members are (1) Michael Willingham; (2) Esopus Creek Value LLC; (3) Tyson Matthews; (4) Kenneth I. Feldman; (5) Joyce M. Presnall; (6) Dorthea Barr; and (7) Saul Sutton. The Equity Committee's counsel has informed WMI's counsel that Mr. Matthews and Ms. Presnall have resigned from the Equity Committee. Yet, the Equity Committee has not filed any notice with this Court evidencing their resignations. In any event, issues relating to the Adversary Proceeding took place before their purported resignations and thus WMI intends to continue in its discovery efforts with respect to these persons.

due July 5, 2010. These depositions were noticed to begin the week of July 12, 2010. As of today, no documents have been produced and no depositions have been taken.

18. On July 2, 2010, WMI was served with the Equity Committee's Responses and Objections to Debtor's First Request for the Production of Documents objecting to, inter alia, Request Number 18.

19. In an attempt to resolve the instant dispute, counsel for WMI and the Equity Committee had several "meet and confer" telephone calls and exchanged e-mails. They have narrowed their discovery dispute to one request, Document Request Number 18. After WMI informed the Equity Committee that it would have no choice but to seek relief from this Court, the Equity Committee made one last effort to avoid producing documents regarding its members' financial resources: in exchange for the withdrawal of Request Number 18, the Equity Committee's counsel offered to represent that, were WMI forced to hold an annual shareholders' meeting, the members would not contribute their own financial assets to fund a proxy contest for the election of members of WMI's board of directors.

20. This proposed representation is unsatisfactory. In offering to so represent, the Equity Committee appears to be operating under the assumption that, were such a meeting ordered, WMI would be required to pay for such a contest. Yet, because the law is clear that WMI would be under no obligation to pay for such a contest, should such a meeting be ordered, the Equity Committee's members would have to fund their efforts. WMI, therefore, is entitled to discover whether they, in fact, have the ability to do so.

21. Despite its repeated statements that it seeks to complete as quickly as possible discovery in the instant action, to date, the Equity Committee has failed to produce a single document. On July 15, 2010, the Equity Committee's counsel told WMI's counsel that, before the Equity Committee would produce any documents, WMI would have to agree to a

US_ACTIVE:\43443117\07\79831.0003
RLF1 3592156V.1

6

confidentiality agreement. Yet, the confidentiality agreement that the Equity Committee proposed was merely the May 7, 2010 confidentiality agreement pursuant to which WMI and the Equity Committee exchanged documents in WMI's chapter 11 case, i.e., was not an agreement used in any litigation between WMI and the Equity Committee and, indeed, as applied here, would have prejudiced WMI. (That confidentiality agreement is attached hereto as Exhibit B.) For example, that agreement would have required that, before WMI could use the Equity Committee's document production in any deposition, it first obtain the Equity Committee's written permission or seek leave of court.

22. In any event, this Court's local rules already provide the producing party ample protection for confidential documents. See Del. Bankr. L.R. 9018-1(d) ("If any information or documents are designated confidential by the producing party at the time of production and the parties have not stipulated to a confidentiality agreement, until such an agreement has been agreed to by the parties or ordered by the Court, disclosure shall be limited to members and employees of the law firm representing the receiving party and such other persons as to which the parties agree.").

23. Hence, given the dilatory nature of the Equity Committee's document production—which has not yet even started—WMI seeks an order compelling the Equity Committee promptly to produce documents responsive to Request Number 18 (as narrowed) and otherwise complete its document production.

## ARGUMENT

24. As set forth below, the Equity Committee should be directed promptly to produce documents responsive to Request Number 18 (as narrowed) and otherwise complete its document production.

25. WMI has raised three objections to the production of documents responsive to Request Number 18: (i) the "request is unduly burdensome," (ii) the documents are "neither relevant to any claim or defense in this action not likely to lead to the discovery of admissible evidence," and (iii) "the production of this material is an unjustified invasion of the Equity Committee members' privacy." None of these objections withstands scrutiny.

26. First, WMI is willing to narrow Request Number 18 to encompass only those documents sufficient to show the Equity Committee members' financial resources. There is no reason to believe that production of such documents would be unduly burdensome. The EC's unsubstantiated assertion to the contrary is insufficient to protect such documents from discovery. "The onus is . . . on the party objecting to discovery to state the grounds for the objection 'with specificity.' Mere recitation of the familiar litany that . . . a document production request is 'overly broad, burdensome, oppressive and irrelevant' will not suffice." Momah v. Albert Einstein Med. Ctr., 164 F.R.D. 412, 417 (E.D. Pa. 1996) (quoting Fed. R. Civ. P. 33(b)(4) and Josephs v. Harris Corp., 677 F.2d 985, 992 (3d Cir. 1982)).

27. Second, the documents at issue here are plainly relevant to the claims and defenses in the instant action. "It is well recognized that the federal rules allow broad and liberal discovery." Pacitti v. Macy's, 193 F.3d 766, 777 (3d Cir. 1999). Indeed, Rule 26(b) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any non privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b). "Relevance is construed broadly" Gaul v. Zep Mfg. Co., 2004 WL 231298, at *1 (E.D. Pa. Feb. 5, 2004). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Bankr. P. 26(b)(1).

28. Under well-settled law, in the off-chance that the Adversary Proceeding succeeds, the Equity Committee's members—not WMI—would be required to pay for the preparation and distribution of the Equity Committee's own proxy statement. See 17 C.F.R. § 240.14a-8(i)(8) (corporate management may exclude from its proxy statement a shareholder proposal "[i]f the proposal relates to a nomination or an election for membership on the company's board of directors or analogous governing body or a procedure for such nomination or election"); see also Am. Fed'n of State, County & Mun. Employees v. Am. Intern. Group, Inc., 462 F.3d 121, 125 (2d Cir. 2006) ("Rule 14a-8(i)(8) provides that a corporation may exclude a shareholder proposal if the proposal relates to an election for membership on the company's board of directors") (internal quotations omitted); In re N.Y. Trap Rock Corp., 138 BR. 420, 423 (Bankr. S.D.N.Y. 1992) ("In the event that the Equity Committee succeeds on the merits, and an annual meeting is directed, counsel for the Equity Committee may not be compensated for any services performed beyond the adversary proceeding in connection with the shareholders' meeting. All shareholder costs and expenses with respect to [the debtor's] annual meeting must be borne by the shareholders themselves."); 1791 PLI/Corp 299, "Regulatory Reform and Developments in the Areas of Proxy" (Feb. 17, 2010) ("A shareholder may prepare and distribute its own proxy materials, obtaining a list of shareholders from the issuer . . . all at the shareholders' cost").

29. If these costs, which could total in the millions of dollars, exceed the Equity Committee members' financial resources, it would be futile and, more importantly, waste scarce estate resources that can and should be used for distributions to WMI creditors and, potentially, equity holders, to require WMI to hold an annual shareholders' meeting.

30. Further, if the Equity Committee's members cannot afford to fund a proxy contest, it follows that the Adversary Proceeding can have only one, in terrorem purpose: to leverage benefits for WMI's out-of-the-money equity holders, even at the expense of the ultimate

success of WMI's chapter 11 reorganization. Accordingly, such documents are relevant to WMI's defense that the Adversary Proceeding constitutes "clear abuse of process."

31. <u>Third</u>, each Equity Committee member voluntarily agreed to serve on that committee and subsequently commence the Adversary Proceeding, which has placed squarely at issue his/her financial resources. Having elected to file the instant action, the Equity Committee's members cannot now be heard to complain that their personal financial information, which is germane to this action, should be immune from discovery.

32. Regardless, because WMI is willing to enter into a confidentiality agreement with appropriate protections for such information, the information that WMI seeks will not violate any alleged privacy concerns. <u>See</u> <u>Jones v. Hosp. of Univ. of Penn.</u>, 2004 WL 1166585, at * 3 (E.D. Pa. May 24, 2004) (overruling objection to production of "private medical information": "[a]s to Defendant's concern that the documents might contain private medical information, we will direct the parties to enter into a confidentiality agreement limiting the use of this information to this lawsuit"). And again, the probative value of these documents outweighs any such concerns.

33. Accordingly, WMI seeks an order from this Court compelling the Equity Committee promptly to produce documents responsive to Request Number 18 and otherwise complete its document production.

34. The undersigned counsel certifies that, in an effort to resolve the parties' discovery disputes, WMI's counsel has made a good faith effort to confer with the Equity Committee's counsel and that no resolution of the instant discovery disputes occurred before the filing of this motion.

## **CONCLUSION**

For all the foregoing reasons, WMI requests that this Court enter an order, substantially in the form attached hereto as Exhibit C, directing the Equity Committee promptly to produce all documents responsive to Request Number 18 and otherwise complete its document production.

Dated: July 20, 2010
       Wilmington, Delaware

*/s/ Marcos A. Ramos*
Mark D. Collins (No. 2981)
Marcos A. Ramos (No. 4450)
Chun I. Jang (No. 4790)
Tyler D. Semmelman (No. 5386)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

– and –

Marcia L. Goldstein, Esq.
Brian S. Rosen, Esq.
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

ATTORNEYS FOR WASHINGTON MUTUAL, INC.