# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x
In re                                         : Chapter 11
                                              :
WASHINGTON MUTUAL, INC., et al.               : Case No. 08-12229 (MFW)
                                              :
                    Debtors.                  : Jointly Administered
                                              :
----------------------------------------------:
OFFICIAL COMMITTEE OF EQUITY                  :
SECURITY HOLDERS,                             :
                                              : Adversary Proceeding No. 10-50731
                    Plaintiff,                : (MFW)
                                              :
           - against -                        :
                                              :
WASHINGTON MUTUAL, INC.,                      :
                                              :
                    Defendant.                :
---------------------------------------------------------------- x

### DEBTOR'S FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS DIRECTED TO THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS OF WASHINGTON MUTUAL, INC.

Pursuant to Federal Rules of Bankruptcy Procedure 7026 and 7034 and Federal Rules of Civil Procedure 26 and 34, Washington Mutual, Inc. hereby requests that the Official Committee of Equity Security Holders of Washington Mutual, Inc. produces the documents designated below at the offices of Richards, Layton & Finger, P.A., One Rodney Square, Wilmington, Delaware 19801, on or before 4:00 p.m. on July 5, 2010, or on such other date as may be agreed by the parties.

### DEFINITIONS

1. The term "WMI" means Washington Mutual, Inc.

2. The term "Equity Committee" means the Official Committee of Equity Security Holders of WMI appointed by the United States Trustee in the above-captioned chapter 11 case and includes each and every member of the Equity Committee (including Esopus Creek Value, LLC, Dorthea Barr, Kenneth I. Feldman, Tyson Matthews, Joyce M. Presnall, Saul Sutton, and

1

Michael Willingham), each individual represented by a member of the Equity Committee (if any), and the entity (or entities, as the case may be) that he, she, or it represents on the Equity Committee.

3. The term "Debtors" means WMI and WMI Investment Corp.

4. The term "Court" means the United States Bankruptcy Court for the District of Delaware.

5. The term "Plan" means the Joint Plan of Affiliated Debtors filed by Debtors in the above-captioned chapter 11 case.

6. The term "Agreement" means the settlement agreement by and among, inter alia, Debtors, JPMorgan Chase, N.A., and the Federal Deposit Insurance Corp. announced to the Court on March 12, 2010.

7. The term "Action" means the adversary proceeding filed in the Court on March 3, 2010, by the Equity Committee captioned Official Committee of Equity Security Holders v. Washington Mutual, Inc. (Adversary Proceeding No. 10-50731 (MFW)).

8. The term "Counterclaim" means WMI's counterclaim set forth in WMI's Answer and Counterclaim to Plaintiff's Complaint filed in the Court on April 7, 2010.

9. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) by any means, including but not limited to any meeting, conversation, discussion, conference, correspondence, message, or other written or oral transmission, exchange, or transfer of information in any form between two or more persons, including in person or by telephone, facsimile, telegraph, telex, e-mail, or other medium.

10. The term "document" shall have the broadest meaning permitted by Federal Rule of Bankruptcy Procedure 7034(a) and Federal Rule of Civil Procedure 34(a) and includes,

without limitation, all originals, copies (if the originals are not available), non-identical copies (whether different from the original because of underlining, editing marks, notes made on or attached to such copy, or otherwise), and drafts of the following items, whether printed, recorded (through a sound, video, or other electronic, magnetic, or digital recording system), or reproduced by hand: letters, correspondence, telegrams, telexes, memoranda, records, summaries of conversations or interviews, minutes, records, or notes of meetings or conferences, note pads, notebooks, postcards, "Post-It" notes, stenographic notes, notes, notebooks, opinions or reports of financial advisors or consultants, opinions or reports of experts, projections, financial or statistical statements or compilations, contracts, agreements, appraisals, analyses, purchase orders, confirmations, publications, articles, books, pamphlets, circulars, microfilm, microfiche, reports, studies, logs, surveys, diaries, calendars, appointment books, maps, charts, graphs, bulletins, photostats, speeches, data sheets, pictures, photographs, illustrations, blueprints, films, drawings, plans, tape recordings, videotapes, disks, diskettes, data tapes or readable computer-produced interpretations or transcriptions thereof, electronically transmitted messages ("E-mail"), voice mail messages, interoffice communications, advertising, packaging and promotional materials and any other writings, papers, and tangible things of whatever description whatsoever, including but not limited to any information contained in any computer, server, mainframe, or other storage device (including (i) information on or in computer memory, (ii) information on or in computer or network backup files, and (iii) information which has been "deleted" or "erased" but is recoverable), whether located on-site or at an off-site facility, within your possession, custody, or control.

11. The terms "person" or "persons" means natural persons, proprietorships, corporations, partnerships, trusts, joint ventures, groups, associations, organizations, and all other

types of entities.

12. As the term "possession" pertains to web-sites, the term includes but is not limited to electronic content that is posted either publicly or privately on web-sites in your possession, custody, or control.

13. As the terms "possession" and "document" pertain to E-mail, these terms include but are not limited to E-mail contained in your electronic E-mail directories containing:

    a. "deleted" E-mails which have not been permanently deleted, including all subdirectories irrespective of the title of such subdirectories;

    b. "sent" E-mails, including all subdirectories irrespective of the title of such subdirectories;

    c. "received" E-mails, including all subdirectories irrespective of the title of such subdirectories; and

    d. E-mails stored in archives, tape back-ups, or other storage media.

14. The terms "you" and "your" mean the Equity Committee, all persons acting on its behalf, each of its members (including Esopus Creek Value LLC, Dorthea Barr, Kenneth I. Feldman, Tyson Matthews, Joyce M. Presnall, Saul Sutton, and Michael Willingham), all persons acting on their behalf, and any person, business or other entity that they represent on the Equity Committee.

## INSTRUCTIONS

1. The use of the singular shall be deemed to include the plural, and the use of masculine, feminine or neutral gender shall include each gender, as appropriate in context.

2. The terms "all," "any," "each," and "every" shall each be construed as all, any, each and every to bring within the scope of the Request or Requests all information that might otherwise be construed to be outside of its scope.

3. The terms "and" and "or" shall be construed disjunctively or conjunctively as necessary to bring within the scope of the Request or Requests all information that might otherwise be construed to be outside of its scope.

4. Each Request shall be construed independently and not with reference to any other Request for the purpose of limitation.

5. A request for a document shall be deemed to include a request for any and all transmittal sheets, cover letters, exhibits, enclosures, or attachments to the document, in addition to the document itself.

6. Please produce responsive documents as they have been kept in the usual course of business. Electronic documents must be produced in their native format with metadata intact (i.e., without metadata "scrubbing" or "cleansing"). Each document shall be produced in such fashion as to indicate clearly the identity of the file in which such document was located and the configuration in which such document was kept. If there is no document responsive to any particular Request, please state so in writing.

7. If you object to a Request, you should clearly indicate to which part or portion of the Request the objection is directed and provide all documents to which objection is not made as if such part or portion were propounded as a separate Request.

8. You are to produce all documents in your possession, custody or control which are requested herein, and in such a manner so that it is readily identifiable as to from which particular person, including which Equity Committee member, the particular production is made.

The term "possession, custody, or control" includes actual possession by you, actual possession by you with another, or constructive possession by you -- in that you are legally entitled or able to obtain actual possession from another person (including counsel and former counsel).

9. Documents produced in response to these Requests shall be labeled so as to indicate which particular member of the Equity Committee or other person is producing them.

10. As the Requests relate to E-mail, you are to review the text of each individual E-mail (i.e., not simply review the subject heading or utilize an electronic search device). As the Requests relate to web-sites and other electronic information, you are to review the electronic content posted either publicly or privately on web-sites in your possession, custody, or control (i.e., not simply review the subject heading or utilize an electronic search device).

11. You are to preserve all electronic documents in your possession, custody, or control, including by discontinuing any and all purging, deleting, erasing, overwriting, or destroying of electronic documents in your possession, custody, or control, irrespective of your normal business practice.

12. If any information requested herein is withheld under claim of privilege, or is not provided for whatever reason, you are requested at the time of responding to these Requests to (a) describe in detail the claim of privilege or other reason used to withhold the information and (b) identify all information by date and subject matter, without disclosing its contents, in a manner sufficient to allow it to be described to the Court for ruling on the privilege or other reason asserted. You are further requested to provide all requested information that is not subject to a claim of privilege or other reason for nonproduction by excising or otherwise protecting the portions for which a privilege is asserted, if such a technique does not result in disclosing the contents of the portions for which privilege is asserted.

13. If any of the requested documents were, but no longer are, in your possession or subject to your control, state whether such information or document: (a) is missing or lost; (b) has been destroyed; (c) has been transferred voluntarily or involuntarily to any other person or entity; or (d) has been otherwise disposed of, and, in each instance, explain the circumstances surrounding the disposition thereof and provide a description of the nature, content, date, author(s), and recipient(s) of the information or document.

14. Each Request is deemed to be continuing in nature. If additional information or documents are obtained, discovered, or brought to your attention between the time of responding to these Requests and the final disposition of this adversary proceeding, prompt supplementation of your response is hereby requested.

## REQUEST FOR PRODUCTION OF DOCUMENTS

1. All documents and communications (including but not limited to communications between or among members of the Equity Committee) that refer or relate to the Action, including but not limited to your request for an order requiring that WMI convene and hold an annual shareholders' meeting for the nomination and election of WMI directors and any of the issues raised in and bases for the Action and your request for such an order.

2. All documents and communications (including but not limited to communications between or among the members of the Equity Committee) that refer or relate to your decision to file the Action and the timing thereof.

3. All documents and communications (including but not limited to communications between or among members of the Equity Committee) that refer or relate to the Counterclaim and any of the issues raised in and bases for the Counterclaim.

4. All documents and communications (including but not limited to communications between or among members of the Equity Committee) that refer or relate to the Plan, including but not limited to whether you support or oppose the Plan and the bases for your support or opposition to the Plan.

5. All documents and communications (including but not limited to communications between or among members of the Equity Committee) that refer or relate to the Agreement, including but not limited to whether you support or oppose the Agreement and the bases for your support or opposition to the Agreement.

6. All documents and communications (including but not limited to communications between or among members of the Equity Committee) concerning your ownership of WMI equity securities, including: (i) the number of such shares owned; (ii) the date(s) on which such shares were purchased by you; (iii) the purchase price of such shares; (iv) the date(s) on which such shares were sold by you; (v) the sale price of such shares; and (vi) the net proceeds from sales of such shares by you.

7. All documents and communications (including but not limited to communications between or among members of the Equity Committee) concerning your tax or accounting treatment of your ownership of WMI stock and any financial statement (audited, unaudited, or otherwise) concerning your ownership of WMI stock.

8. All documents and communications (including but not limited to communications between or among members of the Equity Committee) concerning the projected value of your WMI shares under the Plan and Agreement.

9. All documents and communications (including but not limited to communications between or among members of the Equity Committee) that refer or relate to any projected economic distributions that you may obtain under the Plan and Agreement.

10. All documents and communications (including but not limited to communications between or among members of the Equity Committee) that refer or relate to the treatment of holders of WMI common and preferred equity under the Plan and Agreement.

11. All documents and communications (including but not limited to communications between or among members of the Equity Committee) concerning any public statements that you have made concerning Debtors, their chapter 11 cases, the Plan, the Agreement, the Action, and the Counterclaim.

12. All documents and communications (including but not limited to communications between or among members of the Equity Committee) concerning whether: (i) WMI preferred shareholders are entitled to vote, as a group, for WMI directors and (ii) WMI common shareholders are entitled to vote, as a group, for WMI directors.

13. All documents and communications (including but not limited to communications between or among members of the Equity Committee) that refer or relate to the earliest date when, under Washington law, a WMI shareholder could have applied to any court seeking an order to compel WMI to convene and hold an annual shareholders' meeting.

14. All documents and communications (including but not limited to communications between or among members of the Equity Committee) that refer or relate to the possible impact of the convening and holding of a WMI annual shareholders' meeting on the Debtors' chapter 11 casess, the Plan, and the Agreement.

15. All documents and communications (including but not limited to communications between or among members of the Equity Committee) that refer or relate to the first time that you learned of a possible settlement of any litigation among Debtors, JPMorgan Chase, N.A., and the Federal Deposit Insurance Corp.

16. All documents and communications (including but not limited to communications between or among members of the Equity Committee) concerning the projected expenses that WMI would incur if its annual shareholders meeting were convened and held and it waged a proxy contest for the election of WMI directors at such a meeting.

17. All documents and communications (including but not limited to communications between or among members of the Equity Committee) concerning the projected expenses that you would incur waging the proxy contest referred to in Request Number 16.

18. All documents and communications (including but not limited to communications between or among members of the Equity Committee) concerning the financial resources of the Equity Committee and/or the members thereof, including but not limited to whether the Equity Committee or its members have cash and other assets necessary to wage the proxy contest referred to in Request Number 16.

19. All documents and communications (including but not limited to communications between or among members of the Equity Committee) concerning your objectives in seeking to have a WMI annual shareholders' meeting convened and held.

20. All documents and communications (including but not limited to communications between or among members of the Equity Committee) that refer or relate to how you would vote at any WMI annual shareholders' meeting, including but not limited to which particular

candidates for director (by name) the Equity Committee intends to nominate, which particular candidates for director whom you intend to vote for and why you intend to vote for them.

21. All documents and communications (including but not limited to communications between or among members of the Equity Committee) that refer or relate to whether any candidates for director that the Equity Committee would seek to appoint to WMI's board of directors would support and vote for the Plan and Agreement.

22. All documents and communications (including but not limited to communications between or among members of the Equity Committee) that refer or relate to the credentials of the candidates for director whom you would support for nomination to WMI's board of directors if a WMI annual shareholders' meeting were convened and held.

23. All documents and communications (including but not limited to communications between or among members of the Equity Committee) that refer or relate to how many WMI directors WMI preferred and common equity security holders would be entitled to appoint if a WMI annual shareholders' meeting were convened and held.

24. All documents and communications (including but not limited to communications between or among members of the Equity Committee) concerning whether if a WMI annual shareholders' meeting were convened and held, the Equity Committee could effect a change of control of WMI, i.e., could nominate and elect a majority of WMI's board of directors.

25. All documents and communications (including but not limited to communications between or among members of the Equity Committee) concerning any alternative to the Plan that you would support.

26. All documents and communications (including but not limited to communications between or among members of the Equity Committee ) concerning the economic values that you

assign to any and all WMI assets and liabilities, including causes of action that have been asserted and could be asserted for the WMI estate's benefit.

27. All documents and communications (including but not limited to communications between or among members of the Equity Committee) concerning any potential economic distribution to you on account of any recovery by WMI on any claims that have been asserted and could be asserted for the WMI estate's benefit

28. All documents and communications (including but not limited to communications between or among members of the Equity Committee) purporting to demonstrate Debtors' solvency.

29. All documents and communications (including but not limited to communications between or among members of the Equity Committee) concerning the Debtors' current and projected financial condition, including but not limited to whether Debtors are now insolvent or may be insolvent in the future and the bases for any such projections.

30. All documents and communications (including but not limited to communications between or among members of the Equity Committee) that refer or relate to the likelihood that if a WMI annual shareholders' meeting were convened and held, WMI's creditor constituencies might move for appointment of a chapter 11 trustee and the effect that such a motion could have on the approval of the Plan and the Agreement.

31. All documents, correspondence, and communications concerning your document retention policy.

32. All documents and communications (including but not limited to communications between or among the members of the Equity Committee) that refer or relate to any agreements

between or among the members of the Equity Committee relating to the above-captioned chapter 11 cases and adversary proceeding.

33. All documents and communications (including but not limited to communications between or among the members of the Equity committee) concerning the replacement of advisors to or management of Debtors.

34. All documents and communications (including but not limited to communications between or among the members of the Equity committee) concerning any document or communication called for by these Requests.

35. All documents and communications (including but not limited to communications between or among the members of the Equity committee and between or among members of the Equity Committee and anyone else) relating to any messages and communications regarding Debtors, their chapter 11 cases, the Action, the Counterclaim, the Plan, and the Agreement posted on any blogs and electronic message and bulletin boards and in any chat rooms.

36. All documents and communications (including but not limited to communications between or among the members of the Equity Committee) that refer or relate to and purport to support your allegation in the Action that "Debtor has deprived the Equity Committee and other shareholders of useful and relevant information regarding WMI's operations and has prevented them from nominating and voting for WMI directors." (Compl. ¶ 1.)

37. All documents and communications (including but not limited to communications between or among the members of the Equity Committee) that refer or relate to or purport to support your statement in the Action that "The Board of Directors that oversaw the destruction of WMI now wants to prevent shareholders -- who would receive nothing in the

proposed settlement -- from exercising their statutory right to call a long-overdue annual meeting in order to protect the rights of all interested parties." (Reply Mem. 1.)

38. All documents and communications (including but not limited to communications between or among the members of the Equity Committee) that refer or relate to or purport to support your statement in the Action that there has been no "type of shareholder input in corporate governance since well before the [WMI] bankruptcy." (Reply Mem. 1.)

39. All documents and communications (including but not limited to communications between or among the members of the Equity Committee) that refer or relate to your statement in the Action that you have "concerns that the global settlement may not reflect a fair and appropriate valuation of the underlying litigation in a manner that maximizes the value of the Debtors' estates" and any purported support for your alleged concerns. (Reply Mem. 2.)

40. All documents and communications (including but not limited to communications between or among the members of the Equity Committee) that refer or relate to or purport to support your statement in the Action that there are "potential conflicts in the existing Board of Directors." (Reply Mem. 2.)

41. All documents and communications (including but not limited to communications between or among the members of the Equity Committee) that refer or relate to or purport to support your statement in the Action that WMI "grossly overstates the costs of holding an annual meeting and soliciting votes for a dissident slate of directors." (Reply Mem. 5.)

42. All documents and communications (including but not limited to communications between or among the members of the Equity Committee) that refer or relate to or purport to support your statement in the Action that "The proposed plan of reorganization in this case does not present a genuine reorganization effort." (Reply Mem. 8.)

43. All documents and communications (including but not limited to communications between or among the members of the Equity Committee) that refer or relate to or purport to support your statement in the Action that "approval of the global settlement and confirmation of the proposed plan of reorganization would effectuate an orderly <u>liquidation</u> of the Debtors' affairs." (Reply Mem. 8 (emphasis in original).)

44. All documents and communications (including but not limited to communications between or among the members of the Equity Committee) that refer or relate to or purport to support your statement in the Action that "other avenues of litigation may yield large recoveries without any corresponding claims back against the estate." (Reply Mem. 10, n.3.)

Dated: June 4, 2010
Wilmington, Delaware

_____
Mark D. Collins (No. 2981)
Marcos A. Ramos (No. 4450)
Chun I. Jang (No. 4790)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
Wilmington, Delaware 19899
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

-- and --

Marcia L. Goldstein
Brian S. Rosen
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Debtors*