**EXHIBIT B**

# WASHINGTON MUTUAL, INC.
## 925 Fourth Avenue, Suite 2500, Seattle, Washington 98104

May 7, 2010

To Susman Godfrey, L.L.P.

Re: <u>Confidentiality Agreement with Susman Godfrey, L.L.P.</u>

Washington Mutual, Inc. and WMI Investment Corp. (collectively, the "<u>Debtors</u>") are debtors and debtors in possession in the jointly administered chapter 11 cases pending in the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>"), Case No. 08-12229 (MFW) (collectively, the "<u>Cases</u>"). Pursuant to section 1102 of title 11 of the United States Code, on January 11, 2010, the Office of the United States Trustee appointed the committee of equity security holders (the "<u>Equity Committee</u>," and a member thereof, a "<u>Member</u>") in the Cases. The Debtors are prepared to provide now and during the administration of the Cases to Susman Godfrey, L.L.P. ("<u>Susman</u>") certain information relating to the Debtors and other matters relevant to the Cases and has by separate agreements agreed to do so with respect to the Equity Committee and its advisers (such advisers together with Susman, the "<u>Equity Committee Professionals</u>"). The Debtors are entering into this agreement (the "<u>Agreement</u>") with Susman to govern the exchange and preservation of that information. The terms "<u>Equity Committee Party</u>" or "<u>Equity Committee Parties</u>" as used in this Agreement means, either individually or collectively, the Equity Committee, the Members, the Equity Committee Professionals and each of their Representatives (as defined below).

As used herein, the term "<u>Confidential Information</u>" shall mean any information (whether written or oral) concerning the Debtors (whether prepared by the Debtors, their Representatives, or otherwise and irrespective of the form of communication) that is confidential, non-public or proprietary in nature and which is furnished during the pendency of the Cases (whether before or after the date hereof) to the Equity Committee Parties by, or on behalf of, the Debtors or their Representatives. "<u>Confidential Information</u>" shall also include all notes, analyses, compilations, studies or other documents, whether prepared by an Equity Committee Party or others, which contain or are based upon Confidential Information furnished to an Equity Committee Party concerning the Debtors. The term "<u>Confidential Information</u>" shall not include information that (i) was in an Equity Committee Party's possession as of January 11, 2010 so long as such information did not come from a source that is reasonably known by an Equity Committee Party to be bound by a confidentiality agreement with, or other legal, contractual, or fiduciary obligation of confidentiality owed to, the Debtors, (ii) is or becomes publicly available other than as a result of a disclosure by an Equity Committee Party in violation of the terms hereof, (iii) is or becomes available to an Equity Committee Party on a non-confidential basis from a source other than the Debtors or any of their Representatives so long as such source is not reasonably known by an Equity Committee Party to be bound by a confidentiality agreement with, or legal, contractual or fiduciary obligation of confidentiality to, the Debtors, or (iv) is independently developed by an Equity Committee Party not in violation of this Agreement.

In consideration of such Confidential Information being furnished by the Debtors to Susman, Susman agrees to the following:

1. Susman hereby agrees that all Confidential Information and the existence thereof will be held and treated in confidence, will not be disclosed in any manner whatsoever, in whole or in part, except with the prior written consent of the Debtors, as otherwise permitted herein, or as may be permitted or required by any order entered by the Bankruptcy Court (an "Information Access Order"). Susman agrees to use Confidential Information only for the purpose of participating in these Cases in its capacity as an Equity Committee Party.

As a recipient of Confidential Information pursuant to this Agreement, Susman may share such Confidential Information: (a) with the Equity Committee, Members and Equity Committee Professionals; (b) with directors, executives, officers, employees, agents, partners, experts, consultants, legal counsel, auditors, financial and other advisors of the Equity Committee Parties (collectively, the "Representatives") who (i) require such information in order to discharge the responsibilities of the Member's institution as a Member of the Equity Committee, or as part of their job responsibilities at such Member's institution or with such Equity Committee Professional and (ii) who are advised that by receiving such Confidential Information they are agreeing to be bound by the terms of this Agreement and to keep the Confidential Information confidential in accordance with the terms hereof; (c) with other parties that execute a confidentiality agreement in form and substance reasonably acceptable to counsel for the Debtors; (d) where required by law, a governmental authority or court, in each case having appropriate jurisdiction, but only as to such portion of the Confidential Information as is required to be disclosed and is reasonably determined to be required to be disclosed by Susman, in consultation with its own counsel and counsel to the Equity Committee and upon prior written notice to the Equity Committee and the Debtors; and (e) with any regulatory authority having appropriate jurisdiction (collectively, the "Regulators"), but only as to such portion of the Confidential Information as is required to be disclosed and is reasonably determined to be required to be disclosed by Susman, in consultation with its counsel and counsel to the Equity Committee and upon prior written notice to the Equity Committee and the Debtors. Susman will be responsible for any breach of this Agreement by any of its Representatives. Susman shall use commercially reasonable efforts to maintain records of the identity of Representatives who receive Confidential Information.

2. In the event that Susman receives a request to disclose any Confidential Information, in any such case under any applicable law or regulation or legal, regulatory, or judicial process or the rules of any applicable stock exchange, Susman agrees (i) to promptly notify the Debtors in writing thereof in order to enable the Debtors to seek, at their own expense, an appropriate protective order or other remedy or to waive compliance, in whole or in part, with the terms of this Agreement, (ii) to consult with the Debtors on the advisability of taking steps to resist or narrow such request, and (iii) if disclosure is legally required, for Susman to use reasonable best efforts to cooperate with the Debtors in any attempt they may make to obtain a protective order or other appropriate remedy and/or waive compliance, in whole or in part, with the terms of this Agreement. In the event that such protective order or other remedy is not obtained, or that the Debtors waive compliance with the provisions hereof, Susman shall be permitted to furnish that portion of the Confidential Information as is legally required. Susman

shall not oppose the Debtors' efforts to obtain reliable assurance that confidential treatment will be accorded such Confidential Information. Nothing in this Agreement shall prevent or limit any right of Susman to seek or obtain any information from the Debtors through subpoena, formal discovery or other process, even if such materials were previously disclosed or released to Susman as Confidential Information, or prevent or limit any right of the Debtors to object to any such subpoena, formal discovery or other process.

3. Susman understands and acknowledges that the Debtors make no representation or warranty as to the accuracy or completeness of the Confidential Information, and Susman agrees that neither the Debtors nor any of their Representatives will have any liability to Susman or any Representative of Susman relating to or resulting from the use of the Confidential Information. In the event that, during the course of the Cases, the Debtors come into the possession of, or become aware of, subsequent information ("New Information") that may amend, alter, clarify or correct any previously furnished Confidential Information, the Debtors will inform Susman of such New Information as soon as reasonably practicable upon the Debtors' awareness of such New Information, and furnish such New Information to Susman as soon as reasonably practicable upon the Debtors' possession of such New Information, with the understanding and agreement that such New Information shall be treated as Confidential Information.

4. If Susman resigns as adviser to the Equity Committee, it will promptly notify in writing the Debtors' counsel, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attention: Brian S. Rosen. In such an event, Susman shall promptly, upon the Debtors' request, return to the Debtors or destroy, if so requested by the Debtors, all Confidential Information in its possession and will not retain any copies, extracts or other reproductions in whole or in part of such written material. Upon the Debtors' request, any such destruction shall be certified in writing by Susman or Susman's authorized officers supervising such destruction. Upon termination of this Agreement, Confidential Information shall be held by Susman subject to the terms of the Agreement (and notwithstanding the termination hereof) unless otherwise (i) agreed by the parties hereto, (ii) ordered by the Bankruptcy Court, (iii) required by law, or (iv) requested to be returned or destroyed by the Debtors; provided, however, that, in the event Susman determines that compliance with a return or destruction request by the Debtors would be inconsistent with the internal document retention policies of its institution or firm or any applicable law or regulation, Susman shall (a) maintain the confidentiality of the Confidential Information as required by this Agreement, and (b) shall inform the Debtors, in writing, and state the reasons therefore, for such noncompliance. If, upon the termination of this Agreement, Susman determines that it is required to destroy any Confidential Information pursuant to its institution or firm's internal document retention policies, Susman may comply with such requirements subject to its obligation to inform the Debtors, prior to and in writing, of its intention to do so, setting forth the manner in which such destruction will comply with the confidentiality provisions of this Agreement; provided, further, that the Debtors and Susman reserve their respective rights to seek approval from the Bankruptcy Court prior to the destruction of any Confidential Information.

5. The Debtors are entitled to all remedies that may available to any of them at law or in equity for any breach or violation of this Agreement by Susman, including specific

performance and injunctive relief. Except as otherwise set forth herein, Susman shall not be liable for any breach by any other Equity Committee Party. Nothing in this Section 5 shall prevent Susman from contesting that any such breach has occurred.

6. It is understood and agreed that no failure or delay by a party hereto in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any right, power or privilege hereunder.

7. The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provisions of this Agreement, which shall remain in full force and effect.

8. This Agreement constitutes the entire agreement and understanding of the parties hereto with respect to the subject matter hereof and supersedes any and all prior agreements, arrangements and understandings relating to the matter provided for herein. No alteration, waiver, amendment, change or supplement hereto shall be binding or effective unless the same is set forth in a writing signed by each party hereto. No party hereunder may assign its rights or obligations under this Agreement without the prior written consent of the Debtors.

9. Nothing in this Agreement is intended to grant Susman any rights under any patent, copyright, trade secret or other intellectual property right, nor shall this Agreement grant to Susman any rights in or to the Confidential Information, except the limited right to review the Confidential Information solely for the purpose and in the manner set forth in this Agreement.

10. This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York. Each party hereby irrevocably and unconditionally consents to submit to the exclusive jurisdiction of the Bankruptcy Court for any actions, suits or proceedings arising out of or relating to this Agreement (and the parties agree not to commence any action, suit or proceeding relating thereto except in such court), and further agrees that service of any process, summons, notice or document by U.S. registered mail to the respective addresses of and to the attention of the (i) Debtors' counsel, in the case of service on the Debtors, and (ii) Susman, shall be effective service of process for any action, suit or proceeding brought against the parties in any such court.

11. In the event that Susman intends to offer into evidence or otherwise use Confidential Information in the Cases, then Susman shall (i) obtain the prior written consent of the Debtors (through the Debtors' counsel) to such offer or use; (ii) file under seal the Confidential Information; or (iii) obtain an order of the Bankruptcy Court permitting the disclosure after (x) five (5) business days written notice or such other time period permitted by the Bankruptcy Court and (y) an opportunity for the Debtors to be heard on such proposed relief. Any such request for relief from the Bankruptcy Court may be heard on expedited notice, subject to the Bankruptcy Court's calendar.

12. Other than any provision hereof that by its terms survives termination, this Agreement shall remain in full force and effect until the earlier to occur of (i) 180 days after the effective date of a plan under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in these Cases, (ii) dissolution of the Equity Committee upon conversion of any of the Cases to cases under chapter 7 of the Bankruptcy Code, (iii) the termination of this Agreement by agreement of the parties hereto, or (iv) three (3) years from the commencement of the Cases unless otherwise extended by agreement of the parties hereto.

13. This Agreement may be signed in one or more counterparts (including by means of telecopied or electronic signature pages), each of which need not contain the signature of all parties hereto, and all of such counterparts taken together shall constitute a single agreement.

Very truly yours,

WASHINGTON MUTUAL, INC.
and WMI INVESTMENT CORP.

By: *[signature]*
Name: William Kosturos
Title: Chief Restructuring Officer
Washington Mutual, Inc.

**AGREED TO AND ACCEPTED BY:**

**SUSMAN GODFREY, L.L.P., AS PROPOSED CO-COUNSEL FOR THE COMMITTEE OF EQUITY SECURITY HOLDERS**

Signature: _____

Name/Title: _____

12. Other than any provision hereof that by its terms survives termination, this Agreement shall remain in full force and effect until the earlier to occur of (i) 180 days after the effective date of a plan under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in these Cases, (ii) dissolution of the Equity Committee upon conversion of any of the Cases to cases under chapter 7 of the Bankruptcy Code, (iii) the termination of this Agreement by agreement of the parties hereto, or (iv) three (3) years from the commencement of the Cases unless otherwise extended by agreement of the parties hereto.

13. This Agreement may be signed in one or more counterparts (including by means of telecopied or electronic signature pages), each of which need not contain the signature of all parties hereto, and all of such counterparts taken together shall constitute a single agreement.

Very truly yours,

WASHINGTON MUTUAL, INC.
and WMI INVESTMENT CORP.

By:_____
Name:    William Kosturos
Title:    Chief Restructuring Officer
         Washington Mutual, Inc.

**AGREED TO AND ACCEPTED BY:**

**SUSMAN GODFREY, L.L.P., AS PROPOSED CO-COUNSEL FOR THE COMMITTEE OF EQUITY SECURITY HOLDERS**

Signature: _____

Name/Title: EDGAR SARGENT / PARTNER