IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>WASHINGTON MUTUAL, INC., *et al.*,[1]<br><br>                Debtors. | Chapter 11<br><br>Case No. 08-12229 (MFW)<br><br>Jointly Administered |
| OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS,<br><br>                Plaintiff,<br><br>v.<br><br>WASHINGTON MUTUAL, INC.,<br><br>                Defendant. | Adv. Pro. No. 10-50731 (MFW)<br><br>Hearing Date: Aug. 10, 2010 at<br>              1:30 p.m. EST<br>Objection Deadline: Aug. 9, 2010<br>Related Adv. Docket Nos. 45, 47. |

**DECLARATION OF EDGAR SARGENT IN SUPPORT OF THE OPPOSITION OF THE OFFICAL COMMITTEE OF EQUITY SECURITY HOLDERS TO THE DEFFENDANT'S MOTION TO COMPEL**

Edgar Sargent Esq., declares:

1. I am a partner at Susman Godfrey L.L.P. and am counsel of record for the Official Committee of Equity Security Holders ("Equity Committee") in this action. I submit this declaration in support of the *Opposition of the Plaintiff Official Committee of Equity Security Holders to Motion to Compel.*

---

[1] Debtors in these Chapter 11 cases and the last four digits of each Debtor's federal tax identification numbers are: (i) Washington Mutual, Inc. (3725) and (ii) WMI Investment Corp. (5395). The Debtors are located at 925 Fourth Avenue, Suite 2500, Seattle, Washington 98104.

2. On June 4, 2010, Counsel for Defendant WMI served on me a copy of DEBTOR'S FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS DIRECTED TO THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS OF WASHINGTON MUTUAL, INC. A copy of these requests is attached as Exhibit 1.

3. I served the Equity Committee's responses and objections to these requests on July 2, 2010, several days before they were due under the rules. A copy of these responses and objections is attached as Exhibit 2.

4. Approximately one week after I served those responses, I attended a telephonic meet and confer session with Adam Schloss of Weil Gotshal on behalf of WMI.

5. Mr. Schloss and I were able to reach agreement on all outstanding disputes, with the exception of the Debtors' request for documents regarding individual Equity Committee members' personal assets. Mr. Schloss agreed to narrow that request from "all documents related to" such assets to "documents sufficient to show" the extent of such assets.

6. I explained to Mr. Schloss that the members of the Equity Committee considered production of information about their personal financial holdings to be an extreme invasion of their privacy that was not justified by any relevance to any issue in the adversary proceeding. He explained that WMI considered the information in such documents to be necessary to determine whether or not the members of the Equity Committee would be able to fund a proxy contest.

7. Several days after this initial call, on July 14, 2010, Mr. Schloss again contacted me about the document production. We spoke on the phone and he told me that WMI was preparing a motion to compel production of documents sufficient to show all assets held by each individual member of the Equity Committee. I told him that I would work on a proposal that might resolve the impasse without having to involve the Court.

8.  Within two hours of this call, I sent Mr. Schloss an email offering a stipulation on behalf of the Equity Committee that I believed would address his concerns about the use of Equity Committee members' funds to pay for a proxy contest and therefore eliminate the justification for the production of these documents. The proposed stipulation reads:

> If a shareholder meeting is called for Washington Mutual, Inc., no member of the Equity Committee, either in a personal capacity or as a Committee member, will contribute any personal assets to fund a proxy contest, nor will Esopus Creek Value, LP, any of its directors, or any of its affiliates contribute any assets to any such contest.

A copy of that email is attached as Exhibit 3.

9.  I did not receive a response to this proposed stipulation from Mr. Schloss or anyone else on behalf of WMI.

10. Two days later on Friday, July 16, 2010, I attempted to call Mr. Schloss to ask about the proposed stipulation and other discovery issues. He was not available so I left a message with his assistant. He never returned this phone call.

11. That same day, having been unable to reach Mr. Schloss by phone, I sent him an email and again inquired about the stipulation, "I also have not heard back from you on the proposed stipulation resolving the dispute over production of the EC members personal financial records." A copy of this email is attached as Exhibit 4. Mr. Schloss never responded to this email.

12. The following Tuesday, July 20, 2010, I attended, by telephone, the Court's hearing addressing the Equity Committee's motion to appoint an examiner and other issues. During that hearing, Brian Rosen, another Weil Gotshall attorney, informed the Court that WMI intended to file a motion to compel in this adversary proceeding.

13.  Shortly after hearing Mr. Rosen make this representation to the Court, I wrote another email to Mr. Schloss asking him to identify the subject of the motion to compel. I again requested a response to our proposed stipulation on the issue of funding for a proxy contest and reminded Mr. Schloss that the parties have an obligation to attempt to resolve discovery disputes on their own before raising them with the Court. A copy of this email is attached to this Declaration as Exhibit 5.

14.  I did not receive a response from Mr. Schloss to this email until after this motion to compel had been filed.

15.  Neither Mr. Schloss nor any other attorney on behalf of WMI had any substantive conversation with me at any time about the Equity Committee's proposed stipulation or provided any written response to that proposed stipulation.

16.  In addition to the document requests, WMI served notices of deposition for all members of the Equity Committee. During the same meet and confer phone calls I had with Mr. Schloss about the document requests, I offered to schedule these depositions. We proposed dates in late July or early August, which would have given WMI a week or more to review the documents being produced prior to the depositions. Mr. Schloss refused to agree to take these depositions, taking the position that until the Equity Committee had completed its production by providing information about the individual members' personal financial assets, WMI would not agree to take the depositions. I then offered to agree to re-open any deposition if the Court later ordered production of any additional documents. Mr. Schloss refused to schedule the depositions on this basis as well. I memorialized these discussions in the July 14, 2010 email that is attached to this declaration as Exhibit 3.

17. Attached as Exhibit 6 is a copy of an article I printed from the website of the Wall Street Journal dated August 5, 2010.

18. The foregoing is based on my personal knowledge and is true and correct to the best of my knowledge, information, and belief.

Dated: Seattle, Washington

August 6, 2010

_____
Edgar Sargent