# EXHIBIT 1

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------- x

In re                                                                          : Chapter 11

WASHINGTON MUTUAL, INC., et al.                 : Case No. 08-12229 (MFW)

            Debtors.                                     : Jointly Administered

------------------------------------------------------- :

OFFICIAL COMMITTEE OF EQUITY                    :
SECURITY HOLDERS,                                        :
                                                                            : Adversary Proceeding No. 10-50731
            Plaintiff,                                    : (MFW)
                                                                            :
    - against -                                               :
                                                                            :
WASHINGTON MUTUAL, INC.,                          :
                                                                            :
           Defendant.                              :

---------------------------------------------------------- x

### DEBTOR'S FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS DIRECTED TO THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS OF WASHINGTON MUTUAL, INC.

       Pursuant to Federal Rules of Bankruptcy Procedure 7026 and 7034 and Federal

Rules of Civil Procedure 26 and 34, Washington Mutual, Inc. hereby requests that the Official

Committee of Equity Security Holders of Washington Mutual, Inc. produces the documents

designated below at the offices of Richards, Layton & Finger, P.A., One Rodney Square,

Wilmington, Delaware 19801, on or before 4:00 p.m. on July 5, 2010, or on such other date as

may be agreed by the parties.

### DEFINITIONS

    1.     The term "WMI" means Washington Mutual, Inc.

    2.     The term "Equity Committee" means the Official Committee of Equity Security

Holders of WMI appointed by the United States Trustee in the above-captioned chapter 11 case

and includes each and every member of the Equity Committee (including Esopus Creek Value,

LLC, Dorthea Barr, Kenneth I. Feldman, Tyson Matthews, Joyce M. Presnall, Saul Sutton, and

Michael Willingham), each individual represented by a member of the Equity Committee (if any), and the entity (or entities, as the case may be) that he, she, or it represents on the Equity Committee.

3. The term "Debtors" means WMI and WMI Investment Corp.

4. The term "Court" means the United States Bankruptcy Court for the District of Delaware.

5. The term "Plan" means the Joint Plan of Affiliated Debtors filed by Debtors in the above-captioned chapter 11 case.

6. The term "Agreement" means the settlement agreement by and among, inter alia, Debtors, JPMorgan Chase, N.A., and the Federal Deposit Insurance Corp. announced to the Court on March 12, 2010.

7. The term "Action" means the adversary proceeding filed in the Court on March 3, 2010, by the Equity Committee captioned Official Committee of Equity Security Holders v. Washington Mutual, Inc. (Adversary Proceeding No. 10-50731 (MFW)).

8. The term "Counterclaim" means WMI's counterclaim set forth in WMI's Answer and Counterclaim to Plaintiff's Complaint filed in the Court on April 7, 2010.

9. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) by any means, including but not limited to any meeting, conversation, discussion, conference, correspondence, message, or other written or oral transmission, exchange, or transfer of information in any form between two or more persons, including in person or by telephone, facsimile, telegraph, telex, e-mail, or other medium.

10. The term "document" shall have the broadest meaning permitted by Federal Rule of Bankruptcy Procedure 7034(a) and Federal Rule of Civil Procedure 34(a) and includes,

without limitation, all originals, copies (if the originals are not available), non-identical copies (whether different from the original because of underlining, editing marks, notes made on or attached to such copy, or otherwise), and drafts of the following items, whether printed, recorded (through a sound, video, or other electronic, magnetic, or digital recording system), or reproduced by hand: letters, correspondence, telegrams, telexes, memoranda, records, summaries of conversations or interviews, minutes, records, or notes of meetings or conferences, note pads, notebooks, postcards, "Post-It" notes, stenographic notes, notes, notebooks, opinions or reports of financial advisors or consultants, opinions or reports of experts, projections, financial or statistical statements or compilations, contracts, agreements, appraisals, analyses, purchase orders, confirmations, publications, articles, books, pamphlets, circulars, microfilm, microfiche, reports, studies, logs, surveys, diaries, calendars, appointment books, maps, charts, graphs, bulletins, photostats, speeches, data sheets, pictures, photographs, illustrations, blueprints, films, drawings, plans, tape recordings, videotapes, disks, diskettes, data tapes or readable computer-produced interpretations or transcriptions thereof, electronically transmitted messages ("E-mail"), voice mail messages, interoffice communications, advertising, packaging and promotional materials and any other writings, papers, and tangible things of whatever description whatsoever, including but not limited to any information contained in any computer, server, mainframe, or other storage device (including (i) information on or in computer memory, (ii) information on or in computer or network backup files, and (iii) information which has been "deleted" or "erased" but is recoverable), whether located on-site or at an off-site facility, within your possession, custody, or control.

11.     The terms "person" or "persons" means natural persons, proprietorships, corporations, partnerships, trusts, joint ventures, groups, associations, organizations, and all other

types of entities.

12.  As the term "possession" pertains to web-sites, the term includes but is not limited to electronic content that is posted either publicly or privately on web-sites in your possession, custody, or control.

13.  As the terms "possession" and "document" pertain to E-mail, these terms include but are not limited to E-mail contained in your electronic E-mail directories containing:

a.  "deleted" E-mails which have not been permanently deleted, including all subdirectories irrespective of the title of such subdirectories;

b.  "sent" E-mails, including all subdirectories irrespective of the title of such subdirectories;

c.  "received" E-mails, including all subdirectories irrespective of the title of such subdirectories; and

d.  E-mails stored in archives, tape back-ups, or other storage media.

14.  The terms "you" and "your" mean the Equity Committee, all persons acting on its behalf, each of its members (including Esopus Creek Value LLC, Dorthea Barr, Kenneth I. Feldman, Tyson Matthews, Joyce M. Presnall, Saul Sutton, and Michael Willingham), all persons acting on their behalf, and any person, business or other entity that they represent on the Equity Committee.

## INSTRUCTIONS

1.  The use of the singular shall be deemed to include the plural, and the use of masculine, feminine or neutral gender shall include each gender, as appropriate in context.

2.     The terms "all," "any," "each," and "every" shall each be construed as all, any, each and every to bring within the scope of the Request or Requests all information that might otherwise be construed to be outside of its scope.

3.     The terms "and" and "or" shall be construed disjunctively or conjunctively as necessary to bring within the scope of the Request or Requests all information that might otherwise be construed to be outside of its scope.

4.     Each Request shall be construed independently and not with reference to any other Request for the purpose of limitation.

5.     A request for a document shall be deemed to include a request for any and all transmittal sheets, cover letters, exhibits, enclosures, or attachments to the document, in addition to the document itself.

6.     Please produce responsive documents as they have been kept in the usual course of business. Electronic documents must be produced in their native format with metadata intact (i.e., without metadata "scrubbing" or "cleansing"). Each document shall be produced in such fashion as to indicate clearly the identity of the file in which such document was located and the configuration in which such document was kept. If there is no document responsive to any particular Request, please state so in writing.

7.     If you object to a Request, you should clearly indicate to which part or portion of the Request the objection is directed and provide all documents to which objection is not made as if such part or portion were propounded as a separate Request.

8.     You are to produce all documents in your possession, custody or control which are requested herein, and in such a manner so that it is readily identifiable as to from which particular person, including which Equity Committee member, the particular production is made.

The term "possession, custody, or control" includes actual possession by you, actual possession by you with another, or constructive possession by you -- in that you are legally entitled or able to obtain actual possession from another person (including counsel and former counsel).

9. Documents produced in response to these Requests shall be labeled so as to indicate which particular member of the Equity Committee or other person is producing them.

10. As the Requests relate to E-mail, you are to review the text of each individual E-mail (i.e., not simply review the subject heading or utilize an electronic search device). As the Requests relate to web-sites and other electronic information, you are to review the electronic content posted either publicly or privately on web-sites in your possession, custody, or control (i.e., not simply review the subject heading or utilize an electronic search device).

11. You are to preserve all electronic documents in your possession, custody, or control, including by discontinuing any and all purging, deleting, erasing, overwriting, or destroying of electronic documents in your possession, custody, or control, irrespective of your normal business practice.

12. If any information requested herein is withheld under claim of privilege, or is not provided for whatever reason, you are requested at the time of responding to these Requests to (a) describe in detail the claim of privilege or other reason used to withhold the information and (b) identify all information by date and subject matter, without disclosing its contents, in a manner sufficient to allow it to be described to the Court for ruling on the privilege or other reason asserted. You are further requested to provide all requested information that is not subject to a claim of privilege or other reason for nonproduction by excising or otherwise protecting the portions for which a privilege is asserted, if such a technique does not result in disclosing the contents of the portions for which privilege is asserted.

13. If any of the requested documents were, but no longer are, in your possession or subject to your control, state whether such information or document: (a) is missing or lost; (b) has been destroyed; (c) has been transferred voluntarily or involuntarily to any other person or entity; or (d) has been otherwise disposed of, and, in each instance, explain the circumstances surrounding the disposition thereof and provide a description of the nature, content, date, author(s), and recipient(s) of the information or document.

14. Each Request is deemed to be continuing in nature. If additional information or documents are obtained, discovered, or brought to your attention between the time of responding to these Requests and the final disposition of this adversary proceeding, prompt supplementation of your response is hereby requested.

## REQUEST FOR PRODUCTION OF DOCUMENTS

1. All documents and communications (including but not limited to communications between or among members of the Equity Committee) that refer or relate to the Action, including but not limited to your request for an order requiring that WMI convene and hold an annual shareholders' meeting for the nomination and election of WMI directors and any of the issues raised in and bases for the Action and your request for such an order.

2. All documents and communications (including but not limited to communications between or among the members of the Equity Committee) that refer or relate to your decision to file the Action and the timing thereof.

3. All documents and communications (including but not limited to communications between or among members of the Equity Committee) that refer or relate to the Counterclaim and any of the issues raised in and bases for the Counterclaim.

4. All documents and communications (including but not limited to communications between or among members of the Equity Committee) that refer or relate to the Plan, including but not limited to whether you support or oppose the Plan and the bases for your support or opposition to the Plan.

5. All documents and communications (including but not limited to communications between or among members of the Equity Committee) that refer or relate to the Agreement, including but not limited to whether you support or oppose the Agreement and the bases for your support or opposition to the Agreement.

6. All documents and communications (including but not limited to communications between or among members of the Equity Committee) concerning your ownership of WMI equity securities, including: (i) the number of such shares owned; (ii) the date(s) on which such shares were purchased by you; (iii) the purchase price of such shares; (iv) the date(s) on which such shares were sold by you; (v) the sale price of such shares; and (vi) the net proceeds from sales of such shares by you.

7. All documents and communications (including but not limited to communications between or among members of the Equity Committee) concerning your tax or accounting treatment of your ownership of WMI stock and any financial statement (audited, unaudited, or otherwise) concerning your ownership of WMI stock.

8. All documents and communications (including but not limited to communications between or among members of the Equity Committee) concerning the projected value of your WMI shares under the Plan and Agreement.

9.    All documents and communications (including but not limited to communications between or among members of the Equity Committee) that refer or relate to any projected economic distributions that you may obtain under the Plan and Agreement.

10.    All documents and communications (including but not limited to communications between or among members of the Equity Committee) that refer or relate to the treatment of holders of WMI common and preferred equity under the Plan and Agreement.

11.    All documents and communications (including but not limited to communications between or among members of the Equity Committee) concerning any public statements that you have made concerning Debtors, their chapter 11 cases, the Plan, the Agreement, the Action, and the Counterclaim.

12.    All documents and communications (including but not limited to communications between or among members of the Equity Committee) concerning whether: (i) WMI preferred shareholders are entitled to vote, as a group, for WMI directors and (ii) WMI common shareholders are entitled to vote, as a group, for WMI directors.

13.    All documents and communications (including but not limited to communications between or among members of the Equity Committee) that refer or relate to the earliest date when, under Washington law, a WMI shareholder could have applied to any court seeking an order to compel WMI to convene and hold an annual shareholders' meeting.

14.    All documents and communications (including but not limited to communications between or among members of the Equity Committee) that refer or relate to the possible impact of the convening and holding of a WMI annual shareholders' meeting on the Debtors' chapter 11 casess, the Plan, and the Agreement.

15. All documents and communications (including but not limited to communications between or among members of the Equity Committee) that refer or relate to the first time that you learned of a possible settlement of any litigation among Debtors, JPMorgan Chase, N.A., and the Federal Deposit Insurance Corp.

16. All documents and communications (including but not limited to communications between or among members of the Equity Committee) concerning the projected expenses that WMI would incur if its annual shareholders meeting were convened and held and it waged a proxy contest for the election of WMI directors at such a meeting.

17. All documents and communications (including but not limited to communications between or among members of the Equity Committee) concerning the projected expenses that you would incur waging the proxy contest referred to in Request Number 16.

18. All documents and communications (including but not limited to communications between or among members of the Equity Committee) concerning the financial resources of the Equity Committee and/or the members thereof, including but not limited to whether the Equity Committee or its members have cash and other assets necessary to wage the proxy contest referred to in Request Number 16.

19. All documents and communications (including but not limited to communications between or among members of the Equity Committee) concerning your objectives in seeking to have a WMI annual shareholders' meeting convened and held.

20. All documents and communications (including but not limited to communications between or among members of the Equity Committee) that refer or relate to how you would vote at any WMI annual shareholders' meeting, including but not limited to which particular

candidates for director (by name) the Equity Committee intends to nominate, which particular candidates for director whom you intend to vote for and why you intend to vote for them.

21.    All documents and communications (including but not limited to communications between or among members of the Equity Committee) that refer or relate to whether any candidates for director that the Equity Committee would seek to appoint to WMI's board of directors would support and vote for the Plan and Agreement.

22.    All documents and communications (including but not limited to communications between or among members of the Equity Committee) that refer or relate to the credentials of the candidates for director whom you would support for nomination to WMI's board of directors if a WMI annual shareholders' meeting were convened and held.

23.    All documents and communications (including but not limited to communications between or among members of the Equity Committee) that refer or relate to how many WMI directors WMI preferred and common equity security holders would be entitled to appoint if a WMI annual shareholders' meeting were convened and held.

24.    All documents and communications (including but not limited to communications between or among members of the Equity Committee) concerning whether if a WMI annual shareholders' meeting were convened and held, the Equity Committee could effect a change of control of WMI, i.e., could nominate and elect a majority of WMI's board of directors.

25.    All documents and communications (including but not limited to communications between or among members of the Equity Committee) concerning any alternative to the Plan that you would support.

26.    All documents and communications (including but not limited to communications between or among members of the Equity Committee ) concerning the economic values that you

assign to any and all WMI assets and liabilities, including causes of action that have been asserted and could be asserted for the WMI estate's benefit.

27. All documents and communications (including but not limited to communications between or among members of the Equity Committee) concerning any potential economic distribution to you on account of any recovery by WMI on any claims that have been asserted and could be asserted for the WMI estate's benefit

28. All documents and communications (including but not limited to communications between or among members of the Equity Committee) purporting to demonstrate Debtors' solvency.

29. All documents and communications (including but not limited to communications between or among members of the Equity Committee) concerning the Debtors' current and projected financial condition, including but not limited to whether Debtors are now insolvent or may be insolvent in the future and the bases for any such projections.

30. All documents and communications (including but not limited to communications between or among members of the Equity Committee) that refer or relate to the likelihood that if a WMI annual shareholders' meeting were convened and held, WMI's creditor constituencies might move for appointment of a chapter 11 trustee and the effect that such a motion could have on the approval of the Plan and the Agreement.

31. All documents, correspondence, and communications concerning your document retention policy.

32. All documents and communications (including but not limited to communications between or among the members of the Equity Committee) that refer or relate to any agreements

between or among the members of the Equity Committee relating to the above-captioned chapter 11 cases and adversary proceeding.

33.    All documents and communications (including but not limited to communications between or among the members of the Equity committee) concerning the replacement of advisors to or management of Debtors.

34.    All documents and communications (including but not limited to communications between or among the members of the Equity committee) concerning any document or communication called for by these Requests.

35.    All documents and communications (including but not limited to communications between or among the members of the Equity committee and between or among members of the Equity Committee and anyone else) relating to any messages and communications regarding Debtors, their chapter 11 cases, the Action, the Counterclaim, the Plan, and the Agreement posted on any blogs and electronic message and bulletin boards and in any chat rooms.

36.    All documents and communications (including but not limited to communications between or among the members of the Equity Committee) that refer or relate to and purport to support your allegation in the Action that "Debtor has deprived the Equity Committee and other shareholders of useful and relevant information regarding WMI's operations and has prevented them from nominating and voting for WMI directors." (Compl. ¶ 1.)

37.    All documents and communications (including but not limited to communications between or among the members of the Equity Committee) that refer or relate to or purport to support your statement in the Action that "The Board of Directors that oversaw the destruction of WMI now wants to prevent shareholders – who would receive nothing in the

proposed settlement -- from exercising their statutory right to call a long-overdue annual meeting in order to protect the rights of all interested parties." (Reply Mem. 1.)

38.    All documents and communications (including but not limited to communications between or among the members of the Equity Committee) that refer or relate to or purport to support your statement in the Action that there has been no "type of shareholder input in corporate governance since well before the [WMI] bankruptcy." (Reply Mem. 1.)

39.    All documents and communications (including but not limited to communications between or among the members of the Equity Committee) that refer or relate to your statement in the Action that you have "concerns that the global settlement may not reflect a fair and appropriate valuation of the underlying litigation in a manner that maximizes the value of the Debtors' estates" and any purported support for your alleged concerns. (Reply Mem. 2.)

40.    All documents and communications (including but not limited to communications between or among the members of the Equity Committee) that refer or relate to or purport to support your statement in the Action that there are "potential conflicts in the existing Board of Directors." (Reply Mem. 2.)

41.    All documents and communications (including but not limited to communications between or among the members of the Equity Committee) that refer or relate to or purport to support your statement in the Action that WMI "grossly overstates the costs of holding an annual meeting and soliciting votes for a dissident slate of directors." (Reply Mem. 5.)

42.    All documents and communications (including but not limited to communications between or among the members of the Equity Committee) that refer or relate to or purport to support your statement in the Action that "The proposed plan of reorganization in this case does not present a genuine reorganization effort." (Reply Mem. 8.)

43.     All documents and communications (including but not limited to communications between or among the members of the Equity Committee) that refer or relate to or purport to support your statement in the Action that "approval of the global settlement and confirmation of the proposed plan of reorganization would effectuate an orderly _liquidation_ of the Debtors' affairs." (Reply Mem. 8 (emphasis in original).)

44.     All documents and communications (including but not limited to communications between or among the members of the Equity Committee) that refer or relate to or purport to support your statement in the Action that "other avenues of litigation may yield large recoveries without any corresponding claims back against the estate." (Reply Mem. 10, n.3.)

Dated:  June 4, 2010
        Wilmington, Delaware

_____
Mark D. Collins (No. 2981)
Marcos A. Ramos (No. 4450)
Chun I. Jang (No. 4790)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
Wilmington, Delaware 19899
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701

-- and --

Marcia L. Goldstein
Brian S. Rosen
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

_Attorneys for Debtors_

**EXHIBIT B**

# WASHINGTON MUTUAL, INC.
## 925 Fourth Avenue, Suite 2500, Seattle, Washington 98104

May 7, 2010

To Susman Godfrey, L.L.P.

Re:     **Confidentiality Agreement with Susman Godfrey, L.L.P.**

Washington Mutual, Inc. and WMI Investment Corp. (collectively, the "Debtors") are debtors and debtors in possession in the jointly administered chapter 11 cases pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), Case No. 08-12229 (MFW) (collectively, the "Cases"). Pursuant to section 1102 of title 11 of the United States Code, on January 11, 2010, the Office of the United States Trustee appointed the committee of equity security holders (the "Equity Committee," and a member thereof, a "Member") in the Cases. The Debtors are prepared to provide now and during the administration of the Cases to Susman Godfrey, L.L.P. ("Susman") certain information relating to the Debtors and other matters relevant to the Cases and has by separate agreements agreed to do so with respect to the Equity Committee and its advisers (such advisers together with Susman, the "Equity Committee Professionals"). The Debtors are entering into this agreement (the "Agreement") with Susman to govern the exchange and preservation of that information. The terms "Equity Committee Party" or "Equity Committee Parties" as used in this Agreement means, either individually or collectively, the Equity Committee, the Members, the Equity Committee Professionals and each of their Representatives (as defined below).

As used herein, the term "Confidential Information" shall mean any information (whether written or oral) concerning the Debtors (whether prepared by the Debtors, their Representatives, or otherwise and irrespective of the form of communication) that is confidential, non-public or proprietary in nature and which is furnished during the pendency of the Cases (whether before or after the date hereof) to the Equity Committee Parties by, or on behalf of, the Debtors or their Representatives. "Confidential Information" shall also include all notes, analyses, compilations, studies or other documents, whether prepared by an Equity Committee Party or others, which contain or are based upon Confidential Information furnished to an Equity Committee Party concerning the Debtors. The term "Confidential Information" shall not include information that (i) was in an Equity Committee Party's possession as of January 11, 2010 so long as such information did not come from a source that is reasonably known by an Equity Committee Party to be bound by a confidentiality agreement with, or other legal, contractual, or fiduciary obligation of confidentiality owed to, the Debtors, (ii) is or becomes publicly available other than as a result of a disclosure by an Equity Committee Party in violation of the terms hereof, (iii) is or becomes available to an Equity Committee Party on a non-confidential basis from a source other than the Debtors or any of their Representatives so long as such source is not reasonably known by an Equity Committee Party to be bound by a confidentiality agreement with, or legal, contractual or fiduciary obligation of confidentiality to, the Debtors, or (iv) is independently developed by an Equity Committee Party not in violation of this Agreement.

In consideration of such Confidential Information being furnished by the Debtors to Susman, Susman agrees to the following:

1.     Susman hereby agrees that all Confidential Information and the existence thereof will be held and treated in confidence, will not be disclosed in any manner whatsoever, in whole or in part, except with the prior written consent of the Debtors, as otherwise permitted herein, or as may be permitted or required by any order entered by the Bankruptcy Court (an "Information Access Order"). Susman agrees to use Confidential Information only for the purpose of participating in these Cases in its capacity as an Equity Committee Party.

As a recipient of Confidential Information pursuant to this Agreement, Susman may share such Confidential Information: (a) with the Equity Committee, Members and Equity Committee Professionals; (b) with directors, executives, officers, employees, agents, partners, experts, consultants, legal counsel, auditors, financial and other advisors of the Equity Committee Parties (collectively, the "Representatives") who (i) require such information in order to discharge the responsibilities of the Member's institution as a Member of the Equity Committee, or as part of their job responsibilities at such Member's institution or with such Equity Committee Professional and (ii) who are advised that by receiving such Confidential Information they are agreeing to be bound by the terms of this Agreement and to keep the Confidential Information confidential in accordance with the terms hereof; (c) with other parties that execute a confidentiality agreement in form and substance reasonably acceptable to counsel for the Debtors; (d) where required by law, a governmental authority or court, in each case having appropriate jurisdiction, but only as to such portion of the Confidential Information as is required to be disclosed and is reasonably determined to be required to be disclosed by Susman, in consultation with its own counsel and counsel to the Equity Committee and upon prior written notice to the Equity Committee and the Debtors; and (e) with any regulatory authority having appropriate jurisdiction (collectively, the "Regulators"), but only as to such portion of the Confidential Information as is required to be disclosed and is reasonably determined to be required to be disclosed by Susman, in consultation with its counsel and counsel to the Equity Committee and upon prior written notice to the Equity Committee and the Debtors. Susman will be responsible for any breach of this Agreement by any of its Representatives. Susman shall use commercially reasonable efforts to maintain records of the identity of Representatives who receive Confidential Information.

2.     In the event that Susman receives a request to disclose any Confidential Information, in any such case under any applicable law or regulation or legal, regulatory, or judicial process or the rules of any applicable stock exchange, Susman agrees (i) to promptly notify the Debtors in writing thereof in order to enable the Debtors to seek, at their own expense, an appropriate protective order or other remedy or to waive compliance, in whole or in part, with the terms of this Agreement, (ii) to consult with the Debtors on the advisability of taking steps to resist or narrow such request, and (iii) if disclosure is legally required, for Susman to use reasonable best efforts to cooperate with the Debtors in any attempt they may make to obtain a protective order or other appropriate remedy and/or waive compliance, in whole or in part, with the terms of this Agreement. In the event that such protective order or other remedy is not obtained, or that the Debtors waive compliance with the provisions hereof, Susman shall be permitted to furnish that portion of the Confidential Information as is legally required. Susman

shall not oppose the Debtors' efforts to obtain reliable assurance that confidential treatment will be accorded such Confidential Information. Nothing in this Agreement shall prevent or limit any right of Susman to seek or obtain any information from the Debtors through subpoena, formal discovery or other process, even if such materials were previously disclosed or released to Susman as Confidential Information, or prevent or limit any right of the Debtors to object to any such subpoena, formal discovery or other process.

3.    Susman understands and acknowledges that the Debtors make no representation or warranty as to the accuracy or completeness of the Confidential Information, and Susman agrees that neither the Debtors nor any of their Representatives will have any liability to Susman or any Representative of Susman relating to or resulting from the use of the Confidential Information. In the event that, during the course of the Cases, the Debtors come into the possession of, or become aware of, subsequent information ("New Information") that may amend, alter, clarify or correct any previously furnished Confidential Information, the Debtors will inform Susman of such New Information as soon as reasonably practicable upon the Debtors' awareness of such New Information, and furnish such New Information to Susman as soon as reasonably practicable upon the Debtors' possession of such New Information, with the understanding and agreement that such New Information shall be treated as Confidential Information.

4.    If Susman resigns as adviser to the Equity Committee, it will promptly notify in writing the Debtors' counsel, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attention: Brian S. Rosen. In such an event, Susman shall promptly, upon the Debtors' request, return to the Debtors or destroy, if so requested by the Debtors, all Confidential Information in its possession and will not retain any copies, extracts or other reproductions in whole or in part of such written material. Upon the Debtors' request, any such destruction shall be certified in writing by Susman or Susman's authorized officers supervising such destruction. Upon termination of this Agreement, Confidential Information shall be held by Susman subject to the terms of the Agreement (and notwithstanding the termination hereof) unless otherwise (i) agreed by the parties hereto, (ii) ordered by the Bankruptcy Court, (iii) required by law, or (iv) requested to be returned or destroyed by the Debtors; provided, however, that, in the event Susman determines that compliance with a return or destruction request by the Debtors would be inconsistent with the internal document retention policies of its institution or firm or any applicable law or regulation, Susman shall (a) maintain the confidentiality of the Confidential Information as required by this Agreement, and (b) shall inform the Debtors, in writing, and state the reasons therefore, for such noncompliance. If, upon the termination of this Agreement, Susman determines that it is required to destroy any Confidential Information pursuant to its institution or firm's internal document retention policies, Susman may comply with such requirements subject to its obligation to inform the Debtors, prior to and in writing, of its intention to do so, setting forth the manner in which such destruction will comply with the confidentiality provisions of this Agreement; provided, further, that the Debtors and Susman reserve their respective rights to seek approval from the Bankruptcy Court prior to the destruction of any Confidential Information.

5.    The Debtors are entitled to all remedies that may available to any of them at law or in equity for any breach or violation of this Agreement by Susman, including specific

performance and injunctive relief. Except as otherwise set forth herein, Susman shall not be liable for any breach by any other Equity Committee Party. Nothing in this Section 5 shall prevent Susman from contesting that any such breach has occurred.

6.     It is understood and agreed that no failure or delay by a party hereto in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any right, power or privilege hereunder.

7.     The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provisions of this Agreement, which shall remain in full force and effect.

8.     This Agreement constitutes the entire agreement and understanding of the parties hereto with respect to the subject matter hereof and supersedes any and all prior agreements, arrangements and understandings relating to the matter provided for herein. No alteration, waiver, amendment, change or supplement hereto shall be binding or effective unless the same is set forth in a writing signed by each party hereto. No party hereunder may assign its rights or obligations under this Agreement without the prior written consent of the Debtors.

9.     Nothing in this Agreement is intended to grant Susman any rights under any patent, copyright, trade secret or other intellectual property right, nor shall this Agreement grant to Susman any rights in or to the Confidential Information, except the limited right to review the Confidential Information solely for the purpose and in the manner set forth in this Agreement.

10.    This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York. Each party hereby irrevocably and unconditionally consents to submit to the exclusive jurisdiction of the Bankruptcy Court for any actions, suits or proceedings arising out of or relating to this Agreement (and the parties agree not to commence any action, suit or proceeding relating thereto except in such court), and further agrees that service of any process, summons, notice or document by U.S. registered mail to the respective addresses of and to the attention of the (i) Debtors' counsel, in the case of service on the Debtors, and (ii) Susman, shall be effective service of process for any action, suit or proceeding brought against the parties in any such court.

11.    In the event that Susman intends to offer into evidence or otherwise use Confidential Information in the Cases, then Susman shall (i) obtain the prior written consent of the Debtors (through the Debtors' counsel) to such offer or use; (ii) file under seal the Confidential Information; or (iii) obtain an order of the Bankruptcy Court permitting the disclosure after (x) five (5) business days written notice or such other time period permitted by the Bankruptcy Court and (y) an opportunity for the Debtors to be heard on such proposed relief. Any such request for relief from the Bankruptcy Court may be heard on expedited notice, subject to the Bankruptcy Court's calendar.

12.     Other than any provision hereof that by its terms survives termination, this Agreement shall remain in full force and effect until the earlier to occur of (i) 180 days after the effective date of a plan under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in these Cases, (ii) dissolution of the Equity Committee upon conversion of any of the Cases to cases under chapter 7 of the Bankruptcy Code, (iii) the termination of this Agreement by agreement of the parties hereto, or (iv) three (3) years from the commencement of the Cases unless otherwise extended by agreement of the parties hereto.

13.     This Agreement may be signed in one or more counterparts (including by means of telecopied or electronic signature pages), each of which need not contain the signature of all parties hereto, and all of such counterparts taken together shall constitute a single agreement.

Very truly yours,

WASHINGTON MUTUAL, INC.
and WMI INVESTMENT CORP.

By: _____
Name:       William Kosturos
Title:      Chief Restructuring Officer
            Washington Mutual, Inc.

AGREED TO AND ACCEPTED BY:

SUSMAN GODFREY, L.L.P., AS
PROPOSED CO-COUNSEL FOR THE
COMMITTEE OF EQUITY SECURITY
HOLDERS

Signature: _____

Name/Title: _____

12.     Other than any provision hereof that by its terms survives termination, this Agreement shall remain in full force and effect until the earlier to occur of (i) 180 days after the effective date of a plan under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in these Cases, (ii) dissolution of the Equity Committee upon conversion of any of the Cases to cases under chapter 7 of the Bankruptcy Code, (iii) the termination of this Agreement by agreement of the parties hereto, or (iv) three (3) years from the commencement of the Cases unless otherwise extended by agreement of the parties hereto.

13.     This Agreement may be signed in one or more counterparts (including by means of telecopied or electronic signature pages), each of which need not contain the signature of all parties hereto, and all of such counterparts taken together shall constitute a single agreement.

Very truly yours,

WASHINGTON MUTUAL, INC.
and WMI INVESTMENT CORP.

By:_____
Name:          William Kosturos
Title:          Chief Restructuring Officer
               Washington Mutual, Inc.

**AGREED TO AND ACCEPTED BY:**

**SUSMAN GODFREY, L.L.P., AS
PROPOSED CO-COUNSEL FOR THE
COMMITTEE OF EQUITY SECURITY
HOLDERS**

Signature:_____

Name/Title:_____
        EDGAR SARGENT / PARTNER

**EXHIBIT C**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | x | |
|---|---|---|
| *In re* | : | Chapter 11 |
| WASHINGTON MUTUAL, INC., et al. | : | Case No. 08-12229 (MFW) |
| Debtors. | : | Jointly Administered |
| | : | |
| | : | |
| | : | |
| OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS, | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | Adv. Pro. No. 10-50731 (MFW) |
| | : | |
| WASHINGTON MUTUAL, INC., | : | |
| | : | Re: Docket No. _____ |
| Defendant | : | |
| | x | |

## ORDER GRANTING DEFENDANT WMI'S MOTION
## TO COMPEL PRODUCTION OF DOCUMENTS

Upon consideration of the *Motion to Compel Production of Documents* (the "Motion") filed by defendant Washington Mutual, Inc. ("WMI"); the Court finding that (i) it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and (iii) notice of the Motion was sufficient under the circumstances and no other or further notice need be provided; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein,

IT IS HEREBY ORDERED THAT:

1.    The Motion is GRANTED.

2.    On or before August 12, 2010, the Official Committee of Equity Security Holders

(the "Equity Committee") shall produce documents responsive to Request Number 18 of the

Document Request,[1] as narrowed, as described in paragraph 4 of the Motion.

     3.    The Equity Committee's deadline to produce documents as set forth in paragraph

2 hereof may be extended with WMI's written consent.

     4.    The Court retains jurisdiction with respect to all matters arising from or related to

the implementation of this Order.

Dated: _____, 2010
     Wilmington, Delaware

                                   _____
                                   THE HONORABLE MARY F. WALRATH
                                   UNITED STATES BANKRUPTCY JUDGE

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

RLF1 3590613v. 1

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| *In re* | x<br>: | Chapter 11 |
| WASHINGTON MUTUAL, INC., et al. | :<br>: | Case No. 08-12229 (MFW) |
| Debtors. | :<br>: | Jointly Administered |
|  | :<br>: |  |
| OFFICIAL COMMITTEE OF EQUITY<br>SECURITY HOLDERS, | :<br>:<br>: |  |
| Plaintiff, | :<br>: |  |
| v. | :<br>: | Adv. Pro. No. 10-50731 (MFW) |
| WASHINGTON MUTUAL, INC., | :<br>: |  |
| Defendant | :<br>x |  |

## CERTIFICATE OF SERVICE

I, Tyler D. Semmelman, do hereby certify that on July 20, 2010, I caused a copy of the foregoing **Motion to Compel Production of Documents** to be served on the following parties in the manner indicated below:

**Via Hand Delivery**

Bradford J. Sandler
BENESCH, FRIEDLANDER, COPLAN &
ARONOFF
222 Delaware Avenue, Suite 801
Wilmington, Delaware 19801-3582

William P. Bowden
Gregory Alan Taylor
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899

David B. Stratton
John H. Schanne, II
Evelyn J. Meltzer
PEPPER HAMILTON LLP
Hercules Plaza, Suite 1500
1313 Market Street
P.O. Box 1709
Wilmington, Delaware 19899-1709

Joseph McMahon
OFFICE OF THE U.S. TRUSTEE FOR THE
DISTRICT OF DELAWARE
844 N. King Street
Suite 2207, Lockbox 35
Wilmington, Delaware 19801

**Via First-Class Mail**

Fred S. Hodara
Robert A. Johnson
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036

Parker C. Folse, III
Edgar Sargent
Justin A. Nelson
SUSMAN GODFREY, L.L.P.
1201 Third Avenue, Suite 3800
Seattle, Washington 98101

Stephen D. Susman
SUSMAN GODFREY, L.L.P.
654 Madison Avenue, 5th Floor
New York, New York 10065

Tyler D. Semmelman (No. 5386)